1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS RIOS,<br><br>                                   Plaintiff,<br><br>v.<br><br>DANIEL PARAMO; J. BEHRA; E. BENYARD; M. CAVAZOS; ABAD; M. ZUNIGA; RUTLEDGE; E. ALVAREZ; K. SPENCE; A. ALLAMBY; ALAN HERNANDEZ; W. SUGLICH; A.A. JONES; E. CORTEZ; R. OLSON; J. RAMIREZ,<br><br>                                   Defendants. | Case No.:  14cv1073-WQH (DHB)<br><br>**REPORT AND RECOMMENDATION RE:**<br><br>**(1) PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [ECF No. 20];**<br><br>**(2) DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF No. 34]; AND**<br><br>**(3) DEFENDANTS' MOTION TO DISMISS [ECF No. 35]** |

        Plaintiff Carlos Rios, a state prisoner incarcerated at the R.J. Donovan Correctional Facility ("RJD"), is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  (ECF No. 1.)  Plaintiff commenced this action on April 28, 2014 by filing a Complaint in which he asserts a variety of claims against sixteen RJD staff

members.[1]  The following motions are currently pending before the Court: (1) Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 20); (2) Defendants' Motion for Partial Summary Judgment (ECF No. 34); and (3) Defendants' Motion to Dismiss (ECF No. 35).

After a thorough review of the pleadings, the parties' papers and all supporting documents, this Court hereby **RECOMMENDS** that (1) Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction be **DENIED**; (2) Defendants' Motion for Partial Summary Judgment be **GRANTED in part** and **DENIED in part**; and (3) Defendants' Motion to Dismiss be **GRANTED in part** and **DENIED in part**.

# I. BACKGROUND

## A.   Procedural History

Plaintiff commenced this action on April 28, 2014 by filing a Complaint and motion for leave to proceed *in forma pauperis*.  (ECF Nos. 1, 2.)  On August 14, 2014, the Honorable William Q. Hayes granted Plaintiff's motion for leave to proceed *in forma pauperis* and, following an initial screening of the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), directed U.S. Marshal service of the Complaint on Plaintiff's behalf.  (ECF No. 5.)

Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction on October 8, 2014.  (ECF No. 20.)  Defendants opposed the motion on October 30, 2014.  (ECF No. 28.)  Plaintiff filed a reply on November 12, 2014.  (ECF No. 31.)

Defendants filed a Motion for Partial Summary Judgment on November 24, 2014 pursuant to Federal Rule of Civil Procedure 56.  (ECF No. 34.)  Defendants contend "the

---

[1]    Plaintiff's Complaint names the following RJD staff as Defendants: Warden Daniel Paramo; Correctional Officers J. Behra, E. Cortez, A.A. Jones, and M. Zuniga; Correctional Captain E. Benyard; Correctional Counselors Abad and M. Cavazos; Correctional Sergeants E. Alvarez and Rutledge; Correctional Lieutenants A. Allamby and K. Spence; Chief Deputy Warden Alan Hernandez; Associate Warden W. Suglich; and Appeals Coordinators R. Olson and J. Ramirez.  (ECF No. 1 at ¶¶ 2-17.)  Plaintiff sues each Defendant in their individual and official capacities.  (*Id.*)

undisputed facts show that Plaintiff failed to exhaust his administrative remedies as to some of his claims, and Plaintiff was aware of the availability of the grievance process." (*Id.* at 2:1-3 (citing *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc)).)  Plaintiff filed an opposition to Defendants' Motion for Partial Summary Judgment on December 15, 2014.  (ECF No. 41.)  Defendants filed a reply on December 19, 2014.  (ECF No. 44.)  On January 7, 2015, Plaintiff filed a supplemental declaration in support of his opposition to Defendants' Motion for Partial Summary Judgment.  (ECF No. 48.)  Defendants filed an opposition to Plaintiff's supplemental declaration on January 16, 2015.  (ECF No. 53.)

Defendants filed a Motion to Dismiss Plaintiff's Complaint on November 24, 2014, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 35.)  Defendants contend the Complaint should be dismissed because: (1) Plaintiff fails to state a claim for conspiracy, retaliation, due process, equal protection, or cruel and unusual punishment; (2) Plaintiff's claims relating to his rules violation and hearing are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (3) Defendants are protected by absolute immunity under the Eleventh Amendment from liability for damages in their official capacities; and (4) Defendants are protected by qualified immunity from liability for damages in their individual capacities.  (ECF No. 35 at 2:1-9.)  Plaintiff filed an opposition to Defendants' Motion to Dismiss on December 19, 2014.  (ECF No. 46.)  Defendants filed a reply on January 13, 2015.  (ECF No. 51.)

**B.**   **Plaintiff's Complaint**

    **1.**   **Introduction**

Plaintiff alleges in his Complaint that Defendants have engaged in an ongoing conspiracy to threaten and harass him, in violation of state and federal constitutional rights and privileges, in retaliation for Plaintiff having filed a previous civil rights lawsuit[2] in this

---

[2]   Plaintiff filed his prior civil rights lawsuit in this district, *Rios v. Cate, et al.*, Case No. 10cv1064-PCL, asserting several claims including that the defendants, none of whom are Defendants in the instant action, violated Plaintiff's rights under the Americans with Disabilities Act, the Rehabilitation Act, the First Amendment, the Due Process Clause, and

district and prison grievances against Defendants and other RJD staff.   Plaintiff's "Statement of the Case" generally alleges the following: (a) Defendants abused their power in retaliation for Plaintiff's prior lawsuit by wrongfully terminating Plaintiff from his job assignment without any legitimate penal justification or sufficient evidence; (b) the head of the Unit Classification Committee, the Facility Captain, issued a false misbehavior Rule Violation Report ("RVR") in an effort to justify the wrongful termination of Plaintiff's job assignment; (c) UCC officials conspired to deprive Plaintiff of his procedural due process rights during the wrongful termination hearing, including that the Facility Captain violated prison regulation by acting as a supervisory reviewer of the RVR despite having been responsible for terminating Plaintiff from his job assignment and issuing the RVR; (d) Defendants ordered other RJD staff to injure, intimidate, threaten, and conspire against Plaintiff by intentionally depriving Plaintiff of his personal property and otherwise subjecting Plaintiff to harassment; and (e) administrative remedies at RJD are futile, unavailable, or inadequate under the circumstances because the Appeals Coordinator officials conspired to cover up misconduct by refusing to process and erroneously cancelling Plaintiff's grievances, including by claiming that Plaintiff had not submitted them, resulting in substantial interference with Plaintiff's right of access to the court. (ECF No. 1 at 8:25-10:23.)

Plaintiff asserts federal legal claims under the First, Fifth, Eighth, and Fourteenth Amendments in addition to state law claims for intentional deprivation of personal property and negligence.  (*Id.* at ¶¶ 54-59.)  Plaintiff seeks money damages (including $700,000 in general damages, $100,000 in punitive damages) and declaratory and injunctive relief.  (*Id.*

---

the Equal Protection Clause, by denying Plaintiff a pay raise for not having a general equivalency degree which he is unable to obtain due to a learning disability. (*See generally* Second Amended Complaint in Case No. 10cv1064-PCL, ECF No. 45-2.)  Plaintiff settled this lawsuit on October 18, 2012, and Plaintiff signed the settlement agreement on November 9, 2012. (ECF No. 1 at ¶ 26; ECF No. 1-1 at 76; Joint Motion to Dismiss the Action with Prejudice in Case No. 10cv1064-PCL, ECF No. 136.)

at 7, 29:26-32:11.)

The Court sets forth a detailed account of Plaintiff's allegations, including an extensive chronology of prison administrative proceedings gleaned from the body of the Complaint and the exhibits attached thereto, as they are relevant to each of the pending motions:

### 2.    Allegations Regarding May 16, 2012 Laundry Room Incident

On May 16, 2012, Defendant Behra and non-party officers T. Togafau and J. Cabrera conspired against Plaintiff in retaliation for Plaintiff having filed his prior civil rights lawsuit.[3]   Specifically, Defendant Behra, Togafau, and Cabrera planted controlled contraband in the inmates' open work area.  During Plaintiff's work hour in the prison laundry he found a partially opened envelope on the floor with some items around the envelope.  Plaintiff thought it was trash.  However, Defendant Behra simultaneously yelled at Plaintiff and ordered him to place his hands behind his back, whereupon he was handcuffed.  Defendant Behra called other staff as Plaintiff tried to explain he had just noticed the envelope on the floor and was wondering what it was.  Plaintiff was taken to the restroom and searched, although no contraband was found.  Plaintiff tried to inform prison staff that he neither saw what was in the envelope nor had time to inform staff of the incident.  Defendant Behra sent Plaintiff back to his housing unit until further review, stating "I told you I was going to get you," in reference to a May 14, 2012 incident wherein Defendant Behra threatened Plaintiff by saying, "If you continue this crap law suite [sic] . . . I'll make sure you get fired, and placed in AD-SEG and transferred out of R.J." Defendant Behra also told Plaintiff on May 14, 2012, "I know a lot of people."  (ECF No. 1-1 at 7.)

/ / /

---

[3]     While none of the Defendants in the instant action were named as defendants in Plaintiff's prior civil rights lawsuit, Togafau and Cabrera were two of the named defendants in the prior action.  (*See* Second Amended Complaint in Case No. 10cv1064-PCL, ECF No. 45-2 at 3-4.)

Following the incident, Defendant Behra completed an incident report (a "CDC 128A" form), dated May 16, 2012, stating:

> On May 16, 2012 at approximately 1205 hours while performing my duties as the PIA Laundry Rover, I was conducting a security check of the Laundry facility when I observed Inmate Rios in an **OUT OF BOUNDS** area under the Supervisor's podium and going through an envelope Marked FDC, which contained unauthorized Personal Property that came in with the soiled laundry received from Fairview Developmental Hospital which was being returned. [A]ccording to Supervisor J Keema[4] this envelope was located on his desk when he went to lunch and somehow it was found under his podium.  When I asked inmate Rios what he was doing under the Supervisor's podium and he stated "I was just looking to see what was in the envelope".  I then informed Laundry Superintendent II Togafau of the discovery.  Superintendent II Togafau determined that Inmate Rios was attempting to steal Fairview Hospital Personal Property, and requested to have inmate Rios removed pending classification review.

(ECF No. 1-1 at 22.)

Plaintiff alleges Defendant Behra issued this "false disciplinary report" to justify Plaintiff's wrongful termination from his job assignment in retaliation for Plaintiff's prior lawsuit.  (ECF No. 1 at ¶ 18.)

In addition, Togafau completed an incident report (a "CDC 128B" form), dated May 16, 2012, stating:

> On May 16, 2012 inmate Rios received a 128A for being in an **OUT OF BOUNDS** area under the Supervisor's podium going through an envelope marked FDC with unauthorized Personal Property from our outside State Hospital contract attending to steal contents located in the envelope.  This type of behavior will not be tolerated in the PIA Laundry.  I am requesting his removal from the PIA Laundry.

(ECF No. 1-1 at 23.)

/ / /

---

[4]      Keema was a defendant in Plaintiff's prior lawsuit (*see* Second Amended Complaint in Case No. 10cv1064-PCL, ECF No. 45-2 at 4) but is not named as a Defendant in the instant action.

a.     <u>May 22, 2012 Appeal (Log No. Unassigned)</u>

On May 22, 2012, Plaintiff filed an Inmate/Parolee Appeal (a "CDCR Form 602") alleging retaliation by Defendant Behra, Togafau, and Cabrera in connection with the May 16, 2012 laundry floor incident. Plaintiff claimed he was improperly fired from his job assignment in retaliation for the civil rights lawsuit he had filed, and he requested that he be returned to his job assignment with back pay compensation and that Defendant Behra, Togafau, and Cabrera be reprimanded. Plaintiff attached to his appeal a statement from three other inmates stating they had observed Plaintiff on May 16, 2012 in his work area and that the controlled contraband he found should have been in a locked area rather than the floor. The witnesses also stated they observed that no contraband was found on Plaintiff when he was searched. Plaintiff alleges his May 22, 2012 appeal was never assigned a log number. (ECF No. 1 at ¶ 19; ECF No. 1-1 at 4-8.)

On June 10, 2012, Plaintiff filed an Inmate/Parolee Request for Interview, Item or Service (a "CDCR 22" form) addressed to non-party Appeals Coordinator R. Cobb seeking confirmation that his May 22, 2012 appeal had been received as he had not yet received a response to his complaint.[5] This request was delivered to Cobb on June 10, 2012. Plaintiff alleges he never received a response to either his May 22, 2012 appeal or his June 10, 2012 request. (ECF No. 1 at ¶ 20; ECF No. 1-1 at 19.)

On June 18, 2012, Plaintiff filed another CDCR 22 form in which he complained about the retaliation he had suffered for filing his prior civil rights lawsuit and stated that he had been "fired without any logical justification." On June 22, 2012[6], Defendant Behra

---

[5]     Plaintiff's June 10, 2012 request also sought information regarding the status of a second complaint, dated May 29, 2012, and four appeals identified by Log Nos. 12-00803, 12-00503, 12-801, and 12-802. (ECF No. 1-1 at 19.) However, based on the record before the Court, it does not appear Plaintiff is contending these filings are related to his claims in this action.

[6]     Plaintiff alleges Defendant Behra responded on June 18, 2012, but the response is actually dated June 22, 2012. (*See* ECF No. 1 at ¶ 21; ECF No. 1-1 at 21.)

responded to Plaintiff's request by indicating that Plaintiff had been "found in an out-of-bounds area going through unauthorized property."   Defendant Behra attached to his response his May 16, 2012 CDC 128A form.[7]  (ECF No. 1 at ¶ 21; ECF No. 1-1 at 21-22.)

On July 12, 2012, Plaintiff filed another CDCR 22 form asking that the Appeals Coordinator respond to his appeals, including his May 22, 2012 complaint.[8]  On July 23, 2012, Defendant Olson responded by stating that "all appeals are processed in the order received."  (ECF No. 1-1 at 32.)

### b.   June 11, 2012 Appeal (Log No. 12-2146)

On June 11, 2012, Plaintiff, on behalf of himself and eleven other inmates, filed another CDCR Form 602 appeal that was assigned Log No. 12-2146.  Plaintiff claimed Cobb violated his right to appeal by conspiring, retaliating, delaying, and intentionally obstructing justice to cover-up the wrongdoing of other officials.  Plaintiff claimed he and other inmates had filed appeals, grievances, and officer misconduct complaints but they never received any response from Cobb, and the inmates believed Cobb's actions created an unsafe condition due to the unavailability or inadequacy of administrative remedies. Plaintiff requested a reprimand of Cobb and improvement of RJD's administrative remedies following an investigation.  (ECF No. 1 at ¶ 24; ECF No. 1-1 at 50-52.)[9]

/ / /

---

[7]     It appears Plaintiff did not receive a copy of Defendant Behra's May 16, 2012 CDC 128A form until receiving Defendant Behra's June 22, 2012 response.  Indeed, Plaintiff alleges that he later filed a CDCR Form 602 on July 2, 2012 "within 10 days" of obtaining Defendant Behra's response and CDC 128A.  (*See* ECF No. 1 at ¶ 22.)

[8]     Plaintiff's July 12, 2012 request also referenced the apparently unrelated inmate appeals identified in his June 10, 2012 request.  *See supra* note 5.

[9]     Plaintiff initially sent his June 11, 2012 appeal to the California Department of Corrections and Rehabilitation's ("CDCR") Office of Internal Affairs, Headquarters in Sacramento.  However, the appeal was returned to RJD upon a determination "that the issues raised require a response from the institutional level."  (ECF No. 1-1 at 53; *see also* ECF No. 1 at ¶ 24.)

Although Plaintiff's June 11, 2012 appeal complains of improper actions by Cobb only, Plaintiff alleges in his Complaint that this appeal was made "against the [Appeals Coordinator Office ("ACO")] staff, for the actual conspiracy and retaliatory bias against the Plaintiff, the proof of said conspiracy and retaliatory actions is that the ACO staff [Defendants] R. Olson and J. Ramirez refused to process plaintiff grievances and complaint[s] were [sic] it alleges misconduct by RJD-Correctional Facility staff including the ACO." Plaintiff further alleges Defendants Olson and Ramirez acted in concert with other staff to cover up misconduct. (ECF No. 1 at ¶ 24.)

On October 6, 2012, Defendant Olson rejected Plaintiff's appeal at the First Level of review for the following violations of California Code of Regulations § 3084.6(b): (a) the "appeal involves multiple issues that do not derive from a single event, or are not directly related and cannot be reasonably addressed in a single response due to this fact;" (b) "[t]he matter under appeal requires a response to a specific set of facts which are not the same for all participants;" (c) the appeal attached dividers or tabs to the appeal forms and/or supporting documents; (d) "[l]etters attached to an appeal are not accepted;" (e) the appeal was missing necessary supporting documents (although the missing documents were not identified); and (f) the appeal made "a general allegation, but fail[ed] to state facts or specify an act or decision consistent with the allegation." Defendant Olson advised Plaintiff of various ways to correct his deficiencies. (ECF No. 1-1 at 54-57.)

Plaintiff alleges in his Complaint that Defendant Olson's First Level review screening letters "intentionally interfered with the Plaintiff's rights to petition the government for redress of grievances, conspired and retaliated against the Plaintiff for him filing grievances, complaint and civil right action against the institution staff, and because [Defendants Olson and Ramirez] act[ed] in concert with other staff to cover up misconduct, when they used there [sic] position, authority and influence to act in concert with other staff by refusing to process plaintiff grievances or complaint that alleges misconduct against RJD-Correctional Facility employees." (ECF No. 1 at ¶ 24.)

/ / /

On October 24, 2012, Plaintiff filed a CDCR 22 form indicating he had resubmitted appeal Log No. 12-2146 to the ACO "showing that the AC screening was an error" and requesting an investigation into the status of the appeal.  Defendant Olson responded on October 30, 2012 that "[a]ll appeals are processed appropriately in the order received." Following Plaintiff's request for supervisor review of Defendant Olson's response, non-party officer Stratton responded on November 20, 2012 that "[t]he appeals are processed in the order received per policy."  (ECF No. 1-1 at 37.)

On December 11, 2012, Plaintiff received additional First Level review screening letters from Defendants Olson and Ramirez jointly rejecting appeal Log No. 12-2146 for the same reasons stated in Defendant Olson's October 6, 2012 rejection letters, with the only differences being that the missing documents were now identified as the "appeals submitted."  Defendants Olson and Ramirez also sent Plaintiff a letter indicating his appeal was being cancelled because Plaintiff had "continue[d] to submit a rejected appeal while disregarding appeal staff's previous instructions to correct the appeal."  (ECF No. 1 at ¶ 24; ECF No. 1-1 at 58-62.)

### c.   July 2, 2012 Appeal (Log No. 12-1879)

On July 2, 2012, Plaintiff filed another CDCR Form 602 appeal that was assigned Log No. 12-1879.  (ECF No. 1 at ¶ 22; ECF No. 1-1 at 24-25.)  In addition to reiterating the basic allegations contained in his May 22, 2012 appeal, Plaintiff also alleged that on the date of the incident (*i.e.*, May 16, 2012), he was not out of bounds and the contraband was never in his possession, surveillance video would support these two claims, and there is no evidence to support the "false[], fictitious and fraudulent" allegation that Plaintiff was attempting to steal personal property.  (ECF No. 1-1 at 25.)  Plaintiff requested that (a) an investigation be conducted, including the disclosure of the video camera recording and the taking of inmate witness interviews; (b) Defendant Behra's May 16, 2012 disciplinary report be dismissed; (c) Plaintiff be returned to his job assignment with back pay from the date of the wrongful termination; and (d) involved staff be reprimanded.  (*Id.* at 24-25.)

/ / /

On August 12, 2012, Plaintiff filed another CDCR 22 inmate request form seeking information related to the status of his May 22, 2012 and July 2, 2012 appeals since he had not yet received a response to either appeal.  On August 22, 2012, Defendant Olson responded by stating: "You should have received a response by now on the first 602.  The other one will be processed as soon as possible.  There is currently a backlog of appeals due to a high volume of appeals and staffing shortage."  (ECF No. 1-1 at 34.)

On September 14, 2012, Defendant Olson cancelled appeal Log No. 12-1879 at the First Level of review for failure to submit the appeal in a timely fashion.  Specifically, the incident occurred on May 16, 2012, but appeal Log No. 12-1879 was not submitted until July 2, 2012. (ECF No. 1-1 at 26.)  Plaintiff alleges he timely submitted the appeal because he filed it within ten days of receiving a copy of Defendant Behra's CDC 128A disciplinary report, and he alleges Defendant Olson erred in cancelling appeal Log No. 12-1879 "and failed to investigate[] the matter adequately."  (ECF No. 1 at ¶ 22.)

On September 20, 2012, Plaintiff requested a Supervisor Review of Defendant Olson's August 22, 2012 response due to his dissatisfaction with the response.  Plaintiff reiterated that he had still not received a response to his May 22, 2012 appeal nor any notice of a log number assigned to the appeal.  Plaintiff admitted in his request for a Supervisor Review that he received a response to his second appeal (*i.e.*, Log No. 12-1879, dated July 2, 2012) on September 19, 2012.  On September 27, 2012, Defendant Olson responded by stating: "All appeals received from May through July 2012 have been processed.  You filed a staff misconduct appeal that was received on 6/13/12 regarding PIA staff.  That is the only staff misconduct appeal we have received for that time period.  We have not researched individual appeals noted above.  Previous response was based on time frames only."  (ECF No. 1-1 at 34.)[10]

---

[10]   Plaintiff also submitted two additional CDCR 22 requests, dated October 18 and 21, 2012, seeking information regarding the status of numerous appeals and complaints for which he claimed he had not yet received a response.  Defendant Olson responded to each request by stating that "[a]ll appeals are processed in the order received."  Each time,

d.   September 20, 2012 Appeal (Log No. 12-2759)

On September 20, 2012, Plaintiff filed another CDCR Form 602 appeal, assigned Log No. 12-2759, alleging conspiracy to obstruct justice and access to the court.  Plaintiff alleged that on May 22, 2012 he "filed a CDCR 602 complaint regarding conspiracy[y] and retaliation for inmate filing of a civil right action against the CALPIA officials. However, until this date I have not receive [sic] any response to this complaint in a timely manner."  Plaintiff requested "[t]hat an investigation be conducted into this matter, and that inmate 602's be processed in accordance with the Administrative, State and Federal laws, and other relief as the reviewer find[s] appropriate[]."  (ECF No. 1 at ¶ 22; ECF No. 1-1 at 27-28.)

On November 29, 2012, Defendant Olson rejected appeal Log No. 12-2759 at the First Level of review for several reasons.  First, the appeal was missing necessary supporting documents, namely, the August 17, 2012 CDCR 22 to Defendant Suglich, in violation of California Code of Regulations § 3084.6(b)(7).[11]  Second, the appeal was rejected for non-compliance with California Code of Regulations § 3084.6(b)(8), which provides that an appeal may be rejected if it "involves multiple issues that do not derive from a single event, or are not directly related and cannot be reasonably addressed in a single response due to this fact."  Plaintiff was instructed he could resubmit the unrelated

---

Plaintiff requested a Supervisor Review addressed to Defendant Suglich, stating that Defendant Olson's responses were "ambiguous, evasive, non-responsive and non-complete."  Non-party officer Stratton responded to each request by stating that "[a]ppeals are processed in the order received per policy."  (ECF No. 1-1 at 35-36.)

[11]   Section 3084(b)(7) provides that appeals may be rejected where they are "missing necessary supporting documents as established in section 3084.3."  15 CAL. CODE REGS. § 3084(b)(7).  Section 3084.3 provides, in part: "Failure to attach all necessary supporting documents may result in the appeal being rejected as specified in subsection 3084.6(b)(7). The appeals coordinator shall inform the inmate or parolee that the appeal is rejected because necessary supporting documents are missing.  The appellant shall be allowed an additional 30 calendar days to secure any missing supporting documents and resubmit the appeal."  15 CAL. CODE REGS. § 3084.3(c).

1  issues separately using separate appeals.   Third, the appeal was rejected for non-
2  compliance with California Code of Regulations § 3084.6(b)(1), which provides that an
3  appeal may be rejected if it "concerns an anticipated action or decision."   (ECF No. 1 at
4  ¶ 22; ECF No. 1-1 at 29-31.)

5         e.   October 30, 2012 Appeal (Log No. Unassigned)

6       Plaintiff alleges that because he was frustrated with the ACO's "refusal to process
7  or answer [his] grievances," on October 30, 2012, he filed another CDCR Form 602 appeal
8  requesting that Defendant Suglich assist Plaintiff to resolve the problem he experienced
9  with the ACO staff.   Plaintiff alleged this appeal was never assigned a log number nor did
10  he receive a response by the ACO Supervisor.   Plaintiff alleges the Appeals Coordinator
11  obstructed Plaintiff's access to the court and intentionally refused to process Plaintiff's
12  May 22, 2012 and June 11, 2012 appeals in retaliation for Plaintiff having exercised his
13  First Amendment right and in violation of the First Amendment and CDCR rules and
14  regulations.   Plaintiff claimed in his appeal that on "several occassions [sic] [he] attempted
15  to resolve this matter without the necessary [sic] of litigation without any results," and he
16  attached each of the seven CDCR 22 requests referenced above to support his argument
17  that the administrative remedies at RJD are futile, ineffective, and unavailable.   Plaintiff
18  alleges in his Complaint that Defendant Suglich "personally participated in the alleged
19  deprivation of constitutional right, conspired and retaliated against the Plaintiff by refusing
20  to process Plaintiff grievances in order to cover up misconduct, knew of the alleged
21  deprivation and failed to act to prevent them, when thre [sic] is a duty to do so."   (ECF No.
22  1 at ¶ 23; ECF No. 1-1 at 38-39.)

23         f.   November 19, 2012 Appeal (Log No. 12-3429)

24       On November 19, 2012, Plaintiff filed another CDCR Form 602 appeal that was
25  assigned Log No. 12-3429, alleging that on November 5, 2012, he notified Defendant Abad
26  via a CDCR 22 form that Plaintiff was requesting a Classification Committee review to
27  determine Plaintiff's privileges and work assignment.   Plaintiff alleged in this appeal that
28  he had notified Defendant Abad during an October 2012 personal interview that Plaintiff

had "been waiting for over 6 months to be schedule[d] for a Classification Committee without any results."   The basis for Plaintiff's request for a Classification Committee review was Plaintiff's position that he had been removed from his job assignment based on a false, fabricated, and unsupported report charging him with being out-of-bounds and attempting to steal personal property.  Plaintiff further alleged in this appeal that he did not receive a timely response from Defendant Abad.  Plaintiff requested that he be scheduled for a Classification Committee review at the next reasonable opportunity and that he be ordered to return to his job assignment.  (ECF No. 1-1 at 79-80, 83.)

On December 28, 2012, Defendants Olson and Ramirez rejected appeal Log No. 12-3429 at the First Level of review because the appeal was missing necessary supporting documents, including the "128 UCC Removal from job" and the "CDCR Form 22 complete through section D."  (*Id.* at 81.)[12]

Plaintiff alleges in his Complaint that Defendants Abad, Benyard, and Cavazos[13] "intentionally interfered with the Plaintiff['s] due process of law and procedural protection which are afforded to prisoner[s] before they can be removed from a job assignment or deprived of any right or privileges."  Plaintiff alleges these Defendants not only conspired to deprive Plaintiff of his due process rights but they also failed for more than fourteen months to provide Plaintiff with a fair Classification Committee hearing to determine the appropriateness of Plaintiff's job removal, despite Plaintiff's repeated requests, in retaliation for Plaintiff's prior civil rights lawsuit and administrative grievances against

---

[12]   Prior to filing appeal Log No. 12-3429, Plaintiff had filed two CDCR 22 forms asking for a Classification Committee Review.  Plaintiff had not received a response to the first request, submitted on November 4, 2012, so on November 19, 2012 he requested a supervisor review, although no response is contained on the form.  There is also no response to Plaintiff's second request, submitted November 19, 2012.  (ECF No. 1-1 at 83-84.)

[13]   Although appeal Log No. 12-3429 only mentions Defendant Abad (*see* ECF No. 1-1 at 79-80), Plaintiff alleges in his Complaint that the appeal was made against Defendants Abad, Benyard, and Cavazos.  (*See* ECF No. 1 at ¶ 27.)

RJD officials.  (ECF No. 1 at ¶ 27.)

g.    December 6, 2012 Appeal (Log No. 13-0108)

On December 6, 2012, Plaintiff filed another CDCR 602 appeal that was assigned Log No. 13-0108, again alleging he never received a response to his May 22, 2012 appeal and setting forth his prior efforts to follow up regarding its status, including his filing of other CDCR Form 602 appeals and CDCR 22 requests.  Plaintiff also alleged that the September 14, 2012 screening letter cancelling appeal Log No. 12-1879 as untimely, *see supra* Part I(B)(2)(c), was done in error because the incident that triggered his deadline to submit the appeal was his receipt of Defendant Behra's CDC 128A and Togafau's CDC 128B on June 22, 2012, and not the May 12, 2012 incident date.  Plaintiff requested that his May 22, 2012 appeal be assigned a log number, that he "receive a proper evaluation and analysis of [his] claim and redress," and that the Appeals Coordinator "halt his practices of intentionally delaying inmate appeal and access to the court, because this matter has being [sic] delay [sic] for approsimately [sic] for 7 months now."  Plaintiff also requested that the CDC 128A and CDC 128B be overturned and removed from Plaintiff's C-file because his due process rights were violated and he was denied the opportunity to present evidence in his behalf.  (ECF No. 1-1 at 42-43.)

On January 10, 2013, Defendants Olson and Ramirez rejected Plaintiff's appeal at the First Level of review for the following violations of California Code of Regulations § 3084.6(b): (a) the "appeal involves multiple issues that do not derive from a single event, or are not directly related and cannot be reasonably addressed in a single response due to this fact;" and (b) Plaintiff's "appeal issue is obscured by pointless verbiage or voluminous unrelated documentation such that the reviewer cannot be reasonably expected to identify the issue under appeal."  (*Id.* at 40-41.)

h.    December 13, 2012 Appeal (Log No. 13-00372)

On December 13, 2012, Plaintiff filed another CDCR Form 602 appeal that was assigned Log No. 13-00372, alleging that non-party officers Cobb and Stratton and Defendants Olson, Ramirez, and Suglich failed to provide reasonable and adequate

administrative remedies and failed to respond to inmates' grievances within the time limits imposed by California Code of Regulations 3084.8(c).[14]  (ECF No. 1 at ¶ 25; ECF No. 1-1 at 64, 66.)  Plaintiff alleged the failure to timely respond to his grievances was part of a conspiracy to retaliate against him, cause intentional delay, and obstruct Plaintiff's ability to access the courts, and that these actions were done to cover-up the wrongdoing of other officers in connection with the May 22, 2012 incident.  Plaintiff claimed that administrative remedies are futile, unavailable, and inadequate, and he requested that the grievances mentioned in his appeal be deemed exhausted.  (ECF No. 1 at ¶ 25; ECF No. 1-1 at 64, 66.)

Plaintiff included with his appeal a copy of a November 14, 2012 memorandum from an RJD official to "All Facility C Inmates and Housing Units" stating it would take "3 to 4 months to catch up to the amount of 602s the [sic] have stacked up."  (ECF No. 1-1 at 69.)

---

[14]     Section 3084.8(c) provides:

All appeals shall be responded to and returned to the inmate or parolee by staff within the following time limits, unless exempted pursuant to the provisions of subsections 3084.8(f) and (g):

(1) First level responses shall be completed within 30 working days from date of receipt by the appeals coordinator.

(2) Second level responses shall be completed within 30 working days from date of receipt by the appeals coordinator.

(3) Third level responses shall be completed within 60 working days from date of receipt by the third level Appeals Chief.

15 CAL. CODE REGS. § 3084.8(c).

Deviation from these time limits is expressly authorized in certain circumstances, including the "[u]navailability of the inmate or parolee, or staff, or witnesses," and where "[t]he complexity of the decision, action, or policy require[s] additional research."  *Id.* at § 3084.8(d)(1), (2).

Plaintiff also included with his appeal a December 13, 2012 "Memorandum of Default Notice" directed to Defendant Paramo in which Plaintiff provided "notice that because CDC employees have failed/refused to comply with CDC regulations governing the prisoner grievance process, the grievance addressed herein [*i.e.*, appeal Log No. 12-1879, dated July 2, 2012] is now exhausted at the [second] leval [sic] of administrative review . . . because the appeals procedure in your institution is futile, unavailable, [and] inadequated [sic]." (*Id.* at 67.)

On January 22, 2013, Defendants Olson and Ramirez rejected Plaintiff's appeal at the First Level of review for the following violations of California Code of Regulations § 3084.6(b): (a) the appeal was missing necessary supporting documents, specifically, the original CDCR Form 602's are required in order to appeal them; (b) the "appeal involves multiple issues that do not derive from a single event, or are not directly related and cannot be reasonably addressed in a single response due to this fact" and "each appeal decision has to be appealed separately;" and (c) the appeal attached dividers or tabs to the appeal forms, and Plaintiff was instructed to remove attached letters. (*Id.* at 70-72.)

On January 28, 2013, Defendant Paramo sent a letter to Plaintiff in response to Plaintiff's correspondence concerning the timely processing of appeals and CDC 22 forms. Defendant Paramo's letter stated:

> On January 28, 2013, you were interviewed by W. Suglich, Associate Warden (AW) in regards to these issues. During the interview, it was discussed that you have filed numerous appeals and you have not received any information regarding the status of your appeals. AW Suglich discussed with you the recent changes within the Inmate Appeals Office and that this has caused a slight delay in the processing of appeals. It was also explained to you that the Inmate Appeals Office is not ignoring any appeals and that all appeals are being processed in the order they are received. AW Suglich requested that you have patience while we are addressing the issues within Inmate Appeals Office and that you may contact him in the future when he makes his rounds within the housing units.

(*Id.* at 68.)

/ / /

Plaintiff alleges that because he was "still experience[ing] problems with his administrative grievances," on February 19, 2013, he submitted his appeal for Third Level review but that it was rejected on March 13, 2013 "citing an administrative rule." (ECF No. 1 at ¶ 25; ECF No. 1-1 at 73.)[15]

### 3.   Allegations Regarding January 18, 2013 Fight and Subsequent Discipline

On January 18, 2013, Plaintiff was sent to an outside hospital for surgery and treatment after having been beaten by another inmate (Mayorga) resulting in serious injuries including a fractured ankle.  Upon his return to RJD on January 23, 2013, Plaintiff was placed in Administrative Segregation ("Ad-Seg") because, according to the Ad-Seg Unit Placement Notice, staff had been unable to determine if there was a possibility of safety concerns as a result of the beating incident.  Plaintiff participated in an Ad-Seg hearing conducted by Defendant Benyard on February 4, 2013 following which Defendant Benyard decided to retain Plaintiff in Ad-Seg pending action by the Classification Committee after concluding that Plaintiff endangered the institution's security.  Defendant Benyard stated in an RVR that Plaintiff admitted during the Ad-Seg hearing that he initiated the fight after putting on leather gloves and confronting Mayorga in an aggressive and physical manner.  Defendant Benyard also relied on the incident reports indicating that both inmates suffered injuries consistent with fighting.

Plaintiff alleges Defendant Benyard's decision to keep him in Ad-Seg was made "without penological justification" and that the reasons offered by Defendant Benyard were untrue and fabricated as "a mere pretext for the unlawful retaliation."  Defendant Benyard imposed a 90-day loss of behavioral time credits upon finding Plaintiff guilty of "Fighting Resulting in the Use of Force" in violation of California Code of Civil Procedure

---

[15]   Specifically, the appeal was rejected at the Third Level of review pursuant to California Code of Regulations § 3084.6(b)(15) because Plaintiff "submitted the appeal for processing at an inappropriate level bypassing required lower level(s) of review."  (ECF No. 1-1 at 74.)  The documents attached to Plaintiff's Complaint reflect that Plaintiff never submitted appeal Log No. 13-00372 for a Second Level review.  (*See id.* at 65.)

§ 3005(d)(1). Plaintiff alleges Defendant Benyard's decision was done in retaliation for Plaintiff having formally complained to Defendant Paramo on January 13, 2013 that Defendant Benyard was discriminating against minority inmates with respect to job assignments for inmate-barbers. The Classification Committee eventually released Plaintiff from Ad-Seg on February 7, 2013 "with no enemy concerns." (ECF No. 1 at ¶¶ 29-31, 33-34, 42; ECF No. 1-1 at 120, 125; ECF No. 1-2 at 61, 65-67, 74-75, 118-119.)

On March 18, 2013, Plaintiff appeared before Defendant Spence, Senior Hearing Officer, for an RVR disciplinary hearing. Plaintiff notified Defendant Spence that the RVR was false and brought in retaliation for Plaintiff's prior civil rights lawsuit and grievances against RJD staff including Plaintiff's employment discrimination complaint against Defendant Benyard. Plaintiff stated he never made any incriminating statements to Defendant Benyard. Plaintiff also informed Defendant Spence that some witnesses should be questioned, including the Staff Assistant assigned to Plaintiff during the Ad-Seg hearing, and that the videotape recording of the Ad-Seg hearing should be reviewed. Plaintiff alleges Defendant Spence denied his requests and that no reasons for denying the requests were noted. Plaintiff alleges Defendant Spence upheld Defendant Benyard's guilty finding and punishment as part of a conspiracy to retaliate against Plaintiff. (ECF No. 1 at ¶ 43; ECF No. 1-2 at 113-116.)

a.    April 10, 2013 Appeal (Log No. 13-01319)

On April 10, 2013, Plaintiff filed a CDCR Form 602 appeal that was assigned Log No. 13-01319, alleging that Defendants Benyard, Hernandez, and Spence violated his due process rights under the First, Fifth, Eighth, and Fourteenth Amendments. Plaintiff claimed the evidence Defendant Spence relied on was illegally obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, (1966), that Defendant Spence deprived Plaintiff of his due process rights by refusing without explanation to call witnesses or present exculpatory evidence such as the video recording of the incident. Plaintiff requested that the RVR be dismissed and removed from his C-file, that the credit loss be restored, and that the involved officers halt their retaliatory actions. (ECF No. 1-2 at 107, 109.)

Plaintiff's appeal was bypassed at the First Level of review.  At the Second Level of review, Defendant Paramo denied the appeal on June 22, 2013 after finding that no violations of Plaintiff's due process rights had been violated.  (*Id.* at 108, 111-112.)

On July 8, 2013, Plaintiff expressed dissatisfaction with the Second Level review on grounds that the reviewer did not properly address all of Plaintiff's claims cited in the appeal.  On September 16, 2013, Plaintiff's appeal was granted in part at the Third Level of review.   Although the Third Level review concluded that Defendant Spence "appropriately found [Plaintiff] guilty" after "thoroughly articulat[ing] the evidence and the weight that was given said evidence," it was "discover[ed] that a due process time constraints violation occurred."  Specifically, Plaintiff was provided the Medical Report of Injury or Unusual Occurrence forms for both Plaintiff and Mayorga less than twenty-four hours before the RVR hearing and there was no indication in the record that Plaintiff had waived time constraints.  Therefore, Third Level intervention was warranted, the RVR was reissued, and the matter was remanded for a rehearing.  (ECF No. 1 at ¶ 43; ECF No. 1-2 at 105-106, 109-110, 119.)

> ### b.   October 16, 2013 Rehearing

On October 16, 2013, Plaintiff appeared before Defendant Allamby for a rehearing of the RVR disciplinary hearing.  Plaintiff reiterated his position that he never made incriminating statements to Defendant Benyard.   Several officers were questioned. Defendants Cortez and Jones both stated they had observed Plaintiff and Mayorga fighting but neither concluded that Plaintiff was the victim.  Defendant Cortez did not recall whether he provided Plaintiff *Miranda* warnings, and Defendant Jones stated that he did not. Plaintiff alleges in his Complaint that Defendants Cortez and Jones conspired to change their version of the facts from their original testimony given on January 18, 2013 in order to cover up Defendant Benyard's misconduct.  Non-party officer Hodge stated he was present during the February 4, 2013 Ad-Seg hearing conducted by Defendant Benyard and that he did not hear Plaintiff make any statements admitting to instigating the fight. Defendant Benyard was also interviewed.  Defendant Allamby denied Plaintiff's request

that the videotape recording of the Ad-Seg hearing be reviewed because, according to Defendant Allamby, no such video exists.  Defendant Allamby ultimately found that the preponderance of evidence supported a guilty finding, and he re-imposed the 90-day credit forfeiture.  (ECF No. 1 at ¶ 44; ECF No. 1-2 at 77-81.)

Plaintiff alleges Defendant Allamby failed to provide any legitimate penological justification for denying Plaintiff's requests, violated Plaintiff's due process rights, arbitrarily and without substantial evidence found Plaintiff guilty of false charges, and conspired to retaliate against Plaintiff due to Plaintiff's grievances against other officers and his prior lawsuit against RJD officials.  (ECF No. 1 at ¶ 45.)

c.   November 7, 2013 Appeal (Log No. 13-3607)

On November 7, 2013, Plaintiff filed a CDCR Form 602 appeal that was assigned Log No. 13-3607, alleging that Defendants Allamby, Benyard, Cortez, Hernandez, and Jones violated his due process rights.  Plaintiff alleged Defendant Allamby wrongly denied his request that the Staff Assistant be interviewed and that the video recording be reviewed and, as a result, Plaintiff was deprived of a fair and impartial disciplinary hearing.  Plaintiff also alleged Defendants Cortez and Jones made false statements during the October 16, 2013 hearing.  Plaintiff requested that the RVR be dismissed and removed from his C-file, that his credit loss be restored, and that the involved officers halt their retaliatory bias. (ECF No. 1-2 at 84-85)

On November 18, 2013, Defendants Olson and Ramirez rejected Plaintiff's appeal at the First Level of review because it was missing required documents, specifically, a final copy of the RVR prepared by authorized personnel.  (*Id.* at 88-89.)

**4.    Allegations Regarding January-February 2013 Personal Property Loss**

During the February 4, 2013 Ad-Seg hearing following his return from the hospital, Plaintiff was provided with a copy of an Inmate Property Inventory prepared following a January 18, 2013 property inventory performed by Defendant Zuniga following the fight with Mayorga.  Plaintiff alleges Defendant Benyard ordered Defendant Zuniga to transpack Plaintiff's personal property and, while in control of Plaintiff's property, Defendant Zuniga

21

lost the property.[16]  Plaintiff alleges Defendant Zuniga intentionally deprived Plaintiff of his personal property in retaliation for Plaintiff having filed a CDCR Form 602 appeal, assigned Log No. 13-0326, on December 30, 2012 against Defendant Zuniga and several other officers alleging a delay in notifying Plaintiff that his mother was waiting for him in the visiting room and by the time Plaintiff was notified he was only permitted a seven-minute visit with his mother.   Plaintiff alleges Defendant Benyard's instruction to Defendant Zuniga was done in retaliation for Plaintiff having formally complained to Defendant Paramo on January 13, 2013 that Defendant Benyard was discriminating against minority inmates with respect to job assignments for inmate-barbers. (ECF No. 1 at ¶¶ 28-30, 32, 35; ECF No. 1-1 at 97-99, 112-17, 122.)[17]

Plaintiff alleges that while Defendant Zuniga was handling Plaintiff's property on January 18, 2013, inmate Garcia observed Defendant Zuniga transpacking some of Plaintiff's personal property and that he observed Defendant Zuniga set aside a large number of Plaintiff's personal property items including an RCA television, a radio, hair clippers, a gold watch, a gold chain, a fan, a hot pot, "ear bugs," a large amount of legal papers including trial transcripts, and numerous food items.   Inmate Garcia asked Defendant Zuniga and non-party officer Jaramillo "why were these property items not being transpacked with inmate Rios['] personal property."   Plaintiff alleges Defendant

---

[16]     Various online searches for the term "transpack" indicate the term refers to packing an inmate's belonging for a transfer.

[17]     After appeal Log No. 13-0326 was cancelled on May 16, 2013 (*see* ECF No. 1-1 at 101), Plaintiff filed a second CDCR Form 602 appeal, assigned Log No. 13-1891, on June 11, 2013, addressing the delayed visitation incident.  (*Id.* at 105-07.)  However, Plaintiff does not appear to assert a claim against Defendant Zuniga, or any other Defendant, based on the delayed visitation incident.  Additionally, Plaintiff does not appear to assert a claim against Defendants Benyard and Paramo, or any other Defendant, based on the employment discrimination complaint.  Rather, these complaint are mentioned in the Complaint as providing the background for Defendants' alleged retaliatory actions involving the loss of Plaintiff's personal property.

Zuniga responded, "No, fuck that, he [referring to Plaintiff] 602 us so we're going to teach him a lesson."  (ECF No. 1 at ¶ 37; ECF No. 1-2 at 21.)

Plaintiff alleges that on February 25, 2013, some of his personal property was returned to him but he was informed that the Release and Receive ("R&R") staff could not locate Plaintiff's television even though Defendant Zuniga's Inmate Property Inventory had listed a television in operational condition.  On March 19, 2013, Defendant Alvarez notified Plaintiff that his television had been located.  However, Plaintiff claims Defendant Alvarez intentionally and arbitrarily deprived him of his television when Defendant Alvarez confiscated the television after claiming it had been altered from its original state.[18] (ECF No. 1 at ¶ 38; ECF No. 1-1 at 122.)

On February 14, 2013, Plaintiff filed a CDCR Form 602 appeal that was assigned Log No. 13-00777, in which he alleged he was missing numerous items Defendant Zuniga had inventoried on the Inmate Property Inventory form.  Plaintiff's appeal also alleged that on February 13, 2013, he was informed by other inmates that they had observed Defendant Zuniga giving away some of Plaintiff's property to another inmate.  Plaintiff alleges this was done in retaliation for Plaintiff having filed a staff complaint against Defendant Zuniga and for having filed his prior civil rights lawsuit against other RJD officials.  Plaintiff's appeal requested, among other things, that Defendant Zuniga be reprimanded and held responsible for the loss of Plaintiff's personal property and that Plaintiff be compensated in the amount of $1,500.00.  (ECF No. 1 at ¶ 35; ECF No. 1-1 at 128, 130.)[19]

_____

[18]    In response to a March 14, 2013 CDCR 22 request from Plaintiff, Defendant Alvarez stated on March 28, 2013 that "[a]fter an investigation into the missing TV, it was found and determined to be altered from it's original state, which means it is contraband.  It will not be issued to you and will be disposed of per institutional procedure.  R&R staff also notes that the TV had an altered serial number on it."  (ECF No. 1-2 at 41.)

[19]    On February 28, 2013, Plaintiff filed a CDCR 22 inmate request reiterating the allegations in appeal Log No. 13-00777.  Plaintiff claimed to have previously submitted a CDCR 22 on February 14, 2013 addressed to Defendant Zuniga but that he did not receive a timely response.  On March 3, 2013, Defendant Zuniga responded: "This is the first time

On June 20, 2013, following Defendant Rutledge's interview of Plaintiff, Plaintiff's appeal Log No. 13-00777 was denied at the First Level of review[20] after concluding that Defendant Zuniga properly inventoried Plaintiff's property but that Plaintiff's television was later confiscated on March 19, 2013.  Plaintiff alleges he requested that Defendant Rutledge interview the inmate witnesses that observed Defendant Zuniga intentionally misplacing Plaintiff's property.  However, Plaintiff alleges Defendant Rutledge, without advancing any legitimate penological goal and in retaliation for Plaintiff having filed grievances against other prison staff, "intentionally and in a conspiratorial fashion refused

---------------

this matter has been brought to my attention.  The television was inventoried and sent to R&R.  As far as the other items in question they were not in your property."  Plaintiff requested a supervisor review on March 4, 2013 claiming that Defendant Zuniga was lying in his response.  On March 29, 2013, Defendant Rutledge responded: "Officer M. Zuniga adviced [sic] me inmate Rios's television was inoperable at the time he conducted the inventory.  I advised inmate Rios he has the right to appeal this issue."  (ECF No. 1-2 at 13.)

In addition to his February 28, 2013 CDCR 22 request, Plaintiff submitted numerous other documents to prison officials reiterating his property loss allegations, complaining about alleged delays in processing appeal Log No. 13-00777, and/or claiming that administrative remedies at RJD are futile and inadequate, including: (1) a May 15, 2013 notice to Defendant Paramo (ECF No. 1-2 at 25); (2) an August 6, 2013 letter to the CDCR's chief of the Inmate Appeals Branch (*id.* at 26); (3) six CDCR Form 602 appeals, assigned Log Nos. 13-1365, 13-1467, 13-1753, 13-2132, 13-2528, and 13-2675 (*id.* at 28-29, 32, 38-39, 44-45, 49-54); and (4) three CDCR 22 requests regarding the status of appeal Log No. 13-00777 (*id.* at 30, 41, 46).  (*See also* ECF No. 1 at ¶¶ 39-41.)

Plaintiff alleges in his Complaint that one of these appeals, Log No. 13-1365, dated April 17, 2013, was erroneously cancelled by the ACO staff as untimely based on "retaliatory biased [sic] to prevent the information contained in the CDC 602s from becoming known."  In this appeal Plaintiff had alleged that Defendants Alvarez, Benyard, Rutledge, and Zuniga retaliated against him and conspired to deprive him of his property without due process of law.  (ECF No. 1 at ¶ 39; ECF No. 1-2 at 38-39.)

[20]   Defendants Olson and Ramirez initially rejected Plaintiff's appeal on February 21, 2013 and March 4, 2013 at the First Level of review for missing required documents.  (*See* ECF No. 1-2 at 11-12.)

1   to call or interview any of Plaintiff's witness [sic] in order to cover up misconduct and took

2   an adverse action of denied [sic] Plaintiff's meritorious legal claims against Defendant M.

3   Zuniga."  (ECF No. 1 at ¶ 35; ECF No. 1-2 at 10.)

4       Plaintiff alleges Defendant Benyard supervised Defendants Rutledge and Zuniga

5   and that "he is the promoter of the retaliatory bias and conspiracy against the Plaintiff in

6   this matter, he actually participated or order [sic] Defendant M. Zuniga to transpacking

7   [sic] Plaintiff's personal property, he and the other Defendants acted in concert to

8   accomplish the unlawful objective of intentionally deprive [sic] the Plaintiff's [sic] of his

9   personal property."  (ECF No. 1 at ¶ 36.)

10       On July 16, 2013, Plaintiff expressed dissatisfaction with the First Level review on

11   grounds that the reviewer denied Plaintiff's right to call witnesses to support his allegation

12   that Defendant Zuniga "intentionally and purposely misplaced [Plaintiff's] personal

13   property, as a retaliation for him filing a complaint against the correctional officer Zuniga."

14   Plaintiff also claims that during the administrative grievance process Defendant Zuniga

15   issued a false statement about the condition of Plaintiff's television at the time he

16   transpacked Plaintiff's property.  (ECF No. 1 at ¶ 35; ECF No. 1-1 at 135, 137; ECF No.

17   1-2 at 10.)

18       On July 16, 2013, Plaintiff requested a Second Level review based on his

19   dissatisfaction with the First Level review.  Plaintiff claimed he was denied of his right to

20   call witnesses at the First Level review and he requested that four specific inmates be

21   interviewed.  Plaintiff also claimed the CDCR's records and Defendant Zuniga's testimony

22   clearly showed that not only was Plaintiff's television lost/damaged when the R&R staff

23   located it two months after Defendant Zuniga claimed he inventoried the television, but the

24   records also show that Defendant Zuniga lied when he said that the television was

25   inoperable when he conducted the inventory.  (ECF No. 1-1 at 129, 131.)

26       On December 16, 2013, non-party officer K.A. Seibel, Chief Deputy Warden, denied

27   Plaintiff's appeal at the Second Level of review.  Seibel concluded, after interviewing

28   Plaintiff's four inmate witnesses and Defendant Zuniga, that the only confirmed loss of

property was Plaintiff's television which had been inventoried but was now unaccounted for.  Seibel asked Plaintiff if he wanted a replacement television as compensation but Plaintiff indicated he had already received another television from family.  When Seibel asked what items Plaintiff would consider as sufficient compensation Plaintiff mentioned a few items, including a trimmer, a hot pot, and maybe a radio.  On December 23, 2013, Plaintiff was escorted to R&R and offered compensation for the value of the lost television, including a "one (1) New Bushy Creek Crock Pot, one (1) Sony AM/FM Radio CD Player, one (1) Norelco Trimmer, and one set of (1) Platinum Headphones."  Plaintiff declined the offer.  Plaintiff also claimed that legal paperwork had been lost during the incident, but Seibel found this claim was unsubstantiated.  Specifically, the interviews revealed that Plaintiff had authorized a fellow inmate to hold his legal paperwork at the time of the property inventory.  (ECF No. 1-2 at 5-9.)

On February 25, 2014, Plaintiff expressed dissatisfaction with the Second Level review on grounds that "the SLR reviewer conspired against [Plaintiff] to cover up misconduct committed by their subordinate, when they refuse or intentionally deprive me of a fair and impartial investigation as to determine whether or not the correctional officer is liable under Cal. laws for the missing personal property and subjected [Plaintiff] to retaliatory bias."  (ECF No. 1-1 at 129, 131; ECF No. 1-2 at 5-8.)

On February 25, 2014, Plaintiff requested a Third Level review based on his dissatisfaction with the Second Level review.  Plaintiff claimed the reviewer "denied to [Plaintiff] the benefit of the law" and "conspired against [him] in order to cover up misconduct committed by their [sic] subordinate, when they [sic] refuse or intentionally deprive [Plaintiff] of a fair and impartial investigation as to determine whether or not the correctional officer [*i.e.*, Defendant Zuniga] is liable under [California] laws for the missing personal property and subjected [Plaintiff] to retaliatory bias."  Plaintiff again argued that Defendant Zuniga had made a false statement regarding the condition of Plaintiff's television during the inventory.  (ECF No. 1-1 at 129, 131.)

/ / /

### 5.   Allegations Regarding July 23, 2013 Classification Committee Hearing

On July 23, 2013, Plaintiff finally appeared before the Unit Classification Committee ("UCC") which was presided over by Defendant Benyard.  Plaintiff advised Defendants Benyard and Cavazos that he had been waiting more than fourteen months for a UCC hearing so that he could address the wrongful termination of his job assignment. The UCC members informed Plaintiff they would not speak on that issue and they referred Plaintiff to use the appeal process for the matter.  (ECF No. 1 at ¶ 48.)

### a.   August 5, 2013 Appeal (Log No. Unassigned)

Dissatisfied with the refusal of the UCC to address his job termination issue, on August 5, 2013, Plaintiff filed a CDCR Form 602 appeal alleging that several RJD officials, including Defendants Benyard, Cavazos, and Paramo, discriminated, retaliated, and conspired against Plaintiff due to his filing of appeals and complaints against them and other "top officials."  Plaintiff alleged Defendants violated his due process rights and interfered with his liberty interest.  As to the discrimination claim, Plaintiff claimed the UCC officials refused "to provide services and rehabilitative programs on the grounds that the inmates [sic] has developmental disabilities and INS hold."  Plaintiff requested that he be returned to his job assignment in the prison laundry facility, that the CDC 128A and 128B issued on May 16, 2012, *see supra* Part I(B)(2), be removed from his C-file, and that he no longer be subject to retaliation for filing grievances against prison officials.  (*Id.*; ECF No. 1-1 at 86-95)

Plaintiff alleges he never received a response to his August 5, 2013 appeal within a reasonable time.[21]  Plaintiff also alleges he submitted a CDCR 22 request concurrently with the appeal asking that he be notified when the appeal had been received by the ACO, and that he also never received a response to the CDCR 22 request.  (ECF No. 1 at ¶ 48; ECF No. 1-1 at 88.)

---

[21]    The copy of this appeal attached to Plaintiff's Complaint does not contain an appeal log number.  (*See* ECF No. 1-2 at 86-87.)

b.   August 21, 2013 Appeal (Log No. Unassigned)

On August 21, 2013, Plaintiff filed another CDCR Form 602 appeal alleging that several RJD officials, including Defendants Benyard, Cavazos, and Paramo, discriminated, retaliated, and conspired against Plaintiff for "filing complaint and for maintaining a lawsuit." Plaintiff alleged that at the July 23, 2013 UCC hearing he was found ineligible for re-entry programs "due to CSRA of low, ICE hold and time." Plaintiff also alleged he was placed, without any penological justification, on an "unassigned list" relating to his prior laundry job. Plaintiff alleged the UCC officials failed to address his assignment concerns during the hearing including his desire to participate in available re-entry programs because his minimum eligible parole date was September 4, 2014 and the parole board had informed him he should participate in re-entry programs before he would be found eligible for parole. Plaintiff alleges Defendants' actions as alleged in the Complaint were done with malice and the intent to prejudice Plaintiff's parole eligibility. Plaintiff requested that he be returned to his prison laundry job, be permitted to participate in re-entry programs, and that the May 16, 2012 CDC 128A and 128B be removed from his C-file. (ECF No. 1 at ¶¶ 46, 48; ECF No. 1-1 at 89-90.)

Plaintiff alleges he never received a response to his August 21, 2013 appeal within a reasonable time or to a CDCR 22 request filed concurrently with his appeal asking that he be notified upon the ACO's receipt of the appeal. Plaintiff contends RJD's Legal Mail Program documents indicate these documents were delivered to the ACO but that the ACO "chose not to respond to Plaintiff's grievances, render[ing] the administrative remedies as to that process futile, unavailable or inadequate." (ECF No. 1 at ¶ 48; ECF No. 1-1 at 45-48, 91.)

**6.   Additional Allegations Regarding Improper Processing of Appeals**

a.   December 11, 2013 Appeal (Log No. 14-104)

On December 11, 2013, Plaintiff filed a CDCR Form 602 appeal that was assigned Log No. 14-104, alleging that Defendants Benyard, Olson, Paramo, and Ramirez and their "agents" conspired to retaliate against Plaintiff by refusing to process his grievances and

28

depriving him of his ability to access the courts.  Plaintiff identified several "overdue" grievances that he had unsuccessfully attempted to resolve, including: appeal Log No. 13-3607, dated November 7, 2013, *see supra* Part I(B)(3)(c); appeal Log No. 13-00777, dated February 14, 2013, *see supra* Part I(B)(4); and Plaintiff's unassigned appeals dated August 5, 2013 and August 21, 2013, *see supra* Part I(B)(5).[22]  Plaintiff requested that the grievances be processed in a timely manner and that the involved Defendants halt their retaliatory bias and conspiracy against him.  (ECF No. 1-2 at 90-94.)

On January 13, 2014, Defendants Olson and Ramirez rejected Plaintiff's appeal at the First Level of review because the appeal involved multiple issues that did not derive from a single event, or are not directly related and cannot reasonably addressed in a single response due to this fact.  Plaintiff was instructed to separate his issues with each appeal separately.  (*Id.* at 92.)

On January 16, 2014, Plaintiff filed a CDCR 22 request addressed to Defendant Hernandez and forwarded to Defendant Olson in which he stated:

> Take judicial notice that you have erred in your decision to reject [appeal Log No. 14-104], misconstrue the legal rules with regard to this matter, as I state in my staff complaint my claims involves multiple issues that derive from your act or omission to act, obstruction of justice, intentional delay, refusal to respond, or failure to process all of the grievances listed in this matter. . . . My allegations are directly related to the single fact that "you have retaliated and conspiracy [sic] against me by refusing to process grievances and by acting in concert with other staff in order to cover up misconduct.

(*Id.* at 94.)

### b.   January 21, 2014 Appeal (Log No. Unassigned)

On January 21, 2014, Plaintiff filed another CDCR Form 602 that was never assigned a log number.  Plaintiff alleged in the appeal that the ACO failed to timely respond to his grievances rendering administrative remedies futile, unavailable, or inadequate.

---

[22]   The appeal also identified appeal Log No. 12-2398 concerning an "ADA issue," although that appeal does not appear to be relevant to this lawsuit.

Plaintiff referenced his two prior attempts to address this issue, on November 7, 2013, appeal Log No. 13-3607, and on December 11, 2013, appeal Log No. 14-104.  (ECF No. 1-2 at 95-96.)

Having received no response to his appeal, on February 10, 2014, Plaintiff filed a CDCR 22 request in a "last attempt" at resolving his disputes before filing a civil rights lawsuit against Defendant Paramo and the ACO staff.  Plaintiff claimed he had provided notice on multiple occasions that the ACO staff had refused to process or respond to Plaintiff's appeals in retaliation for filing grievances against other RJD staff, and that this conspiracy was carried out to cover up misconduct.  (ECF No. 1-2 at 98.)

### 7.    Concluding Allegations

Plaintiff alleges in his Complaint that the facts set forth above demonstrate that he has made a good faith effort to both informally and formally resolve disputes through the prison administrative process, but that the process is futile, unavailable, or inadequate. Therefore, Plaintiff contends the Court should deem that he exhausted all available administrative remedies.  Plaintiff also alleges the ACO staff refused to properly process Plaintiff's grievances by delaying the process, rejecting and cancelling Plaintiff's appeals without proper justification, and conspiring to cover up the misconduct of other officials. (ECF No. 1 at ¶¶ 49, 52.)

Plaintiff alleges: (1) his appeal regarding his wrongful termination from his job assignment was never addressed by either the UCC or the ACO; (2) his appeal regarding his personal property loss is still pending at the Third Level of review; (3) his appeal regarding the false RVR charges was never processed by the ACO; and (4) his complaints against ACO officials were never processed.  (*Id.* at ¶ 51.)

Plaintiff alleges violations of his civil rights protected by the First, Fifth, Eighth, and Fourteenth Amendments including that Defendants conspired to retaliate against him for filing grievances, complaints, and a lawsuit against RJD officials; inflicted "unjustified and excessive abuse of power and . . . treated [him] cruelly or different from other similar[s] situate[d];" violated his procedural due process rights with regard to the wrongful

termination and RVR hearing; and violated his free speech rights.  (*Id.* at ¶¶ 54-59.)

Plaintiff seeks declaratory and injunctive relief.  (*Id.* at 30:1-31:19.)  Plaintiff also seeks to recover compensatory damages in the following amounts: $150,000.00 each from Defendants Benyard, Olson, and Ramirez; $100,000.00 from Defendant Zuniga; $50,000.00 each from Defendants Abad, Allamby, Alvarez, Behra, Cavazos, Cortez, Jones, Paramo, and Rutledge; and $25,000.00 each from Defendants Hernandez, Spence, and Suglich.  (*Id.* at 31:20-32:8.)  Plaintiff also seeks punitive damages in the amount of $100,000, costs, and back pay for the wrongful termination of his job assignment.  (*Id.* at 7, 32:9-10.)

## II. DISCUSSION

## A.  <u>Plaintiff's Motion for Temporary Restraining Order/Preliminary Injunction</u>

Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction on October 8, 2014.  (ECF No. 20.)  Defendants filed an opposition to Plaintiff's motion on October 30, 2014.  (ECF No. 28.)[23]  Plaintiff filed a reply to Defendants' opposition on November 12, 2014.  (ECF No. 31.)

Plaintiff seeks a preliminary injunction because it will prevent "irreparable injury or harm [to Plaintiff] while he awaits the final disposition of his case."  (ECF No. 20 at 1:25-27.)  Plaintiff contends "the Defendants, their successors in office, agents and employees and all other persons acting in concert and participation with them have engage[d] in an ongoing campaign of harassment [sic], threats and punishment towards the Plaintiff because the Plaintiff had filed this lawsuit against them, and because he continued to file

---

[23]   The Court issued a briefing schedule on Plaintiff's motion because "[t]he court may issue a preliminary injunction only on notice to the adverse party."  FED. R. CIV. P. 65(a)(1).  (*See* ECF No. 22.)  Although a temporary restraining order may issue "without written or oral notice to the adverse party," FED. R. CIV. P. 65(b)(1), the Court also permitted Defendants an opportunity to respond to Plaintiff's request for a temporary restraining order.  *See* FED. R. CIV. P. 65 advisory committee's notes (1966 Amendment) ("In view of the possibly drastic consequences of a temporary restraining order, the opposition should be heard, if feasible, before the order is granted.").

CDC 602 inmate appeals challenging the validity of their action." (*Id.* at 2:5-9.)  Plaintiff further contends "the Defendants had threatened him that they will continuing [sic] with their illegal action and their practices of intentionally provoking him in an attempt to get him into trouble and into Administrative Segregation, harassed, threatened, punish [sic], confi[s]cating his legal papers, and disregard his health and safety concerns." (*Id.* at 2:11-15.)  Plaintiff alleges "he has been made a target of harassment" by RJD officers and that he "is in an actual and imminent danger of future violation of his constitutional rights." (*Id.* at 2:15-21.)  Plaintiff seeks injunctive relief against "the Defendants, their successors in office, agents and employees and all other persons acting in concern [sic] and participation with them, to halt immediately with there [sic] ongoing conspiracy and retaliatory bias, such as harassment, threats, punishment, confiscation of legal papers or personal property." (*Id.* at 10:21-24.)

Defendants generally oppose Plaintiff's motion on that the grounds that (1) Plaintiff "has no likelihood of success on the merits of his case, the balance of equities does not weigh in his favor, and the requested injunction is not in the public interest," and (2) "[t]he injunction he requests is overbroad and would extend to individuals who are not parties to this case and would enjoin conduct and claims that are not relevant to this case, including legal conduct." (ECF No. 28 at 2:1-6.)

### 1.   Applicable Legal Standards

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quotations and citation omitted); *see also Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008) ("A preliminary injunction is an extraordinary remedy, never awarded as of right." (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008))); *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (injunctive relief should be used "sparingly, and only in a clear and plain case." (quotations and citation omitted)).  "A party seeking a temporary restraining order or preliminary injunction simply cannot prevail when that motion is unsupported by evidence."

*Armstrong v. Spearman*, No. 1:13-cv-00246-AWI-SAB (PC), 2014 U.S. Dist. LEXIS 79094, at *20 (E.D. Cal. June 6, 2014).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citing *Munof*, 553 U.S. at 689-90; *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982)).

In prisoner cases, requests for preliminary injunctive relief are further limited by the Prison Litigation Reform Act ("PLRA"), which requires courts to ensure the "relief [is] narrowly drawn, extend[s] no further than necessary to correct the harm the court finds requires preliminary relief, and [is] the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B)[24] in tailoring any preliminary relief." 18 U.S.C. § 3626(a)(2).

"The same standards generally apply to temporary restraining orders and preliminary injunctions." *Porter v. Neotti*, No. 11cv01050 BTM (BLM), 2011 U.S. Dist. LEXIS

---

[24] Paragraph 1(B) provides:

The court shall not order any prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law, unless—

    (i)     Federal law requires such relief to be ordered in violation of State or local law;

    (ii)    the relief is necessary to correct the violation of a Federal right; and

    (iii)   no other relief will correct the violation of the Federal right.

18 U.S.C. § 3626(a)(1)(B).

33

145280, at *5 (S.D. Cal. Dec. 15, 2011) (citing *Credit Bureau Connection, Inc. v. Pardini*, 726 F. Supp. 2d 1107, 1114 (E.D. Cal. 2010)).

## 2.    Analysis

### a.    Plaintiff Has Not Shown Likely Success on the Merits

Plaintiff argues the Court's sua sponte screening order (ECF No. 5) amounts to "a preliminary determination based on the face of the pleading alone that Plaintiff has a 'reasonable opportunity to prevail on the merit[s]." (ECF No. 20 at 4:5-10.) However, screening-stage satisfaction of the "reasonable opportunity to prevail on the merits" standard contained in 42 U.S.C. § 1997e(g)(2) is not equivalent to a demonstration that Plaintiff is *likely* to succeed on the merits.

Based on the Court's analysis of Defendants' Motion for Partial Summary Judgment and Motion to Dismisss, *see infra* Parts II(B)-(C), the Court concludes Plaintiff is not likely to prevail on the merits of his claims. Indeed, many of Plaintiff's claims are subject to summary judgment for failure to exhaust. Moreover, Plaintiff's Complaint fails to allege facts sufficient to state any of his claims against eight of the sixteen Defendants (*i.e.*, Defendants Abad, Allamby, Alvarez, Cortez, Hernandez, Jones, Rutledge, and Spence). Additionally, Plaintiff fails to state a due process or cruel and unusual punishment claim against any of the Defendants. Further, although Plaintiff states a retaliation claim against seven Defendants, a conspiracy claim against three Defendants, and an equal protection claim against two Defendants, he has failed to demonstrate the likelihood of success on the merits of those claims. He survives dismissal of these claims at the pleading stage because his Complaint contains enough factual content that, accepted as true, plausibly entitles Plaintiff to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). However, plausibility is not the same as likelihood of success on the merits, and Plaintiff has not met his burden of demonstrating he is likely to prevail on the merits.

b.    Plaintiff Establishes Likelihood of Irreparable Harm

Plaintiff claims in his Motion for Temporary Restraining Order and Preliminary Injunction that, as summarized above, *see supra* Part I(B), the Defendants and other officers "have conspired and subjected Plaintiff to retaliatory bias and continuing with an ongoing campaign of harassment, threats and punishment towards the Plaintiff because the Plaintiff had filed a lawsuit and grievances against them."   (ECF No. 20 at 4:11-14.) Plaintiff also contends that, in response to the instant lawsuit, "[t]he Defendants and their agents" have continued "to take adverse action which is so bad that it would stop an avarage [sic] person from continuing with their suit," and that it "is likely that [he] will suffer another harm again soon, because the Defendants have engage[d] in an ongoing campaign of harassment and threatened to do it again." (*Id.* at 4:16-24.)  Plaintiff claims that "several officer[s] have harassed and intentionally provoke[ed] the Plaintiff in an attempt to get him into trouble and into Administrative Segregation," and that this harassment is "because he ha[s] filed this present lawsuit against them and fellow officer[s]." (*Id.* at 7:2-7.)

Plaintiff alleges that, in response to this lawsuit, Defendants have "engage[d] in an ongoing conspiracy and retaliatory bias such as harassment, threats, punitive cell search, confiscation of Plaintiff's legal papers/ personal property, denial of adequated [sic] health and safety or recklessly [sic] disregard to Plaintiff's health and safety." (*Id.* at 16:21-26.) Specifically, Plaintiff alleges that on September 9, 2014, Defendant Behra pulled Plaintiff aside to a patio area and questioned Plaintiff about this lawsuit.  Defendant Behra became angry and began yelling at Plaintiff in a loud and threatening manner, and he told Plaintiff he would "screw [Plaintiff] up" for having filed this lawsuit. (*Id.* at 5:16-20.)

Plaintiff also contends that on September 16, 2014, upon Plaintiff's arrival at the health clinic, non-party officer Strayhorn refused Plaintiff's request to sit and wait inside the clinic notwithstanding the ninety-four degree temperature and the fact that Plaintiff is a "heat risk inmate."  Due to the extreme temperature Plaintiff began feeling dizzy and disoriented, and he started having difficulty breathing.  Plaintiff "attempted to use the facility water resort to drink and for other cooling measure to releive [sic] some of [his]

1   symptoms," but Strayhorn yelled at Plaintiff to stop using the water.  Plaintiff attempted to

2   alert Defendant Rutledge about his condition but Defendant Rutledge refused to talk to

3   Plaintiff.  Strayhorn also threatened to write Plaintiff up with a disciplinary report for using

4   the water resort.  Plaintiff complains that Strayhorn and Defendant Rutledge's actions

5   recklessly disregard Plaintiff's health and safety.  (*Id.* at 5:22-6:14.)

6        Plaintiff also alleges that on September 24, 2014, upon his release from the housing

7   unit for morning yard time, he witnessed Defendant Rutledge and non-party officer

8   Romero speaking together by the unit door, although Officer Romero was not assigned to

9   Plaintiff's housing unit at this time.  When Plaintiff returned to his cell he noticed the cell

10  had been searched and was left a mess.  Plaintiff inventoried his personal property items

11  and discovered he was missing legal papers and a hot pot.  Plaintiff was provided with a

12  cell search worksheet that was "a complete lie about the overall condition of [his] cell and

13  about the property confiscated of course because C/O Romero attempted to cover up his

14  misconduct and retaliatory bias."  On September 25, 2014, Plaintiff attempted to get a

15  formal response from Romero, but Romero declined to speak with Plaintiff, stating only

16  that it is "only the beginning."  (*Id.* at 6:15-28.)

17       Defendants do not argue that Plaintiff fails to establish the likelihood of irreparable

18  harm, and the Court believes Plaintiff has satisfied his burden as to this element.  Plaintiff

19  claims prison officials have threatened and harassed him as a result of his filing of this

20  lawsuit, including disregarding his health and safety and confiscating his legal documents.

21  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably

22  constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (citing *New York

23  Times Co. v. United States*, 403 U.S. 713 (1971)).  Thus, the fact that Plaintiff has

24  introduced facts showing that he is being retaliated against due to his exercise of his First

25  Amendment right to file this lawsuit is sufficient to establish the likelihood of irreparable

26  harm.

27  / / /

28  / / /

36

c.   The Balance of Equities and the Public Interest Do Not Favor Plaintiff

Plaintiff argues that his "present suffering . . . and the potential suffering if the Defendants do not stop with their ongoing conspiracy and retaliatory bias, harrassment [sic], threats and illegal punishment are enormous.  The Defendants will not experience any suffering if the Court grant[s] the order, because the Defendants are obligated to obey the law and the U.S. Constitution.  The Defendants' hardship amounts to no more than business as usual."  (ECF No. 20 at 9:3-8.)  Plaintiff also argues granting injunctive relief "will serve the public interest because it is always in the public interest for prison officials to obey the law."  (*Id.* at 10:2-3.)

Defendants contend the balance of equities does not tip in Plaintiff's favor because the injunction he seeks is broad and non-specific, and it would prohibit any actions by prison officials that Plaintiff deems retaliatory or harassing, even when such actions are lawful and justified.  Defendants also contend the requested injunction would impinge on the prison's ability to maintain order and safety.  (ECF No. 28 at 4:26-5:27.)

The Court finds that the balance of equities and the public interest do not favor Plaintiff.  Plaintiff seeks an injunction requiring "the Defendants, their successors in office, agents and employees and all other persons acting in concern [sic] and participation with them, to halt immediately with there [sic] ongoing conspiracy and retaliatory bias, such as harassment, threats, punishment, confiscation of legal papers or personal property."  (ECF No. 20 at 10:21-24.)  This is improper for multiple reasons.  First, the requested injunction improperly seeks to enjoin unidentified prison officers.  "Generalized injunctive relief against unnamed prison officials is not permissible under the PLRA because such relief is not 'narrowly drawn.'" *Witkin v. Solis*, No. 1:12-cv-01256-MJS (PC), 2013 U.S. Dist. LEXIS 67070, at *4 (E.D. Cal. May 9, 2013) (quoting 18 U.S.C. § 3626(a)(1)(A)); *see also James v. Sweeny*, No. 1:12-cv-01704-LJO-MJS (PC), 2013 U.S. Dist. LEXIS 3558, at *6 (E.D. Cal. Jan. 8, 2013) ("Generalized injunctive relief against unidentified California Department of Correction and Rehabilitation ('CDCR') staff is not permissible.").

/ / /

Second, the requested injunction improperly infringes in prison officials' ability to discipline Plaintiff, as necessary, and to maintain the security and safety of the prison. *See Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." (citations omitted)). "[A]bsent the existence of exceptional circumstances not present here, the Court will not intervene in the day-to-day management of prisons." *Lopez v. Shiesha*, No. 1:12-cv-0076-MJS (PC), 2012 U.S. Dist. LEXIS 181872, at *10 (E.D. Cal. Dec. 21, 2012) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (prison officials entitled to substantial deference); *Sandin v. Conner*, 515 U.S. 472, 482-83 (1995) (disapproving involvement of federal courts in the day-to-day management of prisons)).

### d.   Conclusion

Based on the foregoing, the Court finds that although Plaintiff is able to show the likelihood of irreparable harm, the weight of the other factors cautions against the issuance of injunctive relief. Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction should be **DENIED**.

## B.   Defendants' Motion for Partial Summary Judgment for Failure to Exhaust

Defendants have filed a Motion for Partial Summary Judgment asserting that Plaintiff has failed to exhaust administrative remedies as to some of his claims. (ECF No. 34.) Defendants concede that Plaintiff exhausted the following claims: (1) his due process property deprivation claim against Defendant Zuniga; (2) his retaliation and conspiracy claims against Defendants Benyard, Hernandez, Olson, and Ramirez; and (3) his due process claim against Defendants Benyard and Hernandez. (*Id.* at 3:25-28.) However, Defendants argue in their Motion for Partial Summary Judgment that Plaintiff failed to exhaust the following claims: (1) his retaliation and conspiracy claims against all Defendants except Defendants Benyard, Hernandez, Olson, and Ramirez; (2) his due process claim against all Defendants except Defendants Benyard and Hernandez; and (3) his equal protection and cruel and unusual punishment claims against all Defendants. (*Id.*

at 3:3-13, 5:1-6:8.)  In addition, Defendants contend "that the grievance process was fully available to Plaintiff, that he was thoroughly familiar with the procedures, and that, in fact, he successfully processed certain grievances through the Third Level of review."  (*Id.* at 6:10-13.)  In support of their Motion for Partial Summary Judgment, Defendants present the declarations of R. Briggs, the Acting Chief of the CDCR's Office of Appeals (ECF No. 34-2), and B. Baenziger, the Appeals Coordinator at RJD (ECF No. 34-3).

Plaintiff contends in his opposition to Defendants' Motion for Partial Summary Judgment that the "undisputed facts show that Plaintiff adequately exhausted his administrative remedies to all of his claims."  (ECF No. 41 at 1:25-26.)  Plaintiff alternatively contends that he should be excused from complying with the exhaustion requirement because Defendants failed to respond to his grievances in reasonable time frame, repeatedly rejected his grievances at the screening stage, and refused to respond or assign a log number to his appeals, thereby making administrative remedies effectively unavailable.  (*Id.* at 5:9-12.)

Defendants filed a reply to Plaintiff's opposition generally reiterating the arguments in their moving papers.  (ECF No. 44.)

Following Defendants' filing of their reply, on January 7, 2015 Plaintiff filed a supplemental declaration, dated January 1, 2015, in support of his opposition to the motion. (ECF No. 48.)  Defendants filed an opposition on January 16, 2015 addressing the merits of the supplemental declaration but preliminarily arguing that the Court should disregard the declaration.  (ECF No. 53.)  First, Defendants contend the declaration fails to comply with Federal Rule of Civil Procedure 15(d).  Rule 15(d) provides, in part, that, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  FED. R. CIV. P. 15(d).  However, Rule 15(d) does not apply to Plaintiff's filing of a supplemental declaration in opposition to Defendants' Motion for Partial Summary Judgment.  Indeed, motions and oppositions to motions are not *pleadings*.  *See* FED. R. CIV. P. 7; *Parker v. United States*, 110 F.3d 678, 682 (9th Cir.

1997).

Second, Defendants contend Plaintiff's supplemental opposition amounts to an improper sur-reply. In *Johnson v. Wennes*, No. 08cv1798-L(JMA), 2009 U.S. Dist. LEXIS 36992 (S.D. Cal. April 28, 2009), the court recognized that neither the Federal Rules of Civil Procedure nor the Civil Local Rules expressly contemplate sur-replies:

> Neither the Federal Rules of Civil Procedure nor the Civil Local Rules provides a right to file a sur-reply because a sur-reply is not part of the ordinary process for the briefing of motions. When a motion is filed, a respondent may file an opposition to it and the movant may file a reply to that opposition. The respondent may not file a sur-reply unless leave of court is granted. While the court may, in its discretion, permit additional briefing, including a sur-reply, it generally will not permit such additional briefing absent good cause.

*Id.* at *5-6. Here, the Court will consider Plaintiff's supplemental declaration. Although Plaintiff is required to follow proper procedural rules notwithstanding his status as a *pro se* prisoner, the Court finds it noteworthy that Plaintiff filed his supplemental declaration prior to his January 6, 2015 deadline to oppose Defendants' Motion for Partial Summary Judgment. Moreover, although the supplemental declaration permitted Plaintiff an opportunity to respond to Defendants' reply, the Court permitted Defendants an opportunity to respond to the supplemental declaration. (*See* ECF No. 49.) While Plaintiff's filing is procedurally irregular, the Court will consider the supplemental declaration as well as Defendants' response thereto.

## 1.   Applicable Law

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is "mandatory." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002). Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199,

204 (2007).  "In a typical PLRA case, a defendant will have to present probative evidence [in a Rule 56 motion for summary judgment] . . .  that the prisoner has failed to exhaust administrative remedies under § 1997e(a)."  *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc).[25]

Under the burden-shifting analysis recognized in *Albino*, "a defendant must first prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy."  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 767 (9th Cir. 1996)).  "Once the defendant has carried that burden, the prisoner has the burden of production.  That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Albino*, 747 F.3d at 1172 (citing *Hilao*, 103 F.3d at 778 n.5 ("Once the defendant makes a showing of remedies abroad which have not been exhausted, the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.")).  "The ultimate burden of proof, however, remains with the defendants, and the evidence must be viewed in the light most favorable to the plaintiff."  *Packnett v. Wingo*, No. 09-cv-00327-YGR (PR), 2015 U.S. Dist. LEXIS 42339, at *30 (N.D. Cal. March 31, 2015) (citing *Williams*, 775 F.3d at 1191).  "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment

---

[25]     "[I]n . . . rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim."  *Albino*, 747 F.3d at 1169 (citing *Jones*, 549 U.S. at 215-16; *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam) ("[A]ffirmative defenses may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact."); *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) ("[O]nly in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse.")).

41

under Rule 56.  If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Albino*, 747 F.3d at 1166.

The Supreme Court has "held that to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' [citation] -- rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

The administrative appeal system for inmates in the California prison system is described in Title 15 of the California Code of Regulations:  "Any inmate . . . under the [CDCR's] jurisdiction may appeal any policy, decision, action, condition or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  15 CAL. CODE. REGS. § 3084.1(a).  For appeals submitted after January 28, 2011[26], inmates must commence the appeals process by submitting a CDCR Form 602 to the facility's appeals coordinator describing "the specific issue under appeal and the relief requested."  *Id.* at § 3084.2(a), (c).  Among other requirements, the appeal must be "limited to one issue or related set of issues" and "list all staff member(s) involved and shall describe their involvement in the issue."  *Id.* at § 3084.2(a)(1), (3).  "To assist in the identification of staff members, the inmate . . . shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.  If the inmate . . . does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question."  *Id.* at § 3084.2(a)(3).[27]

---

[26]    California's administrative appeal regulations were significantly revised effective January 28, 2011.  (*See* ECF No. 34-2 at 2:17-4:2.)

[27]    In *Jones*, the Supreme Court "conclude[d] that exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."  549 U.S. at

"Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 . . . and addressed through all required levels of administrative review up to and including the third level.  In addition, a cancellation or rejection decision does not exhaust administrative remedies."  *Id.* at § 3084.1(b).

If a prisoner is not satisfied with the First Level response, he may submit a formal appeal for a Second Level review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden . . . or the equivalent.  *Id.* at § 3084.7(d)(2). If the prisoner is not satisfied with the Second Level review, he may appeal to the Third Level of review by the chief of the Office of Appeals in Sacramento.  *Id.* at § 3084.7(c), (d)(3).  "The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and . . . exhausts administrative remedies."  *Id.* at § 3084.7(d)(3).

### 2.   Analysis

As an initial matter, the Court finds that Defendants have established through undisputed admissible evidence that California allows prisoners to complain about their conditions of confinement through an administrative remedies system.  As set forth in the Briggs and Baenziger declarations (*see* ECF No. 34-2 at 1:22-4:2; ECF No. 34-3 at 1:22-10) and the California regulations identified therein, *see* 15 CAL. CODE. REGS. § 3084 *et seq.*, this system provides for a three-level procedure by which inmates may assert non-medical inmate grievances, or appeals, utilizing a CDCR Form 602.  Thus, the Court initially finds that Defendants have satisfied part of their initial burden under *Albino*, namely, the existence of a generally available administrative remedy.  Thus, the remainder of the Court's exhaustion analysis determines whether Defendants have satisfied the

---

219.  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id.* at 218.

second part of their initial *Albino* burden, namely, whether Plaintiff failed to exhaust that available remedy, and, if not, whether Plaintiff is able to meet his burden of demonstrating "that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams*, 775 F.3d at 1191 (quoting *Hilao*, 103 F.3d at 778 n.5).

Next, the Court addresses Defendants' argument "that the grievance process was fully available to Plaintiff, that he was thoroughly familiar with the procedures, and that, in fact, he successfully processed certain grievances through the Third Level of review." (ECF No. 34-1 at 6:10-13.)   In other words, Defendants suggest that Plaintiff failed to exhaust administrative remedies as to certain claims because he was familiar with the administrative appeal process and he properly exhausted other appeals.   The Ninth Circuit recently rejected this argument in *Williams*:

> This argument is a virtual non-sequitur because it does nothing to rebut [plaintiff's] evidence that administrative remedies were not available to her at the time she tried to file the relevant grievance and appeal in this case.   Other circuits have similarly concluded that defendants may not simply rely on the existence of an administrative process to overcome a prisoner's showing that administrative remedies were not available to him.   In *Hemphill v. New York*, for example, the Second Circuit held that merely showing that grievance mechanisms are in place does not end the inquiry into availability where the plaintiff claims that threats by prison officials made the remedy functionally unavailable to him.   380 F.3d 680, 687-88 (2d Cir. 2004); *see also Dillon v. Rogers*, 596 F.3d 260, 268-69 (5th Cir. 2010) (holding that records showing 53 other inmates had filed grievances during the period in question did not demonstrate that administrative remedy was available to plaintiff).   Moreover, permitting a defendant to show that remedies merely existed in a general sense where a plaintiff has specifically alleged that official action prevented her from filing a particular grievance would force a plaintiff to bear the burden of proof, a burden which the plaintiff does not bear.   *Albino*, 747 F.3d at 1172.

775 F.3d at 1192.

Thus, Plaintiff's familiarity with the administrative appeals process and successful utilization of that process through the Third Level of review as to some of his appeals are

insufficient to satisfy Defendants' ultimate burden of proving that Plaintiff failed to exhaust administrative remedies as to all of his appeals. *See id.* ("The evidence produced by the Defendants at most meets their burden of demonstrating a system of available administrative remedies at the initial step of the *Albino* burden-shifting inquiry, but Defendants have not carried their ultimate burden of proof in light of [plaintiff's] factual allegations."). In order to determine whether Defendants have satisfied their burden of proving failure to exhaust, the Court must apply the burden shifting-analysis to each appeal allegedly filed by Plaintiff.

a.      May 22, 2012 Appeal (Log No. Unassigned)

Plaintiff alleges in his Complaint that he filed a CDCR Form 602 alleging retaliation and conspiracy against Defendant Behra and other non-party officers in connection with the May 16, 2012 laundry floor incident and subsequent termination of Plaintiff's job assignment. (ECF No. 1 at ¶ 19; ECF No. 1-1 at 4-8.) Although Defendants do not expressly address this appeal in their Motion for Partial Summary Judgment, Defendants rely on the Baenziger declaration which identifies all inmate appeals from Plaintiff received by RJD's ACO from April 1, 2012 to the present against Defendants relating to the following allegations: (1) retaliation in violation of the First Amendment; (2) violation of due process rights; (3) abuse of power in violation of Plaintiff's equal protection rights and his right to be free from cruel and unusual punishment; and (4) conspiracy to commit the above-listed constitutional violations. (ECF No. 34-3 at 3:11-7:17.) Defendants also rely on the Briggs declaration which identified all inmate appeals by Plaintiff against Defendants asserting the claims set forth above that were received by the CDCR's Office of Appeals and adjudicated through the Third Level of review or received and screened out by that office. (ECF No. 34-2 at 4:3-6:14.) Neither the Baenziger nor Briggs declarations, nor the exhibits attached thereto, identify a May 22, 2012 appeal against Defendant Behra for retaliation and conspiracy. In other words, Defendants have demonstrated that Plaintiff did not exhaust his May 22, 2012 appeal through the Third Level of review. Thus, Defendants have satisfied their initial burden under *Albino* of demonstrating that an

45

available administrative remedy exists and that Plaintiff did not exhaust that available remedy.

However, in his Complaint, which is sworn under penalty of perjury, Plaintiff claims that he filed a CDCR Form 602 appeal against Defendant Behra on May 22, 2012.  (ECF No. 1 at ¶ 19; ECF No. 1-1 at 4-8.)  Plaintiff also asserts in his Complaint and in the various CDCR 22's he filed in June and July 2012 that he never received a response to his May 22, 2012 appeal.  (ECF No. 1 at ¶¶ 20-21; ECF No. 1-1 at 19-, 21-22, 32.)  Plaintiff's sworn allegations that he filed the May 22, 2012 appeal but never received a response from prison officials, viewed in the light most favorable to Plaintiff as the non-moving party, is sufficient to satisfy Plaintiff's burden of demonstrating "that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies [as to this appeal] were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'"  *Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at 1172); *see also Parks v. Chappell*, No. C-13-4048 EMC (pr), 2015 U.S. Dist. LEXIS 70602, at *12 (N.D. Cal. June 1, 2015) ("A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence." (citing *Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995)).  Moreover, Defendants have provided no evidence that Plaintiff "failed to follow prison procedures by attempting to file [his] grievance and appeal."  *Id.* at 1182 (citing *Woodford*, 548 U.S. at 90-91).

The absence in the prison records of Plaintiff's May 22, 2012 appeal is not sufficient evidence that Plaintiff failed to follow applicable prison procedures in attempting to file this appeal.[28]  Holding otherwise would provide prison officials with a perverse incentive

---

[28]      This is particularly true in this case where the Baenziger declaration fails to account for an appeal of which there is irrefutable evidence that Plaintiff filed an appeal alleging retaliation, conspiracy, and due process claims against Defendants Allamby, Benyard,

to "lose" an inmate's appeal, thereby preventing it from ever being properly recorded in the prison's files and setting up an unsurmountable exhaustion defense. *Accord Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010) (recognizing an exception to exhaustion where prison officials improperly screen inmates' appeals "promotes exhaustion benefits by removing any incentive prison officials might otherwise have to avoid meaningfully considering inmates' grievances by screening them for improper purposes."). At this stage of the litigation, the absence of evidence in the prison records coupled with Plaintiff's sworn allegation that he filed the appeal raises a "genuine dispute as to [a] material fact," FED. R. CIV. P. 56(a), precluding summary judgment as to this appeal.

In conclusion, Defendants have not satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies concerning Plaintiff's retaliation and conspiracy claims against Defendant Behra arising out of Plaintiff's termination from his job assignment.

### b.    June 11, 2012 Appeal (Log No. 12-2146)

Plaintiff alleges in his Complaint that his June 11, 2012 appeal, Log No. 12-2146, asserted retaliation and conspiracy claims against the "ACO staff," specifically Defendants Olson and Ramirez. Plaintiff alleged these two Defendants refused to process his grievances alleging misconduct by RJD staff. (ECF No. 1 at ¶ 24.)

As an initial matter, contrary to Plaintiff's allegations, this appeal does not contain any allegations against Defendants Olson or Ramirez. Rather, the appeal alleges non-party officer Cobb violated Plaintiff's right to appeal by conspiring, retaliating, delaying, and intentionally obstructing Plaintiff's access to justice in order to cover up the misconduct of other prison officials. (*See* ECF No. 1-1 at 50-51.) Thus, this appeal does not serve to exhaust retaliation and conspiracy claims against Defendants Olson and Ramirez. *See* 15 CAL. CODE. REGS. § 3084.2(a)(3) (requiring that inmate appeals "list all staff member(s)

---

Cortez, Hernandez, and Jones, that was later rejected at the First Level of review. *See infra* Part II(B)(2)(m).

47

involved and . . . describe their involvement in the issue.  To assist in the identification of staff members, the inmate . . . shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.  If the inmate . . . does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.").

Moreover, even if Plaintiff had identified Defendants Olson and Ramirez in this appeal, Plaintiff did not proceed with the appeal through the Third Level of review.  Indeed, on October 6, 2012, Defendant Olson properly rejected the appeal at the First Level of review due to Plaintiff's failure to comply with various appeal procedures.  (*See* ECF No. 1-1 at 54-57.)  On December 11, 2012, following Plaintiff's resubmittal of the appeal, Defendants Olson and Ramirez again rejected the appeal at the First Level of review for the same reasons stated in the October 6, 2012 screening letters.  Defendants Olson and Ramirez also cancelled the appeal because Plaintiff had "continue[d] to submit a rejected appeal while disregarding appeal staff's previous instructions to correct the appeal."  (ECF No. 1 at ¶ 24; ECF No. 1-1 at 54-62.)  Plaintiff cannot show that administrative remedies were unavailable as to this appeal when Plaintiff failed to correct deficiencies in the appeal as instructed by the ACO staff.

Plaintiff's claims against Defendant Olson and Ramirez appear to be based on their processing of the appeal against Cobb.  Plaintiff alleges Defendant Olson's screening letters "intentionally interfered with the Plaintiff's rights to petition the government for redress of grievances [and] conspired and retaliated against the Plaintiff for him filing grievances, complaint and civil right action against the institution staff."  (ECF No. 1 at ¶ 24.)  Plaintiff also alleges Defendants Olson and Ramirez "refused to process Plaintiff grievances and complaint were [sic] it alleges misconduct by RJD-Correctional Facility staff including the ACO."  (*Id.*)  However, to properly exhaust administrative remedies against Defendants Olson and Ramirez, Plaintiff was required to file a new appeal alleging

1   misconduct in their handling of appeal Log No. 12-2146.  This Plaintiff did not do.

2        In conclusion, the evidence before the Court is sufficient to satisfy Defendants'

3   burden of showing that Plaintiff did not exhaust any claims against Defendants based on

4   the allegations set forth in appeal Log No. 12-2146.

5        c.   July 2, 2012 Appeal (Log No. 12-1879)

6        With respect to Plaintiff's July 2, 2012 appeal, Log No. 12-1879, Defendants have

7   satisfied their initial burden of showing that an available administrative remedy existed and

8   that Plaintiff did not exhaust that available remedy.  Indeed, Plaintiff failed to proceed

9   through the Third Level of review with appeal Log No. 12-1879.

10        However, Plaintiff has produced sufficient evidence to raise a triable issue of

11   material fact concerning whether the local remedies were truly available as to this appeal.

12   Specifically, Plaintiff's appeal was rejected at the First Level of review as being untimely

13   based on the finding that the laundry room incident occurred on May 16, 2012 and Plaintiff

14   waited until July 2, 2012 to appeal.  Inmate appeals must generally be submitted within

15   thirty days of "[t]he occurrence of the event or decision being appealed."  15 CAL. CODE.

16   REGS. § 3084.8(b)(1).  However, Plaintiff alleges his July 2, 2012 appeal was based on his

17   June 27, 2012 receipt of Defendant Behra's CDC 128A disciplinary report stating that

18   Plaintiff had been out of bounds at the time of the May 16, 2012 incident.  Plaintiff alleged

19   in appeal Log No. 12-1879 that he was not out of bounds, and that Defendant Behra's

20   statement to the contrary was false and made as part of a conspiracy to retaliate against

21   Plaintiff for his prior lawsuit.  (ECF No. 1-1 at 24-25.)  Thus, the date triggering Plaintiff's

22   thirty-day appeal deadline was June 27, 2012 when he first obtained a copy of the allegedly

23   false statements from Defendant Behra.  *See* 15 CAL. CODE. REGS. § 3084.8(b)(2) (inmate

24   appeals must be submitted within thirty days of "first having knowledge of the action or

25   decision being appealed.").  Thus, Plaintiff has produced evidence (*i.e.*, improper rejection

26   of appeal as untimely) showing that "the existing and generally available administrative

27   remedies [were] effectively unavailable to him" in connection with appeal Log No. 12-

28   1879.  *Albino*, 747 F.3d at 1172 (citing *Hilao*, 103 F.3d at 778 n.5).

In conclusion, Defendants have not satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative concerning Plaintiff's retaliation and conspiracy claims against Defendant Behra arising out of the allegedly false statements contained in Defendant Behra's CDC 128A disciplinary report.

d.   September 20, 2012 Appeal (Log No. 12-2759)

Plaintiff's September 20, 2012 appeal, Log No. 12-2759, generally alleges a delay in the processing of his earlier appeals as part of a conspiracy to obstruct justice and Plaintiff's access to the courts.  Plaintiff also complained that Defendant Olson's response to a CDCR 22 request for a status update on his May 22, 2012 and July 2, 2012 appeals was erroneous.  In his response, dated August 22, 2012, Defendant Olson stated that Plaintiff should have received a response to the May 22, 2012 appeal and that there was a backlog of appeals due to a high volume and staffing shortage.  Plaintiff claimed in appeal Log No. 12-2759 that the evidence contradicted Defendant Olson's response.  (ECF No. 1-1 at 27-28, 34.)

The Court finds that Defendants have satisfied their initial burden of demonstrating that there was an available administrative remedy which Plaintiff failed to exhaust with respect to this appeal.  As demonstrated by the Baenziger and Briggs declarations, Plaintiff did not proceed with appeal Log No. 12-2759 through the Third Level of review.  That being said, however, the available evidence demonstrates that Plaintiff has met his burden of showing that administrative remedies were effectively unavailable regarding this appeal. California prison regulations prohibit the review of an inmate appeal by a staff person who . . . [p]articipated in the event or decision being appealed."   15 CAL. CODE. REGS. § 3084.7(d)(1)(A).  Notwithstanding this prohibition, Defendant Olson screened out appeal Log No. 12-2759 which contained allegations against Defendant Olson.  (ECF No. 1-1 at 29-31.)  While a "violation of this state regulation does not give rise to a federally protected due process interest," *Sylvester v. Alameido*, No. 2:10-cv-2380 KJN P, 2012 U.S. Dist. LEXIS 130345, at *45 (E.D. Cal. Sept. 11, 2012), it does mean that Plaintiff has met his burden of demonstrating there are genuine and material disputes over whether he should

50

1    be excused from the exhaustion requirement as to this appeal.  *See Sapp*, 623 F.3d at 823

2    ("[I]mproper screening of an inmate's administrative grievances renders administrative

3    remedies 'effectively unavailable' such that exhaustion is not required under the PLRA.  If

4    prison officials screen out an inmate's appeals for improper reasons, the inmate cannot

5    pursue the necessary sequence of appeals, and administrative remedies are therefore plainly

6    unavailable.").

7        In conclusion, Defendants have not satisfied their burden of demonstrating that

8    Plaintiff failed to exhaust available administrative concerning Plaintiff's conspiracy claim

9    against Defendant Olson arising out of Defendant Olson's August 22, 2012 CDCR 22

10   response.

11            e.    October 30, 2012 Appeal (Log No. Unassigned)

12        In his October 30, 2012 appeal, which was never assigned a log number, Plaintiff

13   alleged that in connection with his prior appeals, *i.e.*, his May 22, 2012, June 11, 2012, and

14   July 2, 2012 appeals, "the AC have Obstructed inmate access to the court and intentionally

15   refuse to process inmate's above mentioned grievances as required by law under the First

16   Amendment of U.S. Constitution and CDCR Own rules and Regulations.  Inmate contends

17   that in [sic] several occasssions [sic] I have attempted to resolve this matter without the

18   necessary [sic] of litigation without any results."  (ECF No. 1-1 at 38-39.)  Although the

19   appeal was addressed to Defendant Suglich, the appeal did not identify any specific

20   individual as required by the applicable regulations.   *See* 15 Cal. Code. Regs.

21   § 3084.2(a)(3).  Rather, the appeal only alleged misconduct by "the ACO staff."  However,

22   the undisputed evidence demonstrates that Plaintiff could have identified the name of the

23   individuals engaging in misconduct because the appeal was based on administrative

24   responses received by Plaintiff that specifically identified the responding officials.  "By

25   failing to provide this known bit of information, [Plaintiff] failed to provide sufficient

26   information to allow prison officials to take appropriate responsive measures."  *Parks*,

27   2015 U.S. Dist. LEXIS 70602, at *12.

28   / / /

In addition, the fact that Plaintiff attached copies of the prior CDCR 22 requests is insufficient to comply with the applicable regulations.  *See Valencia v. Gipson*, No. 1:12-cv-01446-AWI-SAB (PC), 2015 U.S. Dist. LEXIS 60793, at *27-28 (E.D. Cal. May 7, 2015) ("As to Defendants Johnson and Smith, it is undisputed these Defendants were not named in the appeal and there is insufficient factual information to place prison officials on notice that Plaintiff sought relief based on their individual involvement in the gang validation process.  Plaintiff's claim that attachment of the supporting documents was sufficient to identify each individual is not persuasive because merely submitting several documents to an inmate appeal in order to identify and set forth the claims for relief does not meet the requirements of the applicable regulations." (citing 15 CAL. CODE. REGS. § 3084.2(a)(4) ("The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitted the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.")).

Further, Plaintiff's allegation in the Complaint that Defendant Suglich "personally participated in the alleged deprivation of constitutional right, conspired and retaliated against the Plaintiff by refusing to process Plaintiff grievances in order to cover up misconduct, knew of the alleged deprivation and failed to act to prevent them, when thre [sic] is a duty to do so," (ECF No. 1 at ¶ 23), is insufficient to establish that Plaintiff exhausted administrative remedies as to Defendant Suglich.  The October 30, 2012 appeal, while addressed to Defendant Suglich, did not complain of any improper action by Defendant Suglich.  Rather, Plaintiff's Complaint against Defendant Suglich stems from his allegedly improper processing of this appeal.

In conclusion, Plaintiff's October 30, 2012 appeal fails to adequately identify any individual Defendant and, therefore, this appeal is not properly exhausted.[29]

---

[29]   The Court notes there is a material dispute as to whether Plaintiff ever submitted his October 30, 2012 appeal.  The prison records do not reflect its existence.  But Plaintiff alleges under penalty of perjury that he did.  While this genuine factual dispute could preclude summary judgment as to this claim, *see supra* Part II(B)(2)(a), summary judgment

### f.   November 19, 2012 Appeal (Log No. 12-3429)

In his November 19, 2012 appeal, Log No. 12-3429, Plaintiff claimed that Defendant Abad violated his due process rights by not provide a timely response to Plaintiff's request for a Classification Committee review based on his contention that he was improperly removed from his job assignment.   Plaintiff requested that he be scheduled for a Classification Committee review at the next reasonable opportunity and that he be ordered to return to his job assignment.  (ECF No. 1-1 at 79-80, 83.)

Based on the evidence presented in the Baenziger and Briggs declarations showing that Plaintiff did not proceed with appeal Log No. 12-3429 through the Third Level of review, the Court finds Defendants have satisfied their initial burden under *Albino*.

Next, with the burden now shifted to Plaintiff to demonstrate that the generally available administrative remedies were effectively unavailable, the Court finds Plaintiff has satisfied his burden as to appeal Log No. 12-3429.   Plaintiff alleges the First Level of review rejection of the appeal was improper and, therefore, administrative remedies were effectively unavailable.  Defendants Olson and Ramirez sent Plaintiff a screening letter on December 28, 2012 rejecting the appeal because it was missing necessary supporting documents, namely, the "128 UCC Removal from job" and the "CDCR 22 complete through section D."  (ECF No. 1-1 at 81.)  A genuine factual dispute exists regarding whether the appeal should have included the "CDCR 22 complete through section D."  As noted previously, *see supra* note 12, Plaintiff argues that he submitted two CDCR 22 forms in November 2012 asking for a Classification Committee review but that he never received a response to either request.  (*See* ECF No. 1-1 at 83-84.)  Viewing the evidence in the light most favorable to Plaintiff, it is unreasonable to expect Plaintiff to attach a CDCR 22 completed through section D, *i.e.*, the supervisor's response, when the evidence Plaintiff submits indicates that Plaintiff never received a response to his request.  "To be available,

_____

is nevertheless warranted because the appeal fails to identify any specific Defendant, in violation of the applicable prison appeal regulations.

a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Albino*, 747 F.3d at 1171 (quoting *Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002)).  An administrative remedy is not available where a prison official directs an inmate to accomplish the impossible as a prerequisite to exhausting that remedy.  Even assuming the appeal was properly rejected because it did not attach the "128 UCC Removal from job," the Court finds a genuine material dispute exists as to whether Plaintiff should have been required to continue pursuing this appeal through the administrative process when he was instructed that he must attach a non-existent document to his appeal.  *Accord Nunez v. Duncan*, 591 F.3d 1217, 1224-25 (9th Cir. 2010) (excusing inmate's failure to exhaust "because he took reasonable and appropriate steps to exhaust his . . . claim and was precluded from exhausting, not through his own fault but by the Warden's mistake.").

In conclusion, Defendants have not satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies concerning Plaintiff's due process claim against Defendant Abad arising out of Defendant Abad's alleged delay in responding to Plaintiff's request for a Classification Committee review.[30]

g.    December 6, 2012 Appeal (Log No. 13-0108)

Plaintiff's December 6, 2012 appeal, Log No. 13-0108, alleged he never received a response to his May 22, 2012 appeal and set forth his prior efforts to follow up regarding its status, including his filing of other CDCR Form 602 appeals and CDCR 22 requests. Plaintiff also alleged that the September 14, 2012 cancellation of appeal Log No. 12-1879 as untimely was improper.  (ECF No. 1-1 at 42-43.)

/ / /

---

[30]    Plaintiff alleges appeal Log No. 12-3429 addressed the actions of Defendants Abad, Benyard, and Cavazos.  (ECF No. 48 at 5:2-4.)  However, the undisputed evidence demonstrates that this appeal only identified Defendant Abad.  Thus, Defendants have satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies as against Defendants Benyard and Cavazos based on his delayed Classification Committee review claim.

54

Defendants Olson and Ramirez rejected the appeal at the First Level of review on January 10, 2013 because it did not comply with certain provisions of California Code of Regulations § 3084.6(b).  (*Id.* at 40-41; *see also supra* Part I(B)(2)(g).)  The evidence before the Court fails to show that Plaintiff attempted to pursue this appeal beyond the First Level of review.  Thus, the Court finds Defendants have satisfied their initial burden under *Albino*.  In addition, Plaintiff makes no attempt to introduce evidence that administrative remedies were effectively unavailable as to this appeal.  (*See* ECF No. 48 at 5:15-17.)  Thus, the Court finds that the undisputed evidence establishes that Plaintiff failed to exhaust available administrative remedies as to appeal Log No. 13-0108.

### h.    December 13, 2012 Appeal (Log No. 13-00372)

In his December 13, 2012 appeal, Log No. 13-00372, Plaintiff alleged that non-party officers Cobb and Stratton and Defendants Olson, Ramirez, and Suglich had failed to provide reasonable and adequate administrative remedies and failed to timely respond to his grievances as part of a conspiracy to retaliate against him, cause intentional delay, obstruct his access to the courts, and cover-up wrongdoing of other officers in connection with the May 22, 2012 incident.  Plaintiff alleged that administrative remedies are futile, unavailable, and inadequate, and he requested that the prior grievances mentioned in appeal Log No. 13-00372[31] be deemed exhausted.  (ECF No. 1-1 at 64, 66.)

Based on the evidence presented in the Baenziger and Briggs declarations showing that Plaintiff did not proceed with appeal Log No. 13-00372 through the Third Level of review, the Court finds Defendants have satisfied their initial burden under *Albino*.  Plaintiff's contention that this appeal was denied at the Third Level of review on March 13, 2013 (*see* ECF No. 48 at 22-28) misconstrues the evidence.  The March 13, 2013 letter rejected the appeal pursuant to California Code of Regulations § 3084.6(b)(15) because

---

[31]    Appeal Log No. 13-00372 identified the following prior appeals: unassigned May 22, 2012 appeal; July 2, 2012 appeal Log No. 12-1879; September 20, 2012 appeal Log No. 12-2759; and unassigned October 30, 2012 appeal.  (ECF No. 1-1 at 64, 66.)

Plaintiff had bypassed a lower level of review and inappropriately submitted the appeal for processing at the Third Level of review.  (ECF No. 1-1 at 74.)  In fact, Plaintiff's appeal was rejected at the First Level of review on January 22, 2013 (*see id.* at 71-72), and he did not resubmit the appeal at the First Level of review.  Nor did he submit the appeal to the Second Level of review.  Thus, Defendants have satisfied their initial burden of showing Plaintiff failed to exhaust appeal Log No. 13-00372.

However, Plaintiff has presented evidence showing that administrative remedies were effectively unavailable regarding this appeal.  Specifically, despite the fact that the appeal alleged improper handling by Defendants Olson and Ramirez, among others, it was Defendants Olson and Ramirez that rejected the appeal at the First Level of review.  As discussed above in connection with appeal Log No. 12-2759, *see supra* Part II(B)(2)(d), this violation of California Code of Civil Procedure § 3084.7(d)(1)(A)'s prohibition of appeal review performed by staff involved in the event or decision being appealed demonstrates a genuine and material factual dispute over whether Plaintiff should be excused from the exhaustion requirement as to this appeal.

In conclusion, Defendants have not satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies concerning Plaintiff's conspiracy, retaliation, and due process claims against Defendants Olson, Ramirez, and Suglich arising out of their handling of Plaintiff's administrative appeals.

   i.  <u>February 14, 2013 Appeal (Log No. 13-00777)</u>

Plaintiff alleged a due process property deprivation and retaliation claim against Defendant Zuniga in his February 14, 2013 appeal, Log No. 13-00777.  (ECF No. 1-1 at 128, 130.)  Defendants do not move for summary judgment as to the property deprivation claim against Defendant Zuniga, conceding in their motion that Plaintiff exhausted the claim.  (ECF No. 34-1 at 3:25-26.)  Interestingly, Defendants do move for summary judgment as to Plaintiff's retaliation claim against Defendant Zuniga.

The evidence before the Court plainly demonstrates that Plaintiff did not exhaust his retaliation and due process property deprivation claims against Defendant Zuniga based on

appeal Log No. 13-00777 prior to filing suit.  The Third Level Appeal Decision included as an exhibit to the Briggs declaration is dated July 25, 2014 (ECF No. 34-2 at 36-37), nearly three months after the filing of Plaintiff's Complaint.  The Baenziger and Briggs declarations also indicate the appeal was denied at the Thrid Level of review on July 25, 2014.  (ECF No. 34-2 at 5:14-17; ECF No. 34-3 at 4:22-23.)  Although Plaintiff had requested consideration of this appeal at the Third Level of review on February 25, 2012 prior to filing suit (*see* ECF No. 1-1 at 129), prisoners must exhaust administrative remedies *before* filing suit.  42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (citing *Porter*, 534 U.S. at 524)); *Albino*, 747 F.3d at 1171 ("The PLRA mandates that inmates exhaust all available administrative remedies *before* filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." (emphasis added) (quoting *Woodford*, 548 U.S. at 85)); *Cano v. Taylor*, 739 F.3d 1214, 1219 (9th Cir. 2014) ("The Ninth Circuit has explained that Congress purposely made exhaustion a precondition to suit, rather than to judgment, and this was done with the goal of affording corrections officials the opportunity to address complaints internally." (citing *McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (per curiam)).

Plaintiff alleges in his supplemental declaration that appeal Log No. 13-00777 also "linked" Defendants Alvarez and Benyard "because they personally participated in the conspiracion [sic] and retaliatory bias to intentionally deprive the Plaintiff of his personal property."  (ECF No. 48 at 5:23-26.)  However, this appeal made no mention of Defendants Alvarez and Benyard, nor did Plaintiff allege conspiracy against any of the Defendants.

Based on the record before the Court, it appears Plaintiff failed to fully exhaust appeal Log No. 13-00777.  However, summary judgment in favor of Defendant Zuniga as to the retaliation and due process property deprivation claims is not warranted because, as

set forth below, *see supra* Part II(B)(2)(k), triable issues of fact remain as to these claims against Defendant Zuniga based on a separate appeal, Log No. 13-1365.

j.   April 10, 2013 Appeal (Log No. 13-01319)

In his April 10, 2013 appeal, Log No. 13-01319, Plaintiff claimed Defendants Benyard, Hernandez, and Spence, and non-party officer Smith, violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments by conspiring to retaliate against Plaintiff and deprive him of due process protections.  Defendants concede that Plaintiff exhausted his conspiracy, retaliation, and due process claims against Defendants Benyard and Ramirez.  (*See* ECF No. 34-1 at 3:25-28.)  However, Defendants' motion and the Baenziger and Briggs declarations overlook the fact that appeal Log No. 13-01319 raised these same claims against Defendant Spence.  Indeed, the declarations only identify Defendants Benyard and Hernandez and non-party officer Smith as being named in this appeal.  (ECF No. 34-2 at 4:27-5:3; ECF No. 34-3 at 4:25-5:4.)  Not only does the appeal identify Defendant Spence, but the majority of the appeal is focused on alleged improper conduct by Defendant Spence.  (*See* ECF No. 1-2 at 107, 109.)  Because the appeal was processed through the Third Level of review (*see* ECF No. 1-2 at 105-06; ECF No. 34-2 at 4:27-5:4; ECF No. 34-3 at 4:25-5:9), Plaintiff exhausted the claims asserted in this appeal.[32]

In conclusion, Defendants have not satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies concerning Plaintiff's conspiracy, retaliation, and due process claims against Defendant Spence arising out of the March 18, 2012 RVR disciplinary hearing.

k.   April 17, 2013 Appeal (Log No. 13-1365)

In his April 17, 2013 appeal, Log No. 13-1365, Plaintiff asserted claims against Defendants Alvarez, Benyard, Rutledge, and Zuniga for allegedly conspiring to retaliate

---

[32]   Although appeal Log No. 13-01319 was granted in part at the Third Level of review because Plaintiff had not been provided with medical reports sufficiently in advance of the RVR disciplinary hearing, and the RVR was reissued and reheard (*see* ECF No. 1-2 at 105-06), Plaintiff nevertheless exhausted his claims asserted in the appeal.

58

against Plaintiff by depriving Plaintiff of his personal property without due process of law. (ECF No. 1 at ¶ 39; ECF No. 1-2 at 38-39.)

On April 22, 2013, Defendants Olson and Ramirez cancelled appeal Log No. 13-1365 as untimely because the February 25, 2013 date on which Plaintiff was informed by the R&R staff that his television could not be located was more than thirty days before he filed the appeal, in violation of California Code of Regulations § 3084.6(c)(4).  (ECF No. 1-2 at 40.)  Based on this evidence, Defendants have satisfied their initial burden under *Albino* of showing that Plaintiff failed to exhaust administrative remedies as to the claims asserted in this appeal.

However, Plaintiff has presented evidence raising a genuine issue of material fact as to whether administrative remedies were effectively unavailable regarding this appeal. Specifically, the claims asserted in appeal Log No. 13-1365 were made less than three weeks after Plaintiff's March 28, 2013 receipt of Defendant Alvarez's response to a CDCR 22 request in which Plaintiff was notified that his television, previously categorized as missing, was in fact determined to be altered from its original state meaning that it was contraband that would not be returned to Plaintiff.  (*Id.* at 38-39, 41.)  Thus, Plaintiff has introduced evidence suggesting that the appeal was improperly cancelled as untimely and, thus, whether administrative remedies were effectively unavailable as to this appeal.

In conclusion, Defendants have not satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies concerning Plaintiff's conspiracy, retaliation, and due process claims against Defendants Alvarez, Benyard, Rutledge, and Zuniga based on the allegations set forth in appeal Log No. 13-1365.

l.    August 5, 2013 and August 21, 2013 Appeals (Log Nos. Unassigned)

In his August 5, 2013 appeal, which was not assigned a log number, Plaintiff alleged equal protection, retaliation, and conspiracy claims against several RJD officials, including Defendants Benyard, Cavazos, and Paramo for their refusal to consider Plaintiff's job termination complaint during the July 23, 2013 UCC review.  Plaintiff claims he never received a response to this appeal.  (ECF No. 1 at ¶ 48; ECF No. 1-1 at 86-95.)

1   Similarly, in his August 21, 2013 appeal, which also was not assigned a log number,

2   Plaintiff alleged discrimination, retaliation, and conspiracy by Defendants Benyard,

3   Cavazos, and Paramo due to their refusal during the UCC review to permit Plaintiff to

4   participate in re-entry programs.  (ECF No. 1-1 at 89-90.)

5   Although Defendants do not expressly address these two appeals in their Motion for

6   Partial Summary Judgment, Defendants rely on the Baenziger and Briggs declarations for

7   the position that Plaintiff never filed the appeals, let alone exhausted the appeals through

8   the Third Level of review.  Thus, Defendants have satisfied their initial burden under

9   *Albino* of demonstrating that an available administrative remedy exists and that Plaintiff

10  did not exhaust that available remedy.

11  However, Plaintiff has sworn under penalty of perjury that he filed his August 5,

12  2015 and August 21, 2015 appeals but that he never received a response.  Viewed in the

13  light most favorable to Plaintiff as the non-moving party, Plaintiff has satisfied his burden

14  of demonstrating "that there is something particular in his case that made the existing and

15  generally available administrative remedies effectively unavailable to him by 'showing that

16  the local remedies [as to this appeal] were ineffective, unobtainable, unduly prolonged,

17  inadequate, or obviously futile.'"  *Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at

18  1172).   Moreover, Defendants have provided no evidence that Plaintiff "failed to follow

19  prison procedures by attempting to file [his] grievance and appeal[s]."  *Id.* at 1182 (citing

20  *Woodford*, 548 U.S. at 90-91).

21  For the reasons discussed above in connection with Plaintiff's unassigned May 22,

22  2012 appeal, *see supra* Part II(B)(2)(a), the absence in the prison records of Plaintiff's

23  August 5, 2013 and August 21, 2013 appeals is not sufficient evidence that Plaintiff failed

24  to follow applicable prison procedures in attempting to file these appeals, nor is it grounds

25  for granting summary judgment in Defendants' favor.

26  In conclusion, Defendants have not satisfied their burden of demonstrating that

27  Plaintiff failed to exhaust available administrative remedies concerning Plaintiff's equal

28  protection, retaliation, and conspiracy claims against Defendants Benyard, Cavazos, and

1    Paramo arising out of the July 23, 2013 UCC review.

2            m.    November 7, 2013 Appeal (Log No. 13-3607)

3            In his November 7, 2013 appeal, Log No. 13-3607, Plaintiff asserted retaliation,

4    conspiracy, and due process claims against Defendants Allamby, Benyard, Cortez,

5    Hernandez, and Jones.  Plaintiff alleged that during the October 17, 2013 RVR disciplinary

6    rehearing Defendant Allamby wrongly denied his request that a Staff Assistant be

7    interviewed and that the video recording of Plaintiff's February 4, 2013 Ad-Seg hearing

8    with Defendant Benyard be reviewed, thus depriving Plaintiff of a fair and impartial

9    disciplinary hearing.   Plaintiff also alleged Defendants Cortez and Jones made false

10   statements during the rehearing.  (ECF No. 1-2 at 84-85.)

11           Surprisingly, the Baenziger declaration does not identify appeal Log No. 13-3607 as

12   having been received by RJD's Inmate Appeals Office for processing.   However, the

13   evidence attached to Plaintiff's Complaint demonstrates that the appeal was in fact

14   submitted and was actually rejected at the First Level of review on November 18, 2013

15   because it did not include a final copy of the RVR.  (ECF No. 1-2 at 84-85, 88-89.)  Plaintiff

16   further claims that on November 25, 2013, he resubmitted his appeal after taking corrective

17   measures and that he accompanied his appeal with a CDCR 22 form signed by non-party

18   officer J. Delgado verifying receipt of the resubmitted appeal.  Plaintiff claims he never

19   received a response to his resubmitted appeal.  (ECF No. 1-2 at 87; ECF No. 48 at 6:19-

20   25.)

21           While Plaintiff is unable to show that he exhausted this appeal to the Third Level of

22   review, he has produced sufficient evidence demonstrating a genuine factual dispute

23   concerning whether he ever filed this appeal in the first place, and if so, whether the

24   prison's failure to process the resubmitted appeal effectively made administrative remedies

25   unavailable.  Thus, Defendants have failed to satisfy their burden of demonstrating that

26   Plaintiff failed to exhaust available administrative remedies as to his retaliation,

27   conspiracy, and due process claims against Defendants Allamby, Benyard, Cortez,

28   Hernandez, and Jones arising from the October 17, 2013 RVR disciplinary hearing.

n.     December 11, 2013 Appeal (Log No. 14-104)

In his December 11, 2013 appeal, Log No. 14-104, Plaintiff asserted claims against Defendants Benyard, Olson, Paramo, and Ramirez and their unidentified "agents" for allegedly conspiring to retaliate against Plaintiff by refusing to process his grievances and depriving him of access to the courts.  Plaintiff identified several "overdue" grievances that he had unsuccessfully tried to resolve, including: appeal Log No. 13-3607, dated November 7, 2013, *see supra* Parts I(B)(3)(c) and II(B)(2)(m); appeal Log No. 00777, dated February 14, 2013, *see supra* Parts I(B)(4) and II(B)(2)(i); and Plaintiff's unassigned appeals dated August 5, 2013 and August 21, 2013, *see supra* Parts I(B)(5)(a)-(b) and II(B)(2)(l).  (ECF No. 1-2 at 90-91.)  On January 13, 2014, Defendants Olson and Ramirez rejected the appeal at the First Level of review for non-compliance with California Code of Regulations § 3084.6(b)(8) and with instruction to address his issues with each appeal separately.  (*Id.* at 92.)

The Court finds that Defendants are unable to satisfy their burden of proving that Plaintiff failed to exhaust available administrative remedies.  First, as with appeal Log No. 13-3607, *see supra* Part II(B)(2)(m), the Briggs declaration's omission of appeal Log No. 14-104 is problematic in that there is uncontroverted evidence that Defendants Olson and Ramirez rejected the appeal on January 13, 2014.  The Court has serious concerns as to the reliability of the Briggs declaration as it fails to account for the existence of multiple appeals that RJD staff accepted, processed, and rejected at the First Level of review.  Second, and more importantly, despite the fact that the appeal alleged improperly handling by Defendants Olson and Ramirez, among others, it was Defendants Olson and Ramirez that rejected the appeal at the First Level of review.  As discussed above in connection with appeal Log Nos. 12-2759 and 13-00372, *see supra* Parts II(B)(2)(d) and II(B)(2)(h), this violation of California Code of Regulations § 3084.7(d)(1)(A)'s prohibition of appeal review performed by staff involved in the event or decision being appealed demonstrates a genuine and material factual dispute over whether Plaintiff should be excused from the exhaustion requirement as to this appeal.

In conclusion, Defendants have not satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative concerning Plaintiff's conspiracy and retaliation claims against Defendants Benyard, Olson, Paramo, and Ramirez arising out of their handling of Plaintiff's administrative appeals identified in appeal Log No. 14-104.

o.     January 21, 2014 Appeal (Log No. Unassigned)

On January 21, 2014, Plaintiff filed an appeal that was never assigned a log number in which he alleged the ACO failed to timely respond to his grievances rendering administrative remedies futile, unavailable, or inadequate.   Plaintiff referenced his two prior attempts to address this issue, on November 7, 2013, appeal Log No. 13-3607, and on December 11, 2013, appeal Log No. 14-104.  (ECF No. 1-2 at 95-96.)  Plaintiff alleges he never received a response to his January 21, 2014 appeal.  (ECF No. 48 at 7:14-15.)

Not only is Plaintiff unable to show that he exhausted this appeal to the Third Level of review, the appeal did not identify any specific individual as required by the applicable regulations.  *See* 15 CAL. CODE. REGS. § 3084.2(a)(3).  Rather, the appeal only made allegations against the ACO.  However, the undisputed evidence demonstrates that Plaintiff could have identified the name of the individuals engaging in misconduct because the appeal was based on administrative responses received by Plaintiff that specifically identified the responding officials.  *See Parks*, 2015 U.S. Dist. LEXIS 70602, at *12.

In conclusion, Plaintiff's January 21, 2014 appeal[33] fails to adequately identify any individual Defendant and, therefore, this appeal is not properly exhausted.

/ / /

/ / /

---

[33]   The Court notes there is a material dispute as to whether Plaintiff ever submitted his October 30, 2012 appeal.  The prison records do not reflect its existence.  But Plaintiff alleges under penalty of perjury that he did.  While this genuine factual dispute could preclude summary judgment as to this claim, *see supra* Part II(B)(2)(a), summary judgment is nevertheless warranted because the appeal fails to identify any specific Defendant, in violation of the applicable prison appeal regulations.

p.    Conclusion

Based on the foregoing analysis, the Court **RECOMMENDS** that Defendants' Motion for Partial Summary Judgment be **GRANTED in part** and **DENIED in part**. Specifically, the Court concludes that Defendants have satisfied their burden of providing undisputed evidence that Plaintiff failed to exhaust available administrative remedies as to the following:

- Conspiracy and retaliation claims against Defendant Abad;

- Due process claims against Defendants Behra, Cavazos, and Paramo;

- Equal protection claim against all Defendants except Defendants Benyard, Cavazos, and Paramo; and

- Cruel and unusual punishment claim against all Defendants

Accordingly, summary judgment should be granted on these claims as against these Defendants only.  As to all remaining claims and Defendants, genuine issues of material fact preclude summary judgment.

## C.    **Defendants' Motion to Dismiss**

Defendants move to dismiss Plaintiff Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the following grounds: (1) Plaintiff fails to state a claim for conspiracy, retaliation, due process, equal protection, or cruel and unusual punishment; (2) Plaintiff's claims related to his rules violation and hearing are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (3) Defendants are protected by absolute immunity under the Eleventh Amendment from liability for damages in their official capacities; and (4) Defendants are protected by qualified immunity from liability for damages in their individual capacities.  (ECF No. 35 at 2:1-9.)

### 1.    **Legal Standards**

a.    Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive

merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). However, courts may consider exhibits that are attached to the complaint. *See* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss. (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978))). However, exhibits that contradict the allegations of a complaint may fatally undermine the complaint's allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff can "plead himself out of a claim by including . . . details contrary to his claims." (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."))).

"The focus of any Rule 12(b)(6) dismissal . . . is the complaint." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6). *Id.* ("The 'new' allegations contained in the inmates' opposition motion . . . are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (citations omitted)).

A motion to dismiss should be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Citation omitted.] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

"All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed. v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The Court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988 (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on motion to dismiss, court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 570 (when plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.")).

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d

962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

    b. Standards Applicable to *Pro Se* Litigants in Civil Rights Actions

  "In a civil rights case where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford [the] plaintiff the benefit of any doubt." *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).

  Nevertheless, a court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987)). Thus, before a *pro se* civil rights complaint may be dismissed, the Court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim–Panahi*, 839 F.2d at 623–24. But where amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate. *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

  **2.** **Analysis**

    a. Conspiracy

      i. *Applicable Law*

  To allege a claim of conspiracy under § 1983, a plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989)

(en banc); *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998); *Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989).   "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  *United Steelworkers*, 865 F.2d at 1540-41.

Pleading a conspiracy requires more than a conclusory allegation that the defendants conspired to deprive a plaintiff's civil rights.  The Ninth Circuit applies a heightened pleading standard to conspiracy claims under § 1983 and has held that mere conclusory allegations of conspiracy (*i.e.*, bare allegations that a defendant "conspired" with another) are insufficient to state a claim.  *See Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir. 1997); *Buckey v. Cnty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992).  Rather, "[t]o state a claim for conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy."  *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) (citing *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987)); *Buckey*, 968 F.2d at 794.  A plaintiff can meet the heightened pleading standard by alleging "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights even though he does not identify which officer said or did what at a particular time."  *Harris*, 126 F.3d at 1196.   Further, because conspiracies, by their very nature, are secret agreements, "[a] defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions."  *Gilbrook v. City of Westminster*, 177 F.3d 839, 856-57 (9th Cir. 1999) (citing *United States v. Calabrese*, 825 F.2d 1342, 1348 (9th Cir. 1987)); *cf. United Steelworkers*, 865 F.2d at 1547 (circumstantial evidence of "[t]he ability and opportunity to conspire" is, standing alone, insufficient).

### ii.    Analysis

Defendants contend that notwithstanding Plaintiff's allegations that all Defendants engaged in a conspiracy to violate his constitutional rights, Plaintiff "fail[s] to allege the

kinds of facts that are required to establish a conspiracy.  (ECF No. 35-1 at 14:26-28.)  Specifically, Defendants contend Plaintiff fails to allege facts (a) showing an agreement among the Defendants; (b) showing that Defendants ever met together; (c) from which an inference could be drawn that Defendants agreed to violate his rights; (d) showing that Defendants had a shared objective; or (e) that Defendants even had the ability or opportunity to conspire about anything.  (*Id.* at 15:21-27.)  Rather, Defendants allege Plaintiff "has done nothing more than allege a series of unrelated events, along with a conclusion, unsupported by any facts, that these unrelated events occurred because the Defendants conspired against him.  That is not enough to establish a conspiracy."  (*Id.* at 15:27-16:2.)

Plaintiff argues in his opposition that his Complaint adequately alleged a conspiracy claim against all of the Defendants because he alleged: (a) Defendants are law enforcement officials that held meetings to encourage an ongoing campaign of harassment and unauthorized punishment of Plaintiff; (b) Defendants shared a common objective to deny Plaintiff the full benefit of the law and they acted in concert to accomplish an unlawful objective; (c) Defendants' actions were done with malice and the intent to injure Plaintiff's parole hearing scheduled in 2014; and (d) circumstantial evidence exists allowing the Court to infer that Defendants had the ability and opportunity to conspire against Plaintiff.  (ECF No. 46 at 19:16-21:14.)

In their reply, Defendants contend Plaintiff has done nothing more than reiterate the conclusory allegations contained within the Complaint.  Defendants argue:

> Although [Plaintiff] claims that some (but not all) of the Defendants met with other, un-identified Defendants, he states no facts from which the Court could infer that all sixteen Defendants shared and carried out an agreement to violate Plaintiff's constitutional rights.  Plaintiff does not point to any allegations in his Complaint that show which Defendants met with which other Defendants, the dates of those meetings, or the subject of those meetings.  He does not point to any non-conclusory allegations in his Complaint that established, as required, that each Defendant at least shared the common objective of violating Plaintiff's rights.  [Citation.]  He falls back on asserting that because Defendants are all law enforcement officials and because adverse actions were

taken against him, Defendants must have conspired against him, because they had the opportunity to do so.

(ECF No. 51 at 6:16-19.)

Defendants also contend that as discussed elsewhere in their Motion to Dismiss, "Plaintiff also fail[s] to allege facts showing any actual violation of his constitutional rights, as required for a conspiracy." (*Id.* at 7:7-9.)

As an initial matter, for the reasons set forth below, the Court disagrees with Defendants that Plaintiff's Complaint fails to allege facts showing an actual violation of his constitutional rights.  In addition, the Court disagrees with Defendants' apparent position that in order to state a claim for conspiracy Plaintiff is required to allege facts from which the inference can be drawn that each and every one of the sixteen Defendants shared and carried out an agreement to violate Plaintiff's constitutional rights.  Pleading conspiracy is not an "all or nothing" endeavor.  Rather, it is possible to sufficiently allege a conspiracy among some, but not all, of the Defendants.  Further, it is possible to sufficiently allege a conspiracy among one Defendant and other non-party prison officials, even if Plaintiff's Complaint fails to state a conspiracy claim against all of the remaining Defendants.

Having recognized that a plaintiff is not required to sufficiently plead conspiracy among each and every Defendant in order to survive a motion to dismiss, the Court finds that for all but three of the Defendants, Plaintiff's allegations are conclusory and devoid of any specific facts on which the Court can infer a meeting of the minds and, thus, the existence of a conspiracy.  Except as to Defendants Behra, Olson, and Ramirez, Plaintiff's allegations amount to conclusory allegations unsupported by specific facts that the Defendants conspired with one another to violate Plaintiff's constitutional rights.  *See Harris*, 126 F.3d at 1195; *Buckey*, 968 F.2d at 794.  Allegations that Defendants took actions in violation of Plaintiff's constitutional rights are insufficient absent specific factual allegations showing an agreement to violate those rights.  However, the Court concludes Plaintiff has adequately alleged a conspiracy claim against Defendants Behra, Olson, and

Ramirez.

Plaintiff alleges Defendant Behra and non-party officers Togafau and Cabrera planted controlled contraband in Plaintiff's work area that ultimately led to Plaintiff getting fired from his prison laundry job. Further, Defendant Behra made specific statements to Plaintiff that he was being punished for continuing his prior civil rights lawsuit against Togafau and Cabrera. *See supra* Part I(B)(2). Although Plaintiff does not allege specific facts showing that Defendant Behara and Togafau and Cabrera had agreed to violate Plaintiff's constitutional rights, such an agreement "may be inferred from circumstantial evidence and from evidence of [the alleged conspirators'] actions." *Gilbrook*, 177 F.3d at 856-57 (citing *Calabrese*, 825 F.2d at 1348). Indeed, "a showing that the alleged conspirators have committed acts that 'are unlikely to have been undertaken without an agreement' may allow a jury to infer the existence of a conspiracy." *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (1999) (quoting *Kunik v. Racine Cnty.*, 946 F.2d 1574, 1580 (7th Cir. 1991)). Here, Plaintiff alleges Defendant Behra and two non-party officers (Togafau and Cabrera) planted contraband in Plaintiff's work area two days after Defendant Behra had threatened Plaintiff for prosecuting his prior lawsuit against Togafau and Cabrera and threatened to get him fired from his prison laundry job. Plaintiff further alleges Defendant Behra immediately detained Plaintiff after he found the contraband, and that he then informed Togafau, who then requested that Plaintiff be removed from his prison laundry job. These factual allegations are sufficient to permit the inference of the existence of a conspiracy between the three to retaliate against Plaintiff. "Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury, 'so long as there is a possibility that the jury can infer from the circumstances (that the alleged conspirators) had a meeting of the minds and thus reached a[n] understanding' to achieve the conspiracy's objectives." *Id.* at 1301-02 (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1970), *reversed in part on other grounds*, 446 U.S. 754 (1980) (internal quotations omitted)).

/ / /

Plaintiff also alleges sufficient facts on which an inference can be drawn that Defendants Olson and Ramirez agreed to violate Plaintiff's constitutional rights. Plaintiff's Complaint repeatedly alleges that Defendants Olson and Ramirez improperly rejected and/or cancelled Plaintiff's administrative appeals in order to retaliate against Plaintiff's exercise of his right to access the courts. Moreover, as the various screening letters demonstrate, Defendants Olson and Ramirez *jointly* screened out Plaintiff's appeals. *See, e.g.*, *supra* Parts I(B)(2)(f)-(g). Even absent any specific factual allegation of agreement, these joint actions are sufficient to permit the inference that Defendants Olson and Ramirez agreed to retaliate against Plaintiff.

In conclusion, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's conspiracy claim against Defendants Behra, Olson, and Ramirez should be **DENIED**, but that Defendants' Motion to Dismiss Plaintiff's conspiracy claims against the other thirteen Defendants should be **GRANTED** with leave to amend. *See Lopez*, 203 F.3d at 1127 (*pro se* litigants entitled to leave to amend complaint "unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts." (citing *Noll*, 809 F.2d at 1447)).

    b. <u>Retaliation</u>

     i. *Applicable Law*

The Constitution provides protection against "[d]eliberate retaliation" by prison officials against an inmate's exercise of his right to petition for redress of grievances. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) (intentional obstruction of the right to seek redress "is precisely the sort of oppression that . . . section 1983 [is] intended to remedy."); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1428 (8th Cir. 1986)). Indeed, "[o]f fundamental import to prisoners are their First Amendment 'right[s] to file prison grievances,' *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to 'pursue civil rights litigation in the courts.' *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995)." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *see also Soranno's Gasco*, 874

F.2d at 1314 ("The right of access to the courts is subsumed under the first amendment right to petition the government for redress of grievances." (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Harrison*, 780 F.2d at 1427-28). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.   And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Rhodes*, 408 F.3d at 567 (citing *Pratt v. Rowland*, 65 F.3d 802, 806 & n. 4 (9th Cir. 1995) ("[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes.   That retaliatory actions by prison officials are cognizable under § 1983 has also been widely accepted in other circuits.")).

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Id.* at 567-68 (footnote omitted) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam) ("A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline.")).

Because retaliation by prison officials may chill an inmate's exercise of his legitimate First Amendment rights, such conduct is actionable even if it would not otherwise rise to the level of a constitutional violation.  *Thomas v. Carpenter*, 881 F.2d 828, 830 (9th Cir. 1989).  However, "[r]etaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, Plaintiff must allege sufficient facts to plausibly suggest a nexus between the two." *Rojo v. Paramo*, No.

13cv2237, 2014 U.S. Dist. LEXIS 80156, at *12-13 (S.D. Cal. June 10, 2014) (citing *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, *i.e.*, "after this, therefore because of this")).  "Thus, while 'the timing and nature' of an allegedly adverse action can 'properly be considered' as circumstantial evidence of retaliatory intent, the official alleged to have retaliated must also be alleged to have been *aware* of the plaintiff's protected conduct."  *Id.* at *13 (quoting *Soranno's Gasco*, 874 F.2d at 1315-16; *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent."); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) (noting that "mere speculation that defendants acted out of retaliation is not sufficient" and affirming summary judgment where the record contained "nothing . . . to indicate [defendant] even knew about [an] earlier [law]suit.")).  Moreover, a plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act.  *Soranno's Gasco*, 874 F.2d at 1314.

> ii.   *Analysis*

> (1)   Defendant Behra

Plaintiff alleges Defendant Behra retaliated against him by planting controlled contraband in his work space and, after Plaintiff approached the contraband and was searched, Defendant Behra stated "I told you I was going to get you," in reference to a threat made two days before when Defendant Behra stated, "If you continue this crap law suite [sic] . . . I'll make sure you get fired, and placed in AD-SEG and transferred out of R.J," and "I know a lot of people."  (ECF No. 1-1 at 7.)  Plaintiff also alleges Defendant Behra subsequently issued a disciplinary report falsely stating that Plaintiff was out of bounds and attempting to steal property and that Plaintiff was ultimately terminated from his prison laundry job as a result of this false disciplinary report.  (ECF No. 1 at ¶ 18.) Plaintiff alleges Defendant Behra's threats and harassment were done in retaliation for Plaintiff having filed his prior lawsuit and that the false disciplinary report was made in order to justify the wrongful termination.

Defendants contend Plaintiff failed to allege "facts to show that Officer Behra wrote this report *because of* Plaintiff's exercise of protected conduct, or that the report chilled his exercise of his First Amendment rights, or that Officer Behra did not have a legitimate correctional goal in writing the report, all of which have to be shown, under *Rhodes*." (ECF No. 35-1 at 16:27-17:3.)   Defendants also contend Plaintiff alleged no "facts to show why Officer Behra would be motivated by [Plaintiff's prior] lawsuit to retaliate against Plaintiff." (*Id.* at 17:7-8.)   Although Defendants correctly note that Defendant Behra was not a defendant in Plaintiff's prior lawsuit, their argument ignores Plaintiff's allegations. According to Plaintiff's Complaint and the exhibits attached thereto, Defendant Behra expressly threatened to retaliate against Plaintiff for having brought his prior lawsuit.   Thus, even though the lawsuit was not against Defendant Behra, and even though Plaintiff has not alleged *why* Defendant Behra would be motivated to retaliate against Plaintiff, Plaintiff has alleged sufficient facts showing that Defendant Behra *did* take adverse actions against Plaintiff because Plaintiff had engaged in protected conduct.

Defendants also contend "there is a more logical explanation of why Defendant Behra write the disciplinary report: because Plaintiff actually *was* out of bounds attempting to steal property." (*Id.* at 17:14-16.)   However, this argument ignores Plaintiff's factual allegations and attempts to resolve a factual dispute at the pleading stage.   In *Parrish v. Solis*, No. 11-CV-01438, 2014 U.S. Dist. LEXIS 65827, *23-26 (N.D. Cal. May 13, 2014), the court addressed this same argument in a case where the plaintiff alleged the defendants had planted scissors in his legal file.   The defendants argued in their motion to dismiss that "'any alleged retaliatory motive could not have been the substantial motivating factor behind [defendant's] decision to issue the disciplinary charge' because Plaintiff's very possession of the sharpened scissors is a 'sufficient reason to issue the disciplinary charge.'" *Id.* at *24.   The court concluded that this "argument fails because it is irrelevant at the motion to dismiss stage.   In other words, Defendants' argument ignores Plaintiff's factual allegations and attempts solely to dispute the factual allegations in Plaintiff's Complaint, and factual disputes are not properly resolved in a motion to dismiss." *Id.*

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.")).  Here, Defendants are similarly attempting to resolve factual disputes in their favor at the motion to dismiss stage. Defendants argue that the documents attached to Plaintiff's Complaint showing a logical alternative explanation for Defendant Behra's disciplinary report contradict Plaintiff's allegations and, thus, the Court should not assume the veracity of Plaintiff's allegations but, instead, should consider "obvious alternative explanations" for the conduct.  However, at this stage of the litigation the Court should not disregard Plaintiff's allegation that Defendant Behra's report contained false statements simply because Defendants contend the statements are true.  In addition, given Defendant Behra's alleged threats toward Plaintiff, "judicial experience and common sense," *Iqbal*, 556 U.S. at 679, does not compel the conclusion that Defendant Behra's adverse actions are more likely the result of legitimate alternative explanations.[34]

Defendants also argue Defendant "Behra had a legitimate correctional reason for writing the report: to make prison authorities aware of unlawful conduct by an inmate." (ECF No. 35-1 at 18:8-10.)  Again, however, the Court assumes the veracity of Plaintiff's allegations that he was not out of bound or attempting to steal property and that Defendant Behra's contrary statements in his report were false.  These allegations are sufficient to

---

[34] Defendants often cite to *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1056 (9th Cir. 2011), in their analysis of Plaintiff's retaliation claims.  However, that case did not involve retaliation claims by a prisoner against prison officials.  As a result, it does not undergo an analysis of the elements of a retaliation claim in the prison context set forth in *Rhodes*.  Because a prisoner's "allegations of retaliation for [engaging in protected conduct] are sufficient to satisfy the requirement that [the prisoner] plead the absence of a legitimate penological purpose for the retaliatory action," *Austin v. Terhune*, 367 F.3d 1167, 1171 n.3 (9th Cir. 2004) (citing *Bruce*, 351 F.3d at 1289), the Court finds that Defendants' repeated efforts to explain away alleged retaliatory conduct by arguing a logical explanation exists for Defendants' allegedly improper actions are inappropriate at the pleading stage.

satisfy the final *Rhodes* requirement that the disputed actions did not reasonably advance a legitimate correctional goal.  Allowing a prison official to make false accusations against an inmate as a pretext for wrongfully terminating the inmate's job in no way advances a legitimate correctional goal.

Finally, Defendants argue "Plaintiff has alleged no facts to show that his First Amendment rights were chilled in any way as a result of Officer Behra's disciplinary report, or that as a result of Officer Behra's report he was unable to file grievances.  Indeed, the documents attached to his Complaint show that he liberally exercised his right to file grievances." (*Id.* at 18:18-22.)  Defendants' argument is unpersuasive.  "[A]t the pleading stage, [the Ninth Circuit has] *never* required a litigant, *per impossibile*, to demonstrate a *total* chilling of his First Amendment rights to file grievances and to pursue civil rights litigation in order to perfect a retaliation claim.  Speech can be chilled even when not completely silenced."  *Rhodes*, 408 F.3d at 568.  Rather, "the proper First Amendment inquiry asks 'whether an official's acts would chill *or* silence a person of ordinary firmness from future First Amendment activities.'"  *Id.* (quoting *Mendocino Envtl. Ctr.*, 192 F.3d at 1300).  "Because 'it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity,' [a plaintiff] does not have to demonstrate that his speech was 'actually inhibited or suppressed.'"  *Id.* at 569 (quoting *Mendocino Envtl. Ctr.*, 192 F.3d at 1300).  Instead, a plaintiff need only allege "that his First Amendment rights were chilled, though not necessarily silenced."  *Id.*  The Court finds Plaintiff satisfies the "chilling effect" *Rhodes* element.[35]

In conclusion, Plaintiff alleges Defendant Behra took an adverse action against him (*i.e.,* issuing a false disciplinary report) because of Plaintiff's protected conduct (*i.e.,*

---

[35] Defendants argue Plaintiff fails to plead this element as against most of the Defendants.  The Court does not address this element each time it is raised, as the Court believes Plaintiff's allegations of "chilling effect" are sufficiently plead as against all Defendants.

1   pursuing his prior civil rights lawsuit), that Defendant Behra's actions would chill a person

2   of ordinary firmness from future First Amendment activities, and that the action did not

3   reasonably advance a legitimate correctional goal.   Plaintiff has adequately plead a

4   retaliation claim against Defendant Behra.

5                                    (2)    Defendants Paramo and Suglich

6        Defendants contend Plaintiff failed to allege that Defendants Praramo and Suglich

7   took any adverse action against Plaintiff.

8        Plaintiff alleges that, in connection with his unassigned October 30, 2012 appeal,

9   Defendant Suglich "personally participated in the alleged deprivation of constitutional

10  right, conspired and retaliated against the Plaintiff by refusing to process Plaintiff

11  grievances in order to cover up misconduct, knew of the alleged deprivation and failed to

12  act to prevent them, when thre [sic] is a duty to do so."  (ECF No. 1 at ¶ 23.)  Plaintiff's

13  allegation that Defendant Suglich refused to process Plaintiff grievances is sufficient to

14  satisfy *Rhodes*' "adverse action" requirement.

15       Defendants contend Plaintiff's Complaint and an accompanying document (*see* ECF

16  No. 1-1 at 68) actually contradict his claim against Defendant Suglich because they

17  demonstrate that Plaintiff met with Defendant Suglich to address Plaintiff's concern about

18  the timely processing of his grievances.   However, that Plaintiff met with Defendant

19  Suglich to discuss the untimely processing of Plaintiff's grievances does not necessarily

20  contradict Plaintiff's allegation that Defendant Suglich refused to process Plaintiff's

21  grievances.  Defendant Suglich explained there had been a slight delay in the processing

22  of appeals due to changes within the Inmate Appeals Office, and he assured Plaintiff the

23  Inmate Appeals Office was not ignoring any appeals and that the appeals are processed in

24  the order they are received.  (*Id.*)  However, Plaintiff's claim against Defendant Suglich

25  stems from the alleged mishandling of his October 30, 2012 appeal.  (ECF No. 1 at ¶ 23.)

26  That appeal was never processed.  While the parties may dispute Plaintiff's claim that this

27  appeal was ever submitted, Plaintiff alleges it was and that Defendant Suglich refused to

28  process it.

1   As for Defendant Paramo, Defendants contend the only allegation against him
2   relates to the letter he sent to Plaintiff in which he summarized Plaintiff's meeting with
3   Defendant Suglich, and that this letter does not amount to an adverse action.  However,
4   Plaintiff's Complaint and the appeals attached thereto are replete with claims by Plaintiff
5   that Defendant Paramo refused to properly process Plaintiff's grievances.  *See, e.g.*, *supra*
6   Part I(B)(6)(a).  These allegations are sufficient to meet the first element of the *Rhodes* test.

7   Defendants argue Plaintiff fails to meet the second through fifth elements under
8   *Rhodes* simply because he fails to meet the first element.  Having found Plaintiff satisfied
9   the first element as to Defendants Paramo and Suglich, the Court is left with no argument
10  from Defendants as to the remaining elements.   Accordingly, dismissal of Plaintiff's
11  retaliation claim against Defendants Paramo and Suglich is unwarranted.

12  (3)   Defendants Olson and Ramirez

13  Defendants do not contend Plaintiff has failed to allege that Defendants Olson and
14  Ramirez took adverse actions against them.  Plaintiff's extensive allegations that they
15  screened out many of his grievances is sufficient to meet the first *Rhodes* element.  Rather,
16  Defendants contend Plaintiff fails to allege facts showing that Plaintiff's prior lawsuit was
17  the substantial or motivating factor behind the screening letters.  The Court agrees.
18  "Retaliation is not established simply by showing adverse activity by a defendant after
19  protected speech; rather, Plaintiff must allege sufficient facts to plausibly suggest a nexus
20  between the two." *Rojo*, 2014 U.S. Dist. LEXIS 80156, at *12-13.  Here, Plaintiff alleges
21  no facts suggesting any nexus between his prior lawsuit and Defendants Olson and
22  Ramirez's adverse actions.  However, Defendants' argument ignores the fact that the prior
23  lawsuit is not the only protected activity Plaintiff engaged in that could serve as a
24  substantial or motivating factor in Defendant Olson and Ramirez's adverse actions.
25  Plaintiff also alleges numerous instances where he filed prison appeals against Defendants
26  Olson and Ramirez due to their alleged mishandling of prior appeals.  Defendants Olson
27  and Ramirez were surely aware of these appeals against them, as they were the ACO staff
28  members that later screened them out.  *See id.* at *13 ("[T]he official alleged to have

retaliated must also be alleged to have been *aware* of the plaintiff's protected conduct." (citations omitted)).  This is sufficient to satisfy the "because of" element of the *Rhodes* test.

Defendants also contend Plaintiff's grievances were screened out for legitimate reasons and it was Plaintiff that failed to correct the deficiencies in his appeals.  Thus, "if [Plaintiff's] access to the grievance system was obstructed in any way, he was the one who obstructed it."  (ECF No. 35-1 at 20:9-21:16.)  Defendants thus ask the Court to disregard Plaintiff's conflicting allegations.  However, while some of the reasons for rejecting the appeals may ultimately be proven to be based on furthering legitimate penological goals, as the Court's earlier exhaustion analysis demonstrates, there are disputed issues as to whether several of Plaintiff's appeals should have been rejected and whether certain instructions given to Plaintiff to cure the deficiencies were adequate.  Plaintiff has alleged his appeals were rejected for an improper purpose and the Complaint contains enough facts to plausibly suggest they were.  A prisoner's "allegations of retaliation for the filing of grievances are sufficient to satisfy the requirement that [the prisoner] plead the absence of a legitimate penological purpose for the retaliatory action."  *Austin*, 367 F.3d at 1171 n.3 (citing *Bruce*, 351 F.3d at 1289).

Accordingly, dismissal of Plaintiff's retaliation claim against Defendants Olson and Ramirez is unwarranted.

(4)   Defendant Benyard

Defendants concede that Plaintiff alleges Defendant Benyard took various adverse actions against him, including (1) as a member of the UCC, he declined to make a determination that Plaintiff had been wrongfully terminated from his job; (2) he retained Plaintiff in Ad-Seg following his return from the hospital; (3) he issued an allegedly false RVR against Plaintiff accusing Plaintiff of instigating the fight with Mayorga; and (4) as Defendants Rutledge and Zuniga's supervisor, he participated with them in depriving Plaintiff of his personal property.  (ECF No. 35-1 at 21:19-22:2.)  In addition to these adverse actions recognized by Defendants, Plaintiff's Complaint also alleges Defendant

Benyard failed for more than fourteen months to provide him with a Classification Committee hearing, despite Plaintiff's repeated requests.  (ECF No. 1 at ¶ 27.)

Defendants initially argue Plaintiff fails to allege any facts to show his prior lawsuit was the substantial motivating factor behind any of Defendant Benyard's actions.  This is true.  The Complaint lacks any facts suggesting a nexus between the prior lawsuit and Defendant Benyard's actions.  However, the prior lawsuit is not the only protected activity taken by Plaintiff.  Plaintiff also alleges that he filed an appeal alleging discrimination by Defendant Benyard against minority inmates with respect to job assignments for inmate-barbers.  Plaintiff alleges this prior appeal was the reason Defendant Benyard decided to keep him in Ad-Seg and that the reasons offered by Defendant Benyard were "a mere pretext for the unlawful retaliation."  Similarly, Plaintiff alleged the discrimination complaint was the reason Defendant Benyard instructed Defendant Zuniga to deprive him of his personal property.  (ECF No. 1 at ¶¶ 29-30, 35; ECF No. 1-1 at 112-17.)  Thus, the Court finds Plaintiff has adequately satisfied the "because of" element of the *Rhodes* retaliation test.

Defendants next argue that Defendant Benyard had legitimate reasons for all of his actions.  As noted, however, a prisoner's "allegations of retaliation for the filing of grievances are sufficient to satisfy the requirement that [the prisoner] plead the absence of a legitimate penological purpose for the retaliatory action."  *Austin*, 367 F.3d at 1171 n.3 (citing *Bruce*, 351 F.3d at 1289).  Thus, while there may be legitimate reasons for Defendant Benyard's actions, that matter should be resolved at summary judgment or trial rather than at the pleading stage.[36]

---

[36]  With respect to the RVR, Defendants contend the document actually refutes Plaintiff's allegations because it states that Plaintiff admitted to instigating the fight with Mayorga and, thus, there is an obvious and logical alternative explanation for Defendant Benyard's RVR.  However, the explanation is not as obvious as Defendants would like.  Plaintiff claims he never made any incriminating statement, and his exhibits support that position.  Specifically, officer Hodge, who was present during the February 4, 2013 Ad-Seg hearing conducted by Defendant Benyard, testified that he did not hear Plaintiff make

The Court does agree with Defendants that Plaintiff has failed to state a retaliation claim against Defendant Benyard based on his instruction to Defendant Zuniga to pack Plaintiff's property.  Plaintiff does not allege that Defendant Benyard ordered Defendant Zuniga to lose or otherwise mishandle Plaintiff's property, and there are no factual allegations suggesting Defendant Benyard was aware of Defendant Zuniga's allegedly improper conduct.[37]  That said, however, Plaintiff's retaliation claim is properly based on other conduct by Defendant Benyard, as discussed above.

Accordingly, dismissal of Plaintiff's retaliation claim against Defendant Benyard is unwarranted.

### (5)   Defendants Abad and Cavazos

Defendants contend Plaintiff has failed to allege any facts showing that his exercise of protected conduct was the substantial motivating factor behind the actions taken by Defendants Abad and Cavazos.  (ECF No. 35-1 at 24:6-13.)  The Court agrees.  Plaintiff alleges Defendants Abad and Cavazos, as members of the UCC, declined to make a determination that Plaintiff had been wrongfully terminated from his job.  (ECF No. 1 at ¶ 27.)  Plaintiff also alleges he had previously notified Defendant Abad of his request for a Classification Committee review but that Defendant Abad did not timely respond to this request.  (ECF No. 1-1 at 79-80, 83.)  However, the Complaint lacks any factual allegations that Defendants Abad or Cavazos took these allegedly adverse actions because of

---

any statements admitting to instigating the fight.  (ECF No. 1-2 at 78-79.)  This is a factual dispute unsuited for resolution at the pleading stage.

[37]   As a result, Plaintiff cannot establish a retaliation claim against Defendant Benyard based on supervisor liability.  *See Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011) (the Ninth Circuit has "long permitted plaintiffs to hold supervisors individually liable in § 1983 suits when culpable action, or inaction, is directly attributed to them."); *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) (en banc) ("The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." (quoting *McClelland v. Facteau*, 610 F.2d 693, 695 (10th Cir. 1979))).

Plaintiff's exercise of protected activity.  There is no factual allegation connecting these two Defendants to Plaintiff's prior civil rights lawsuit, nor is there any factual allegation suggesting Plaintiff filed prior grievances against them.  Although Plaintiff alleges he engaged in certain protected speech and that Defendants Abad and Cavazos later took adverse actions against him, Plaintiff fails to "allege sufficient facts to plausibly suggest a nexus between the two." *Rojo*, 2014 U.S. Dist. LEXIS 80156, at *12-13.  Accordingly, Defendants' Motion to Dismiss Plaintiff's retaliation claims against Defendants Abad and Cavazos should be granted.

(6)    Defendant Zuniga

Plaintiff alleges Defendant Zuniga performed an inventory of Plaintiff's personal property on January 18, 2013 after Plaintiff was sent to the hospital following his fight with Mayorga, and that in the process of packing up Plaintiff's property Defendant Zuniga lost and/or gave away some of his property.  Plaintiff alleges inmate Garcia observed Defendant Zuniga set aside certain items and that when Garcia inquired why they were not being kept with Plaintiff's other property Defendant Zuniga responded, "No fuck that, he [referring to Plaintiff] 602 us so we're going to teach him a lesson."  Plaintiff alleges Defendant Zuniga's actions were done in retaliation for Plaintiff previously filing a CDCR Form 602 appeal against Defendant Zuniga and others alleging a delay in notifying that his mother was waiting for him in the visiting room resulting in only a seven-minute visit with his mother.  Plaintiff also alleges Defendant Zuniga's description of his television on the inventory form is inconsistent with his later testimony that the television was inoperable. (ECF No. 1 at ¶¶ 28-30, 32, 35, 37; ECF No. 1-1 at 97-99, 112-17, 122; ECF No. 1-2 at 13, 21.)

Defendants contend the facts alleged by Plaintiff do not indicate what happened with the television after it left Plaintiff's cell and, as a result, the Court would have to speculate that Defendant Zuniga intentionally and wrongfully confiscated the television.  Defendants also contend a more obvious and logical explanation is that the television was simply lost when it was co-mingled with other inmates' property in the R&R department.  (ECF No.

35-1 at 25:22-27.)  The Court disagrees.  Plaintiff's retaliation claim against Defendant Zuniga is not based solely on the allegations pertaining to the television, but also based on Defendant Zuniga allegedly losing and/or giving away some of Plaintiff's personal items. Plaintiff also alleges that when Defendant Zuniga was questioned about not keeping all of his property together, he responded by stating he was going to teach Plaintiff a lesson for having submitted a prior appeal against Defendant Zuniga.  These facts are sufficient to meet the *Rhodes* retaliation test.  Moreover, even if the allegations regarding the television were the sole basis for Plaintiff's retaliation claim against Defendant Zuniga, Plaintiff has alleged facts showing Defendant initially indicated on the property inventory form that Plaintiff's television was operable but that he later stated that it was inoperable when sent it to R&R.  As noted above, Defendants' effort to explain away their conduct by arguing there exists a more obvious and logical explanation[38] is inappropriate where sufficient facts are alleged showing the absence of a legitimate penological purpose.

Accordingly, Defendants' Motion to Dismiss Plaintiff's retaliation claim against Defendant Zuniga should be denied.

### (7)    Defendant Rutledge

Defendants contend Plaintiff has failed to allege any facts showing that his exercise of protected conduct was the substantial motivating factor behind the actions taken by Defendant Rutledge.  (ECF No. 35-1 at 26:17-23.)  The Court agrees.  Plaintiff alleges Defendant Rutledge interviewed him in connection with his claim that Defendant Zuniga deprived him of his personal property, but that Defendant Rutledge denied Plaintiff's request that he interview the inmate witnesses that observed Defendant Zuniga intentionally misplacing Plaintiff's property.  Plaintiff alleged this refusal was done to

---

[38]  Defendants' "more obvious and logical explanation," *i.e.*, that Plaintiff's television was simply lost, is neither obvious or logical in light of the conflicting evidence in the record that (a) the prison admitted to losing the television and (b) Defendant Alvarez's representation that the television was being confiscated because it had been altered from its original state.

1   retaliate for Plaintiff having filed grievances against other prison staff and to cover up

2   misconduct by other staff.   (ECF No. 1 at ¶ 35; ECF No. 1-2 at 10.)   However, the

3   Complaint lacks any factual allegations that Defendant Rutledge denied Plaintiff's request

4   to interview witnesses because of Plaintiff's exercise of protected activity.   Plaintiff's

5   allegations are wholly conclusory and insufficient.   Although Plaintiff alleges he engaged

6   in certain protected speech and that Defendant Rutledge later took an adverse action against

7   him, Plaintiff fails to "allege sufficient facts to plausibly suggest a nexus between the two."

8   *Rojo*, 2014 U.S. Dist. LEXIS 80156, at *12-13.   Accordingly, Defendants' Motion to

9   Dismiss Plaintiff's retaliation claims against Defendant Rutledge should be granted.

10                    (8)    Defendants Allamby, Alvarez, Cortez, Jones, and Spence

11           Plaintiff's retaliation claims against Defendants Allamby, Alvarez, Cortez, Jones,

12   and Spence fail for the same reasons as his retaliation claims against Defendants Abad,

13   Cavazos, and Rutledge.   Plaintiff alleges Defendant Allamby denied his request for certain

14   witnesses and evidence during the RVR re-hearing pertaining to Defendant Benyard's

15   fighting RVR.   (ECF No. 1 at ¶ 44.)   Plaintiff alleges Defendant Alvarez improperly

16   confiscated Plaintiff's television after concluding that it had been altered from its original

17   state and was therefore improper contraband.   (*Id.* at ¶ 38.)   Plaintiff alleges Defendants

18   Cortez and Jones gave false testimony against Plaintiff at the RVR re-hearing conducted

19   by Defendant Allamby.   (ECF No. 2 at 84-85.)   Plaintiff alleges Defendant Spence denied

20   Plaintiff's request for certain witnesses and evidence in connection with his hearing

21   following Plaintiff's fighting RVR issued by Defendant Benyard.   (*Id.* at 107, 109.)

22   However, there are no non-conclusory factual allegations suggesting why Defendants

23   Allamby, Alvarez, Cortez, Jones, or Spence would have retaliated against Plaintiff.   The

24   Complaint lacks any facts plausibly suggesting a nexus between these Defendants' conduct

25   and Plaintiff's exercise of protected activity.   Accordingly, Defendants' Motion to Dismiss

26   Plaintiff's retaliation claims against Defendants Allamby, Alvarez, Cortez, Jones, and

27   Spence should be granted.

28   / / /

(9)   Defendant Hernandez

Plaintiff's Complaint is devoid of any specific factual allegations against Defendant Hernandez other than that Defendant Hernandez supervised and approved the wrongful conduct of others.  (*See* ECF No. 1 at ¶ 50.)  "A supervisory official . . . may be liable under Section 1983 only if he was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Henry v. Sanchez*, 923 F. Supp. 1266, 1272 (C.D. Cal. 1996) (citing *Redman*, 942 F.2d at 1446-47; *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). Plaintiff's Complaint does not contain any specific factual allegations against Defendant Hernandez that would permit a retaliation claim to proceed against him based on a theory of supervisory liability.  Accordingly, Defendants' Motion to Dismiss Plaintiff's retaliation claim against Defendant Hernandez should be granted.

(10)   Conclusion

Based on the foregoing, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's retaliation claims should be (1) **GRANTED** as against Defendants Abad, Allamby, Alvarez, Cavazos, Cortez, Hernandez, Jones, Rutledge, and Spence, and (2) **DENIED** as against Defendants Behra, Benyard, Olson, Paramo, Ramirez, Suglich, and Zuniga.  Because it is not apparent that amendment would be futile, denial should be without prejudice.  *See Lopez*, 203 F.3d at 1127.

c.   Due Process

i.   *Applicable Law*

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).  "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'"  *Wright v.*

1  *Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995
2  F.2d 898, 904 (9th Cir. 1993)).

3                      ii.    *Analysis*

4        Defendants contend, and Plaintiff appears to concede in his opposition, that
5  Plaintiff's Complaint alleges violation of his due process rights in connection with the
6  following: (1) Classification Committee hearings concerning the termination from his job;
7  (2) hearings on the fighting charge; and (3) deprivation of his personal property.  (*See* ECF
8  No. 35-1 at 31:10-34:25; ECF No. 46 at 36:15-19.)  However, the Complaint also clearly
9  alleges violations of Plaintiff's due process rights in connection with certain Defendants'
10  processing of his inmate grievances.  The Court will address this issue first before
11  addressing the three issues briefed by the parties.

12                  (1)    Inmate Grievances

13        Plaintiff alleges Defendants, including Defendants Olson and Ramirez, "refus[ed] to
14  process Plaintiff's grievances, using tactics of intentionally delaying process, rejecting
15  without fundament [sic] grievances, cancel erroneously, claiming that they has [sic] not
16  receive[d] grievances after submitted to there [sic] office."  (ECF No. 1 at 10:17-20.)

17        However, the Ninth Circuit has held that prisoners have no protected property
18  interest in an inmate grievance procedure arising directly from the Due Process Clause.
19  *See Ramirez v. Galaza*, 334 F.3d 850, 869 (9th Cir. 2003) ("[I]nmates lack a separate
20  constitutional entitlement to a specific prison grievance procedure." (citing *Mann v.*
21  *Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (finding that the due process clause of the
22  Fourteenth Amendment creates "no legitimate claim of entitlement to a [prison] grievance
23  procedure"))).  In addition, "[t]he existence of an inmate appeals process does not create a
24  protected liberty interest upon which Plaintiff may base a claim that he was denied a
25  particular result or that the appeals process was deficient."  *Moore v. Brown*, 2012 U.S.
26  Dist. LEXIS 55935, *8-9 (E.D. Cal. 2012) (citing *Ramirez*, 334 F.3d at 860; *Mann*, 855
27  F.2d at 640).

28  / / /

In *Moten v. Adams*, 2010 U.S. Dist. LEXIS 922131 (E.D. Cal. 2010), the plaintiff brought claims against prison officials arising out of their participation in the processing of his inmate grievances. *Id.* at *9-10. The plaintiff alleged that the manner in which defendants processed and/or answered his grievances violated his due process rights, denied him equal protection and failed to provide him unbiased review. *Id.* at *10. However, the court dismissed the complaint for failing to state a claim because "[a] prison's grievance process 'is a procedural right only, it does not confer any substantive right upon the inmates.'" *Id.* at *10 (quoting *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)). "An improperly processed inmate grievance does not give rise to a protected liberty interest that implicates the protections of the Fourteenth Amendment." *Id.* (citing *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)).

Thus, to the extent Plaintiff is alleging a due process claim against any of the Defendants due to their processing of Plaintiff's administrative grievances, Plaintiff fails to state a claim.

### (2) Classification Committee Hearings and Job Termination

Defendants first contend Plaintiff fails to state a cognizable due process claim based on the UCC's decision to decline to address whether Plaintiff was wrongfully terminated from his job because Plaintiff has no liberty interest in his prison job. (ECF No. 35-1 at 31:19-32:10.) The Court agrees. "[T]he Due Process Clause of the Fourteenth Amendment 'does not create a property or liberty interest in prison employment.'" *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) (quoting *Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986) (per curiam)) (citing *Baumann v. Ariz. Dep't of Corr.*, 754 F.2d 841, 846 (9th Cir. 1985)). Thus, because Plaintiff has no property or liberty interest in prison employment, the Court need not reach the issue of what process is due.

Thus, Plaintiff's Complaint fails to state a due process claim based on the UCC's decision not to address whether Plaintiff was wrongfully terminated from his job assignment.

/ / /

### (3)   Hearings on Fighting RVR

Defendants next contend Plaintiff fails to state a cognizable due process claim based on the fighting RVR hearing and re-hearing; specifically, Defendants Spence and Allamby's refusal to question certain witnesses and consider certain evidence.  (ECF No. 35-1 at 32:20-34:2.)

As to the re-hearing conducted by Defendant Allamby, Defendants contend the report from the hearing demonstrates that Defendant Allamby allowed Plaintiff's requested witnesses and he allowed Plaintiff to question them.  Defendants also contend the report demonstrates that Defendant Allamby denied Plaintiff's request that the video-recording of his Ad-Seg hearing with Defendant Benyard be reviewed because no such video existed. Finally, Defendants contend the report shows that Defendant Allamby "denied Plaintiff's request for Captain Benyard's personnel records [to support Plaintiff's contention that Defendant Benyard's credibility is suspect] because the proper forum for making a charge of staff misconduct is through the 602 grievance system; it cannot be presented in the context of an appeal of a rules violation charge."  (*See* ECF No. 1-2 at 77-81.)

Plaintiff argues in opposition that although Defendant Allamby permitted the presence of some of Plaintiff's requested witnesses, Defendant Allamby was not justified in denying the presence of the Staff Assistant assigned to assist Plaintiff during the Ad-Seg hearing during which, according to Defendant Benyard, Plaintiff made incriminating statements that he instigated the fight with Mayorga.  (ECF No. 46 at 38:3-8.)  However, Defendant Benyard's RVR indicates that Plaintiff was *not* assigned a Staff Assistant during the Ad-Seg hearing.  (*See* ECF No. 1-2 at 76.)  Plaintiff's opposition argument that Defendant Allamby refused to explain his decision not to call a Staff Assistant is similarly contradicted by Defendant Allamby's final disposition report in which he expressly noted that no Staff Assistant had been assigned for the Ad-Seg hearing.  (*See id.* at 81.)  Thus, Plaintiff's opposition argument that Defendant Allamby failed to state a reason for refusing to call witnesses is contradicted by the exhibits attached to his Complaint and, as a result, this allegation cannot form the basis of a valid due process claim.  Moreover, because

Defendant Allamby expressly stated his reason in his written report, Plaintiff received the due process to which he is entitled.  *See Ponte v. Real*, 471 U.S. 491, 492 (1985) (recognizing "that the Due Process Clause of the Fourteenth Amendment requires that prison officials at some point state their reason for refusing to call witnesses requested by an inmate at a disciplinary hearing.").

Plaintiff next argues he was denied due process because Defendant Benyard, the issuer of the allegedly false fighting RVR, was the supervisor reviewer of Defendant Allamby's disposition and was the chairperson of the UCC that later confirmed his guilty finding.  (ECF No. 46 at 38:26-39:12; *see also* ECF No. 1-1 at 85, ECF No. 1-2 at 75.) However, as Defendants' correctly note in their reply, these allegations expand beyond the allegations contained in Plaintiff's Complaint and are properly disregarded.  "In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum of points and authorities in opposition to a defendant's motion to dismiss."  *Schneider*, 151 F.3d at 1197 (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993)).

With respect to the initial RVR hearing before Defendant Spence, Defendants contend that because Plaintiff was afforded due process at the re-hearing, "any problem he complained of about the first hearing that was correctable was in fact corrected in the second hearing."  (ECF No. 35-1 at 33:11-13.)  The Court agrees.  "[T]here is no due process violation when a procedural error is corrected through the administrative process." *Carrea v. California*, No. EDCV 07-1148-CAS (MAN), 2010 U.S. Dist. LEXIS 107902, at *52-53 (C.D. Cal. Aug. 25, 2010) (citing *Morrisette v. Peters*, 45 F.3d 1119, 1122 (9th Cir. 1995) ("There is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process."); *Torricellas v. Poole*, 954 F. Supp. 1405, 1414 (C.D. Cal. 1997) ("The administrative appeal is considered part of the process afforded, and any error in the process can be corrected during that appeals process without necessarily subjecting prison officials to liability for procedural violations at lower levels."); *see also McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) ("[T]he state

may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.").

Plaintiff's due process claims related to his fighting RVR resulting in the imposition of a 90-day credit loss are also barred by the doctrine recognized in *Heck v. Humphrey*, 512 U.S. 477 (1994).  In that case, the Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. . . . Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486-87; *see also Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) ("*Heck* specifies that [one] cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence."); *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam) ("[W]here success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence."); *Harvey v. Waldron*, 210 F.3d 1008, 1013 (9th Cir. 2000) ("Under the Court's holding in *Heck*, a § 1983 action that would call into question the lawfulness of a plaintiff's conviction or confinement is not cognizable[.]"); *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (per curiam) ("*Heck* precludes a section 1983 claim based on actions which would 'render a conviction or sentence invalid' where that conviction has not been reversed, expunged or called into question by issuance of a writ of habeas corpus." (quoting *Heck*, 512 U.S. at 486)).

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended *Heck*'s favorable termination rule to prison disciplinary actions resulting in the loss of a prisoner's good-time credits.  In *Edwards*, the prisoner was found guilty of several prison infractions and sentenced to 10 days in isolation, 20 days in segregation, and he was deprived of 30 days' good-time credit he had previously earned toward his release.  *Id.* at 643.  The prisoner filed a § 1983 action requesting "a declaration that the procedures employed by state officials violated due process, compensatory and punitive damages for use of the unconstitutional procedures, an injunction to prevent future violations, and any other relief the court deems just and equitable."  *Id.*  The Supreme Court held that his claim for declaratory and monetary relief necessarily implied the validity of the loss of good-time credits and, therefore, was not cognizable under § 1983.  *Id.* at 648.

Here, like in *Edwards*, "[t]he principal procedural defect complained of by [plaintiff] would, if established, necessarily imply the invalidity of the deprivation of his good-time credits."  *Id.* at 646.  Because Plaintiff has not established that this disciplinary finding has been invalidated, Plaintiff's due process claims resulting from the fighting RVR hearing and re-hearing are barred.[39]

Thus, Plaintiff's Complaint fails to state a due process claim based on fighting RVR hearings.

/ / /

/ / /

---

[39] Defendants argue that "to the extent that Plaintiff's conspiracy claim, retaliation claim, due-process claim, equal-protection claim, Eight[h] Amendment claim, or any of his claims arise out of the rules violation charge of fighting or out of the hearings on that charge, the claims are barred under *Heck v. Humphrey*."  (ECF No. 35-1 at 37:15-19.)  The Court disagrees.  Although *Heck* bars Plaintiff's due process claim, Defendants have not explained why it should also bar the other claims arising from these facts when those claims do not raise procedural challenges.  To put it differently, Defendants have not explained how Plaintiff's success on the other claims would necessarily imply the invalidity of Plaintiff's 90-day credit loss.

92

(4)     Deprivation of Personal Property

Finally, Defendants contend Plaintiff's allegations that Defendants Alvarez and Zuniga deprived him of his personal property, and that Defendant Rutledge refused to interview witnesses about the alleged property deprivation, fail to state a claim "because the State provides an adequate post-deprivation remedy for the loss of property."  (ECF No. 35-1 at 34:4-9.)

A claim of negligent or unauthorized deprivation of property by state officials does not state a federal cause of action under § 1983 if the plaintiff has an adequate post-deprivation state remedy.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  California law provides that public employees are liable for injuries to prisoners proximately caused by the employees' negligent or wrongful acts or omissions.  *See* CAL. GOV'T CODE § 844.6.  California Government Code §§ 900-915 set out the procedure for making claims against public entities.  California law thus provides an adequate state post-deprivation remedy for any personal property Plaintiff may have lost due to prison officials' acts.  *Barnett*, 31 F.3d at 817 (per curiam) ("California Law provides an adequate post-deprivation remedy for any property deprivations." (citing CAL. GOV'T CODE §§ 810-895)).

Thus, Plaintiff fails to state a due process claim based on his property deprivation allegations.

(5)     Conclusion

For the foregoing reasons, the Court **RECOMMENDS** Defendants' Motion to Dismiss Plaintiff's due process claims should be **GRANTED**.

d.   Equal Protection

Plaintiff's Complaint broadly asserts a Fourteenth Amendment equal protection claim against all Defendants.  (ECF No. 1 at ¶ 56.)

i.   *Applicable Law*

The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of*

93

*Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  "'The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918)); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

Conclusory allegations of discrimination are insufficient to withstand a motion to dismiss, however, unless the plaintiff alleges facts which may prove invidious discriminatory intent. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  Therefore, when an equal protection violation is alleged, the plaintiff must plead facts to show "that the defendant acted in a discriminatory manner and that the discrimination was intentional." *FDIC. v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991) (citing *Stones v. Los Angeles Comm. College Dist.*, 796 F.2d 270, 275 (9th Cir. 1986); *Lowe v. City of* Monrovia, 775 F.2d 998, 1011 (9th Cir. 1985), *as amended*, 784 F.2d 1407 (1986)).  "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  [Citation omitted].  It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).

### ii.  Analysis

Defendants contend Plaintiff fails to allege facts to show that he was treated differently than similarly situated inmates because "[h]e does not mention any treatment of any other inmate, and he does not compare the treatment he received with the treatment any other inmate received."  (ECF No. 35-1 at 35:16-19.)  Plaintiff responds in his opposition that he alleged that the UCC officials discriminated against him when they denied services and rehabilitative programs on the grounds that he has developmental disabilities and an ICE hold, in violation of the ADA and the Fourteenth Amendment's

94

Equal Protection Clause.  (ECF No. 46 at 40:12-16.)  In so arguing, Plaintiff cites to an unassigned appeal, dated August 7, 2013, in which he complained that Defendants Benyard, Cavazos, and Paramo, among other non-party officers, discriminated against him due to his developmental disabilities and ICE hold.  (*See* ECF No. 1-1 at 86-87.)  Plaintiff also cites to the UCC report, signed by Defendants Benyard and Cavazos, which noted Plaintiff was subject to an ICE hold.  (*See id.* at 85.)

Based on the documents attached to the Complaint, which are properly considered in ruling on Defendants' Motion to Dismiss, and viewing the Complaint in the light most favorable to Plaintiff, the Court concludes Plaintiff has adequately alleged a Fourteenth Amendment equal protection claim against Defendants Benyard and Cavazos.  Indeed, Plaintiff has alleged negative treatment by the UCC officials due to his legal status in the United States.  However, because Defendant Paramo is not a signatory of the UCC report and there are no factual, rather than conclusory, allegations against him, the Court concludes Plaintiff's equal protection is insufficient.  Finally, Plaintiff does not contend he has asserted an equal protection claim against any other Defendants.

Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment equal protection claim be **DENIED** as to Defendants Benyard and Cavazos and **GRANTED** with leave to amend as to all other Defendants.

e.   Cruel and Unusual Punishment

Plaintiff's Complaint broadly asserts an Eighth Amendment cruel and unusual punishment claim against all Defendants.  (ECF No. 1 at ¶¶ 54-55.)

i.   *Applicable Law*

Prison conditions do not violate the Eighth Amendment unless they amount to "unquestioned and serious deprivations of basic human needs" or of the "minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991).  "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eight Amendment.  To be cruel and unusual punishment, conduct that does not purport to

be punishment at all must involve more than ordinary lack of due care for the prisoners' interest or safety." *Whitely v. Albers*, 475 U.S. 312, 319 (1986).  To assert an Eighth Amendment claim for deprivation of humane conditions of confinement, a prisoner must allege facts sufficient to fulfill two requirements: one objective and one subjective.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994).

Under the objective requirement, the prisoner must allege facts sufficient to show that the prison official's acts or omissions deprived him of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Farmer*, 511 U.S. at 834.  This objective component is satisfied so long as the institution "furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *see also Farmer*, 511 U.S. at 832; *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Under the subjective requirement, the prisoner must allege facts showing that the defendant acted with "deliberate indifference." *Wilson*, 501 U.S. at 303; *Allen*, 48 F.3d at 1087.  "Deliberate indifference" exists when a prison official "knows of and disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Wilson*, 501 U.S. at 302-303.

### ii.    Analysis

Defendants contend Plaintiff's Eighth Amendment claim fails because he alleges no facts to indicate that his health or safety were ever in danger.  (ECF No. 35-1 at 36:4-10.) The Court agrees.  Nowhere in the Complaint does Plaintiff allege facts plausibly suggesting that Defendants impacted or threatened his ability to maintain "adequate food, clothing, shelter, sanitation, medical care, [or] personal safety." *Hoptowit*, 682 F.2d at 1246.  Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss Plaintiff's Eighth Amendment cruel and unusual punishment claim should be **GRANTED** with leave to amend.

96

f.    Eleventh Amendment Immunity

Plaintiff alleges in his Complaint that he is suing all Defendants in both their official and individual capacities.  (ECF No. 1 at 2.)  Defendants contend that "[t]o the extent that he has asked for damages against Defendants in their official capacities, they are absolutely immune under the Eleventh Amendment."  (ECF No. 35-1 at 37:24-26.)

"The Eleventh Amendment immunizes states from private damage actions brought in federal court."  *Henry v. Cnty. of Shasta*, 132 F.3d 512, 517 (9th Cir. 1997).  The Eleventh Amendment also bars § 1983 suits for money damages against state officers in their official capacities unless the state waives such immunity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Eaglesmith v. Ward*, 73 F.3d 857, 859 (9th Cir. 1995).

Here, Plaintiff sued all Defendants in both their official and individual capacities for money damages.  (ECF No. 1 at ¶¶ 2-17.)  Since the State of California has not waived immunity, Defendants are immune from Plaintiff's suit for money damages in regard to actions taken in their official capacities as state officers.   Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss the claims for money damages against them in their official capacities be **GRANTED**.

g.    Qualified Immunity

i.    *Applicable Law*

The doctrine of qualified immunity shields government officials performing discretionary functions from liability for "civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (per curiam) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  "The privilege is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity,

97

it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* at 200-01 (quoting *Mitchell*, 472 U.S. at 526).

Claims of qualified immunity require a two-step analysis.  Courts must consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officers' conduct violated a constitutional right.  *See id.* at 201, modified by *Pearson v. Callahan*, 555 U.S. 223 (2009) (holding the order of *Saucier*'s two-step analysis should not be regarded as an inflexible requirement: "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory").  If the allegations do not establish the violation of a constitutional right, "there is no necessity for further inquiries concerning qualified immunity."  *Id.*; *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all.").

If the allegations could make out a constitutional violation, however, courts must ask whether the right was clearly established – that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).  "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Id.*  The "salient question" is whether the state of the law at the time gives officials "fair warning" that their conduct is unconstitutional.  *Hope v. Pelzer*, 536 U.S. 730, 740 (2002); *see also Saucier*, 533 U.S. at 2156-57 ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"))); *Norwood v. Vance*, 591 F.3d 1062, 1068 (9th Cir. 2010) ("The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").  If an officer makes a reasonable mistake as to what the law requires, the officer is entitled to immunity.  *See Saucier*, 533 U.S. at 205.

1

### ii.    Analysis

2    Defendants argue Plaintiff's entire Complaint should be dismissed because they are

3    protected from suit by the doctrine of qualified immunity.  Here, as set forth above, Plaintiff

4    fails to state a claim against Defendants Abad, Allamby, Alvarez, Cortez, Hernandez,

5    Jones, Rutledge, and Spence.  Thus, because the allegations against these Defendants do

6    not establish the violation of a constitutional right, "there is no necessity for further

7    inquiries concerning qualified immunity."  *Id.* at 201.  As the Complaint is currently

8    pleaded, these Defendants are entitled to qualified immunity.  This conclusion is made

9    without prejudice to Plaintiff adequately asserting claims against these Defendants in an

10   amended complaint.

11   As set forth above, Plaintiff has set forth at least one valid claim against Defendants

12   Behra, Benyard, Cavazos, Olson, Paramo, Ramirez, Suglich, and Zuniga.  Thus, the Court

13   must consider whether the rights these Defendants allegedly violated were clearly

14   established at the time of the alleged violations, that is, whether "it would be clear to a

15   reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 201

16   (citing *Layne*, 526 U.S. at 615).

17   The prohibition against retaliatory punishment against a prisoner for exercising his

18   First Amendment rights is clearly established law for qualified immunity purposes.

19   *Rhodes*, 408 F.3d at 569-70.  Because Plaintiff has stated a retaliation claim against

20   Defendants Behra, Benyard, Olson, Paramo, Ramirez, Suglich, and Zuniga for exercising

21   his First Amendment rights, the Court declines to recommend that these Defendants are

22   protected by qualified immunity at this time.  As for Defendant Cavazos, the law is clearly

23   established that the Equal Protection Clause protects prisoners from invidious

24   discrimination because of their race.  *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974);

25   *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995).  Accepting as true Plaintiff's

26   allegations, "it would be clear to a reasonable officer" that the decision of the UCC

27   officials, including Defendant Cavazos, to discriminate against him when they denied

28   services and rehabilitative programs on the grounds that he has an ICE hold violated

Plaintiff's constitutional rights.  Therefore, the Court finds that Defendant Cavazos is not entitled to qualified immunity on Plaintiff's equal protection claim at this time.[40]

Accordingly, the Court hereby **RECOMMENDS** Defendants Abad, Allamby, Alvarez, Cortez, Hernandez, Jones, Rutledge, and Spence's Motion to Dismiss on the basis of qualified immunity be **GRANTED**, but that Defendants Behra, Benyard, Cavazos, Olson, Paramo, Ramirez, Suglich, and Zuniga's Motion to Dismiss on the basis of qualified immunity be **DENIED**.

## III. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge William Q. Hayes pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.3.  For the reasons outlined above, IT IS HEREBY RECOMMENDED that the District Judge issue an order:

1.   Approving and adopting this Report and Recommendation;

2.   **DENYING** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 20);

3.   **GRANTING in part** and **DENYING in part** Defendants' Motion for Partial Summary Judgment (ECF No. 34); and

4.   **GRANTING in part** and **DENYING in part** Defendants' Motion to Dismiss (ECF No. 35).

IT IS FURTHER ORDERED that no later than **July 29, 2015**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be filed with the Court and served on all parties no later than **August 12, 2015**.

---

[40]   Defendants are not precluded from raising their qualified immunity arguments in a motion for summary judgment if discovery into Plaintiff's claims demonstrate that no violation of a clearly established right occurred.

1    The parties are advised that failure to file objections within the specified time may

2  waive the right to raise those objections on appeal of the Court's order.  *See Turner v.*

3  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th

4  Cir. 1991).

5    IT IS SO ORDERED.

6

7  Dated:  June 29, 2015

8

9                                   Hon. David H. Bartick
                                    United States Magistrate Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14cv1073-WQH (DHB)