1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10

11   CARLOS RIOS,                              Case No.:  14-cv-01073-WQH (DHB)

12                          Plaintiffs,        **REPORT AND**
                                               **RECOMMENDATION RE:**
13   v.

14   DANIEL PARAMO, ET AL.,                    **(1) DEFENDANTS' MOTION FOR**
                                               **PARTIAL SUMMARY JUDGMENT**
15                          Defendants.        **(ECF NO. 74); AND**

16

17                                             **(2) DEFENDANTS' MOTION TO**
                                               **DISMISS (ECF NO. 73)**
18

19

20

21

22

23

24

25          Plaintiff Carlos Rios, a state prisoner incarcerated at the R.J. Donovan Correctional

26   Facility ("RJD"), is proceeding *pro se* and *in forma pauperis* in this civil rights action

27   pursuant to 42 U.S.C. § 1983.  (ECF No. 1.)  Plaintiff commenced this action on April 28,

28

                                               1

2014 by filing a Complaint in which he asserts a variety of claims against sixteen RJD staff members.  (*Id*.)

On October 8, 2014, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction.  (ECF No. 20.)  On November 24, 2014, Defendants filed a Motion to Dismiss and a Motion for Partial Summary Judgment.  (ECF Nos. 34, 35.)  On June 29, 2015, the Honorable David H. Bartick issued a Report and Recommendation ("R&R") on these motions pursuant to Federal Rule of Civil Procedure 72 and Local Civil Rule 72.1.  (ECF No. 55.)  On September 1, 2015, the Honorable William Q. Hayes issued an order denying Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, granting in part and denying in part Defendants' Motion for Partial Summary Judgment, and granting in part and denying in part Defendants' Motion to Dismiss.  (ECF No. 63.)  Judge Hayes granted Plaintiff leave to file a First Amended Complaint.  (*Id*. at p. 21.)

On October 20, 2015, Plaintiff filed a First Amended Complaint ("FAC") in which he asserts several claims against thirteen RJD staff members.[1]  (ECF No. 64.)  The following motions are currently pending before the Court: (1) Defendants' Motion for Partial Summary Judgment (ECF No. 74); and (2) Defendants' Motion to Dismiss (ECF No. 73).

After a thorough review of the pleadings, the parties' papers and all supporting documents, this Court hereby RECOMMENDS that (1) Defendants' Motion for Partial Summary Judgment be GRANTED in part and DENIED in part; and (3) Defendants' Motion to Dismiss be GRANTED in part and DENIED in part.

---

[1]    Plaintiff's FAC names the following RJD staff as defendants: (1) Warden Daniel Paramo, (2) Correctional Officer J. Behra, (3) Facility Captain E. Benyard, (4) Correctional Officer M. Cavazos, (5) Correctional Officer Abad, (6) Correctional Officer M. Zuniga, (7) Correctional Lieutenant A. Allamby, (8) Chief Deputy Warden Alan Hernandez, (9) Associate Warden W. Suglich, (10) Correctional Officer A.A. Jones, (11) Correctional Officer E. Cortez, (12) Appeals Coordinator R. Olson, and (13) Appeals Coordinator J. Ramirez (collectively, "Defendants").  Defendants are being sued in their individual capacities only.  (*See* FAC at pp. 11-12.)

# I.     BACKGROUND

## A.     Procedural History

### 1.     Complaint

Plaintiff commenced this action on April 28, 2014 by filing a Complaint and motion for leave to proceed *in forma pauperis*. (ECF Nos. 1, 2.) On August 14, 2014, Judge Hayes granted Plaintiff's motion for leave to proceed *in forma pauperis* and, following an initial screening of the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), directed the U.S. Marshal to serve the Complaint on Plaintiff's behalf. (ECF No. 5.)

Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction on October 8, 2014. (ECF No. 20.) Defendants filed a Motion for Partial Summary Judgment on November 24, 2014, pursuant to Federal Rule of Civil Procedure 56, arguing Plaintiff failed to exhaust all of his administrative remedies prior to filing suit. (ECF No. 34.) On the same date, Defendants also filed a Motion to Dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 35.)

On June 29, 2015, this Court issued an R&R, recommending that Judge Hayes deny Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, grant in part and deny in part Defendants' Motion to Dismiss, and grant in part and deny in part Defendants' Motion for Partial Summary Judgment. (ECF No. 55.)

With respect to Defendants' Motion for Partial Summary Judgment, the Court recommended that Judge Hayes grant summary judgment with respect to the following claims: (1) conspiracy and retaliation claims against Defendant Abad; (2) due process claims against Defendants Behra, Cavazos, and Paramo; (3) equal protection claim against all Defendants except Defendants Benyard, Cavazos, and Paramo; and (4) cruel and unusual punishment claim against all Defendants. (*See* ECF No. 55 at p. 64.) As to all remaining claims and Defendants, the Court recommended that genuine issues of material fact preclude summary judgment. (*See id*.)

On July 13, 2015, Plaintiff filed objections to the R&R as it related to Defendants' Motion for Partial Summary Judgment. (ECF No. 56.) Defendants filed a reply to the

objections on August 10, 2015.  (ECF No. 58.)  On September 1, 2015, Judge Hayes granted in part and denied in part Defendants' Motion for Partial Summary Judgment "as stated in the [R&R]."  (*See* ECF No. 63 at p. 20.)

With respect to Defendants' Motion to Dismiss, the Court recommended the following: (1) Defendants' Motion to Dismiss Plaintiff's conspiracy claim against Defendants Behra, Olson, and Ramirez be denied, but that Plaintiff's conspiracy claims against the other defendants be granted with leave to amend; (2) Defendants' Motion to Dismiss Plaintiff's retaliation claims be granted with leave to amend against Defendants Abad, Allamby, Alvarez, Cavazos, Cortez, Hernandez, Jones, Rutledge, and Spence, and denied as against Defendants Behra, Benyard, Olson, Paramo, Ramirez, Suglich, and Zuniga; (3) Defendants' Motion to Dismiss Plaintiff's due process claims be granted; (4) Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment equal protection claim be denied as to Defendants Benyard and Cavazos, and granted with leave to amend as to all other Defendants; (5) Defendants' Motion to Dismiss Plaintiff's Eighth Amendment cruel and unusual punishment claim be granted with leave to amend; (6) Defendants' Motion to Dismiss the claims for money damages against them in their official capacities be granted; and (7) Defendants' Motion to Dismiss on the basis of qualified immunity be granted as to Defendants Abad, Allamby, Alvarez, Cortez, Hernandez, Jones, Rutledge, and Spence, and denied as to Defendants Behra, Benyard, Cavazos, Olson, Paramo, Ramirez, Suglich, and Zuniga.  (ECF No. 55.)

On July 29, 2015, Plaintiff filed objections to the R&R as it related to Defendants' Motion to Dismiss.  (ECF No. 57.)  Defendants filed a reply to the objections on August 10, 2015.  (ECF No. 58.)  On September 1, 2015, Judge Hayes granted in part and denied in part Defendants' Motion to Dismiss, as stated above, with the following modifications: (1) all retaliation and conspiracy claims arising from Plaintiff's disciplinary hearings and the Rules Violation Report ("RVR") issued for the January 18, 2013 altercation are dismissed without prejudice as barred by *Heck v. Humphrey*;  (2) Plaintiff's retaliation claim against Defendants Paramo and Suglich is dismissed without prejudice; (3)

Plaintiff's retaliation claim against Defendant Benyard is dismissed without prejudice, with the exception of the claim that Defendant Benyard retaliated against Plaintiff for submitting the "Memorandum" to Defendant Paramo by placing him in administrative segregation, and Defendant Benyard is entitled to qualified immunity, with the exception of the claim that Defendant Benyard retaliated against Plaintiff for submitting the "Memorandum" to Defendant Paramo by placing him in administrative segregation; (4) Plaintiff's equal protection claim against Defendants Benyard and Cavazos is dismissed without prejudice; and (5) Defendants Paramo, Suglich, and Cavazos are entitled to qualified immunity.  (*See* ECF No. 63.)

### 2.   First Amended Complaint (FAC)

On October 20, 2015, Plaintiff filed his FAC.  (ECF No. 64.)  Plaintiff alleges in the FAC that Defendants have engaged in an ongoing conspiracy to threaten and harass him, in violation of his state and federal constitutional rights and privileges, in retaliation for Plaintiff having filed a previous civil rights lawsuit[2] in this district and prison grievances against Defendants and other RJD staff.  (*See id*.)  Plaintiff asserts federal legal claims under the First, Fifth, and Fourteenth Amendments, in addition to a claim under the Americans with Disabilities Act ("ADA").  (*Id*. at ¶¶ 54-59.)  Plaintiff seeks money damages and declaratory and injunctive relief.  (*Id*. at pp. 28-30.)

In his FAC, Plaintiff incorporates by reference the documents attached to his Complaint.  (*See id*. at p. 2, n. 1.)  Although typically "[a]ll amended pleadings must contain copies of all exhibits referred to in such amended pleadings[,] . . . [p]ermission may be

---

[2]     In Plaintiff's prior civil rights lawsuit, *Rios v. Cate, et al.*, Case No. 10-cv-01064-PCL (S.D. Cal.) ("Cate Lawsuit"), Plaintiff asserted several claims against the defendants, none of whom are Defendants in the instant action, including the claim that Mr. Togafu, Plaintiff's supervisor in the prison laundry, retaliated against Plaintiff for initiating the Cate Lawsuit by temporarily removing him from his work assignment without penological justification.  (*See* Second Amended Complaint in Case No. 10-cv-01064-PCL, ECF No. 45-2 at 2, 10.)

obtained from court . . . for the removal of any exhibit or exhibits attached to prior pleadings, in order that the same may be attached to the amended pleading."  Civ. L.R. 15.1(a).  In accordance with Civil Local Rule 15.1(a), the Court grants Plaintiff's implied request to consider all exhibits attached to his Complaint as attached to his FAC.  (*See* ECF Nos. 1-1, 1-2.)

In its prior R&R, the Court detailed at great length Plaintiff's allegations and the documents attached to the Complaint.  As the FAC is substantially similar and relies on the same documents, the Court incorporates the "Background" section of its prior R&R into this Report and Recommendation.  (*See* R&R at pp. 2-31.)  Below, the Court discusses only the changes made by Plaintiff with respect to his FAC.

### a.  *Parties*

In the FAC, Plaintiff does not bring any claims against Rutledge, E. Alvarez, or K. Spence.  (*See* FAC at pp. 1, 11-12.)  All claims brought against these individuals in the Complaint were dismissed without prejudice and with leave to amend.  (*See* R&R; ECF No. 63.)  Accordingly, these individuals are dismissed from the case.  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (finding that a plaintiff waives all claims dismissed without prejudice and with leave to amend if not re-alleged in an amended complaint).  In addition, Plaintiff only brings suit against the remaining Defendants in their individual, and not official, capacities.  (FAC at pp. 11-12.)

### b.  *Claims*

In the FAC, Plaintiff alleges the following claims against Defendants:

- Defendant Behra:
  - Retaliation (threatened and harassed Plaintiff and issued a false misbehavior report (CDC 128-A) in retaliation for filing the Cate Lawsuit) (FAC at ¶¶ 15, 45 and pp. 1-2);
  - Conspiracy (to retaliate with non-defendants involved in the Cate Lawsuit) (*id*.); and
  - Due process violation (*id*. at ¶ 45).

- Defendant Zuniga:
  - Retaliation (intentionally deprived Plaintiff of his personal property in retaliation for the filing of a staff complaint) (*Id*. at ¶ 46, p. 4);
  - Conspiracy (with unnamed others to intentionally deprive Plaintiff of his personal property) (*id*.);
  - Due process violation (based on intentional deprivation of personal property) (*id*. at p. 5); and
  - Intentional deprivation of personal property (state law) (*id*. at ¶ 46 at pp. 4-5).
- Defendant Benyard:
  - Retaliation
    - (conspired with Cavazos and Abad to delay and deny Plaintiff a fair and impartial Unit Classification Committee ("UCC") hearing on 7/23/13 with a "retaliatory bias") (*Id*. at ¶ 47, p. 2);
    - (decided to retain or place Plaintiff in Administrative Segregation ("Ad-Seg") on 2/4/13, and filed a false Rule Violation Report ("RVR") against Plaintiff, in retaliation for Plaintiff previously filing grievances and complaints against him) (*id*. at p. 6, ¶¶ 48, 54.)
  - Due process violation
    - (along with Jones, Cortez, Allamby, and Hernandez, delayed and denied Plaintiff procedural due process during his RVR hearing process) (*id*. at ¶¶ 48, 54, p. 6)
    - (along with Cavazos and Abad, denied Plaintiff a fair and impartial UCC hearing on 7/23/13) (*id*. at ¶ 49, pp. 2-3)
  - Conspiracy
    - (with Cavazos and Abad, to delay and deny Plaintiff a fair and impartial UCC hearing on 7/23/13) (*id*. at ¶ 47, p. 2);

14-cv-01073-WQH (DHB)

- (with Jones, Cortez, Allamby, and Hernandez, to fabricate and manipulate evidence against Plaintiff in support of the RVR issued by Benyard to punish Plaintiff, and to deny Plaintiff procedural due process during his RVR hearing) (*id*. at ¶¶ 48, 54 pp. 6-8);

  - o Violation of equal protection clause (along with Cavazos and Abad, by discriminating against Plaintiff on the basis of his handicap and non-citizenship status; Plaintiff was denied the opportunity to participate in rehabilitative programs such as "re-enter programs," which are available to other inmates) (*id*. at ¶ 50, pp. 2-3); and

  - o Violation of ADA (along with Cavazos and Abad, by discriminating against Plaintiff on the basis of his handicap and non-citizenship status; Plaintiff was denied the opportunity to participate in rehabilitative programs such as "re-enter programs," which are available to other inmates) (*id*. at ¶ 50, pp. 2-3).

- Defendant Cavazos:

  - o Retaliation (conspired with Benyard and Abad to delay and deny Plaintiff a fair and impartial UCC hearing on 7/23/13 with a "retaliatory bias") (*Id*. at ¶ 47, p. 2);

  - o Due process violation (along with Benyard and Abad, delayed and denied Plaintiff a fair and impartial UCC hearing on 7/23/13) (*id*. at ¶ 49, pp. 2-3)

  - o Conspiracy (with Benyard and Abad, to delay and deny Plaintiff a fair and impartial UCC hearing on 7/23/13) (*id*. at ¶ 47, p. 2);

  - o Violation of equal protection clause (along with Benyard and Abad, by discriminating against Plaintiff on the basis of his handicap and non-citizenship status; Plaintiff was denied the opportunity to participate in rehabilitative programs such as "re-enter programs," which are

available to other inmates) (*id*. at ¶ 50, pp. 2-3); and

- o Violation of ADA (along with Benyard and Abad, by discriminating against Plaintiff on the basis of his handicap and non-citizenship status; Plaintiff was denied the opportunity to participate in rehabilitative programs such as "re-enter programs," which are available to other inmates) (*id*. at ¶ 50, pp. 2-3).

- Defendant Abad:
  - o Retaliation (conspired with Benyard and Cavazos to delay and deny Plaintiff a fair and impartial UCC hearing on 7/23/13 with a "retaliatory bias") (*Id*. at ¶ 47, p. 2);
  - o Due process violation (along with Benyard and Cavazos, delayed and denied Plaintiff a fair and impartial UCC hearing on 7/23/13) (*id*. at ¶ 49, pp. 2-3);
  - o Conspiracy (with Benyard and Cavazos, to delay and deny Plaintiff a fair and impartial UCC hearing on 7/23/13) (*id*. at ¶ 47, p. 2);
  - o Violation of equal protection clause (along with Benyard and Cavazos, by discriminating against Plaintiff on the basis of his handicap and non-citizenship status; Plaintiff was denied the opportunity to participate in rehabilitative programs such as "re-enter programs," which are available to other inmates) (*id*. at ¶ 50, pp. 2-3); and
  - o Violation of ADA (along with Benyard and Cavazos, by discriminating against Plaintiff on the basis of his handicap and non-citizenship status; Plaintiff was denied the opportunity to participate in rehabilitative programs such as "re-enter programs," which are available to other inmates) (*id*. at ¶ 50, pp. 2-3).

- Defendant Cortez:
  - o Retaliation
    - ▪ (conspired with Jones, Benyard, Allamby, and Hernandez to

fabricate and manipulate evidence against Plaintiff in support of the RVR issued by Benyard to punish Plaintiff, and to deny Plaintiff procedural due process during his RVR hearing) (*Id*. at p. 6, ¶ 48.)

o Due process violation

▪ (along with Jones, Benyard, Allamby, and Hernandez, denied Plaintiff procedural due process during his RVR hearing process) (*id*. at ¶ 48, p. 6)

o Conspiracy

▪ (with Jones, Benyard, Allamby, and Hernandez, to fabricate and manipulate evidence against Plaintiff in support of the RVR issued by Benyard to punish Plaintiff, and to deny Plaintiff procedural due process during his RVR hearing) (*id*. at ¶ 48 pp. 6-8).

- Defendant Jones:

  o Retaliation

  ▪ (conspired with Cortez, Benyard, Allamby, and Hernandez to fabricate and manipulate evidence against Plaintiff in support of the RVR issued by Benyard to punish Plaintiff, and to deny Plaintiff procedural due process during his RVR hearing) (*Id*. at p. 6, ¶ 48).

  o Due process violation

  ▪ (along with Cortez, Benyard, Allamby, and Hernandez, denied Plaintiff procedural due process during his RVR hearing process) (*id*. at ¶ 48, p. 6).

  o Conspiracy

  ▪ (with Cortez, Benyard, Allamby, and Hernandez, to fabricate and manipulate evidence against Plaintiff in support of the RVR

issued by Benyard to punish Plaintiff, and to deny Plaintiff procedural due process during his RVR hearing) (*id*. at ¶ 48 pp. 6-8).

- Defendant Hernandez:
  - o Retaliation
    - ▪ (conspired with Cortez, Benyard, Allamby, and Jones to fabricate and manipulate evidence against Plaintiff in support of the RVR issued by Benyard to punish Plaintiff, and to deny Plaintiff procedural due process during his RVR hearing, because of Plaintiff filing grievances against him and fellow prison staff) (*Id*. at pp. 6, 8, ¶ 48).
  - o Due process violation
    - ▪ (along with Cortez, Benyard, Allamby, and Jones, denied Plaintiff procedural due process during his RVR hearing process) (*id*. at ¶ 48, pp. 6, 8).
  - o Conspiracy
    - ▪ (with Cortez, Benyard, Allamby, and Jones, to fabricate and manipulate evidence against Plaintiff in support of the RVR issued by Benyard to punish Plaintiff, and to deny Plaintiff procedural due process during his RVR hearing) (*id*. at ¶ 48 pp. 6-8).
- Defendant Allamby:
  - o Retaliation
    - ▪ (conspired with Cortez, Benyard, Hernandez, and Jones to fabricate and manipulate evidence against Plaintiff in support of the RVR issued by Benyard to punish Plaintiff, and to deny Plaintiff procedural due process during his RVR hearing) (*Id*. at p. 6, ¶ 48).

- o Due process violation
  - ▪ (along with Cortez, Benyard, Hernandez, and Jones, denied Plaintiff procedural due process during his RVR hearing process) (*id*. at ¶ 48, p. 6).
- o Conspiracy
  - ▪ (with Cortez, Benyard, Hernandez, and Jones, to fabricate and manipulate evidence against Plaintiff in support of the RVR issued by Benyard to punish Plaintiff, and to deny Plaintiff procedural due process during his RVR hearing) (*id*. at ¶ 48 pp. 6-8).

- Defendant Suglich:
  - o Conspiracy (with Paramo, to deny Plaintiff access to courts, by promulgating and implementing the policy of delivering a grievance to the appeals coordinator even when it alleges misconduct by the appeals coordinator) (*Id*. at pp. 8-10, ¶ 51);
  - o Denial of access to the courts (by promulgating and implementing the policy of delivering a grievance to the appeals coordinator even when it alleges misconduct by the appeals coordinator) (*id*. at pp. 8-10, ¶¶ 51, 55); and
  - o Retaliation (by not responding to Plaintiff's grievances adequately, and/or failing to fix the wrongs) (*id*. at ¶ 51).

- Defendant Paramo:
  - o Conspiracy (with Suglich, to deny Plaintiff access to courts, by promulgating and implementing the policy of delivering a grievance to the appeals coordinator even when it alleges misconduct by the appeals coordinator) (*Id*. at pp. 8-10, ¶ 51);
  - o Denial of access to the courts (by promulgating and implementing the policy of delivering a grievance to the appeals coordinator even when

14-cv-01073-WQH (DHB)

it alleges misconduct by the appeals coordinator) (*id.* at pp. 8-10, ¶¶ 51, 55); and

- o Retaliation (by not responding to Plaintiff's grievances adequately, and/or failing to fix the wrongs) (*id.* at ¶ 51).

- Defendant Olson:
  - o Retaliation (obstructed Plaintiff's access to the courts in retaliation for Plaintiff filing complaints and grievances against them) (*Id.* at p. 10, ¶ 52);
  - o Conspiracy (with Ramirez, to obstruct Plaintiff's access to the courts in retaliation for Plaintiff filing complaints and grievances against them) (*id.* at p. 10, ¶ 52); and
  - o Denial of access to the courts (by intentionally delaying the appeals process, abusing his discretion and rejecting grievances without authority, erroneously cancelling grievances, and/or refusing to process or answer Plaintiff's grievances within a reasonable time frame) (*id.* at p. 10, ¶ 55).

- Defendant Ramirez:
  - o Retaliation (obstructed Plaintiff's access to the courts in retaliation for Plaintiff filing complaints and grievances against them) (*Id.* at p. 10, ¶ 52);
  - o Conspiracy (with Olson, to obstruct Plaintiff's access to the courts in retaliation for Plaintiff filing complaints and grievances against them) (*id.* at p. 10, ¶ 52); and
  - o Denial of access to the courts (by intentionally delaying the appeals process, abusing his discretion and rejecting grievances without authority, erroneously cancelling grievances, and/or refusing to process or answer Plaintiff's grievances within a reasonable time frame) (*id.* at p. 10, ¶ 55).

## II.   DISCUSSION

### A.   Defendants' Motion for Partial Summary Judgment (ECF No. 74)

Defendants move for partial summary judgment in their favor against Plaintiff, because Plaintiff failed to exhaust administrative remedies as to all but one of his claims before filing this lawsuit.  Defendants concede Plaintiff exhausted his retaliation claim against Officer Zuniga.  (*See* ECF No. 74-1 at p. 10.)

#### 1.   Legal Standard

The Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is "mandatory."  *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002).  Failure to exhaust is "an affirmative defense the defendant must plead and prove."  *Jones v. Bock*, 549 U.S. 199, 204 (2007).  "In a typical PLRA case, a defendant will have to present probative evidence [in a Rule 56 motion for summary judgment] . . .  that the prisoner has failed to exhaust administrative remedies under § 1997e(a)."  *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc).[3]

Under the burden-shifting analysis recognized in *Albino*, "a defendant must first prove that there was an available administrative remedy and that the prisoner did not

---

[3]     "[I]n . . . rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim."  *Albino*, 747 F.3d at 1169 (citing *Jones*, 549 U.S. at 215-16; *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam) ("[A]ffirmative defenses may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact."); *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) ("[O]nly in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse.")).

exhaust that available remedy." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 767 (9th Cir. 1996)). "Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (citing *Hilao*, 103 F.3d at 778 n.5 ("Once the defendant makes a showing of remedies abroad which have not been exhausted, the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.")). "The ultimate burden of proof, however, remains with the defendants, and the evidence must be viewed in the light most favorable to the plaintiff." *Packnett v. Wingo*, No. 09-cv-00327-YGR (PR), 2015 WL 1478597, at *10 (N.D. Cal. Mar. 31, 2015) (citing *Williams*, 775 F.3d at 1191). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Albino*, 747 F.3d at 1166.

The Supreme Court has "held that to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' [citation] -- rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

The administrative appeal system for inmates in the California prison system is described in Title 15 of the California Code of Regulations: "Any inmate . . . under the [CDCR's] jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). For

appeals submitted after January 28, 2011[4], inmates must commence the appeals process by submitting a CDCR Form 602 to the facility's appeals coordinator describing "the specific issue under appeal and the relief requested."   *Id.* at § 3084.2(a), (c).   Among other requirements, the appeal must be "limited to one issue or related set of issues" and "list all staff member(s) involved and shall describe their involvement in the issue."   *Id.* at § 3084.2(a)(1), (3).   "To assist in the identification of staff members, the inmate . . . shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.  If the inmate . . . does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question."   *Id.* at § 3084.2(a)(3).[5] "Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 . . . and addressed through all required levels of administrative review up to and including the third level.  In addition, a cancellation or rejection decision does not exhaust administrative remedies."   *Id.* at § 3084.1(b).

If a prisoner is not satisfied with the first level response, he may submit a formal appeal for a second level review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden . . . or the equivalent."   *Id.* at § 3084.7(d)(2). If the prisoner is not satisfied with the second level review, he may appeal to the third level of review by the chief of the Office of Appeals in Sacramento.   *Id.* at § 3084.7(c), (d)(3).

---

[4]     California's administrative appeal regulations were significantly revised effective January 28, 2011.  Cal. Code Regs. tit. 15, § 3084.7.

[5]     In *Jones*, the Supreme Court "conclude[d] that exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." *Jones*, 549 U.S. at 219.  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

16

"The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and . . . exhausts administrative remedies." *Id.* at § 3084.7(d)(3).

CDCR has exceptions to the regular appeals process for certain types of appeals, including staff complaints, disciplinary appeals, and property appeals. *See id.* at § 3084.9. An inmate alleging staff misconduct by a departmental employee, as defined by § 3291(b), shall attach a § 3391(d) "Rights and Responsibility Statement" to the appeal and forward the appeal to the appeals coordinator. *Id.* at §§ 3084.9(i)(1). "All appeals alleging staff misconduct will be presented by the appeals coordinator to the hiring authority or designee within five working days." *Id.* at § 3084.9(d)(i)(3). "An appeal alleging staff misconduct by an appeals coordinator shall be reviewed by the hiring authority for determination of processing." *Id.* at § 3084.9(i)(6). "If the hiring authority makes a determination that the complaint shall not be accepted as a staff complaint, it shall be processed as a routine appeal." *Id.* at § 3084.9(i)(1).

With respect to disciplinary appeals, "[a] disciplinary action cannot be appealed until the hearing process is completed, including any re-hearing." *Id.* at § 3084.9(g)(1). For property appeals, "[i]f an administrative decision is made that the department is responsible for loss or damage to the appellant's property . . . , an attempt by staff to use donated property to substitute for or replace lost property at no cost to the state, or any effort to repair damaged property at institution expense, will be made prior to awarding monetary compensation for the loss." *Id.* at § 3084.9(f)(4). "An appellant's refusal to accept repair, replacement, or substitution of like items and value shall be cause to deny the appeal." *Id.* at § 3084.9(f)(5).

### 2.   Available Administrative Remedy

As an initial matter, the Court finds that Defendants have established through undisputed admissible evidence that California allows prisoners to complain about their conditions of confinement through an administrative remedies system. As set forth in the Self and Voong declarations (*see* ECF No. 74-2 ("Self Decl."); ECF No. 74-6 ("Voong

17

Decl.")) and the California regulations identified therein, *see* Cal. Code Regs. tit. 15, § 3084 *et seq.*, this system provides for a three-level procedure by which inmates may assert non-medical inmate grievances, or appeals, utilizing a CDCR Form 602.  Thus, the Court initially finds that Defendants have satisfied part of their initial burden under *Albino*, namely, the existence of a generally available administrative remedy.  Thus, the remainder of the Court's exhaustion analysis determines whether Defendants have satisfied the second part of their initial *Albino* burden, namely, whether Plaintiff failed to exhaust that available remedy, and, if not, whether Plaintiff is able to meet his burden of demonstrating "that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams*, 775 F.3d at 1191 (quoting *Hilao*, 103 F.3d at 778 n.5).

### 3.   Exhaustion of Remedies

In Defendants' prior Motion for Partial Summary Judgment as to the Complaint, Defendants appeared to concede that Plaintiff had exhausted the following claims:

- Property deprivation claim against Defendant Zuniga (Log No. 13-00777) (ECF No. 34-1 at p. 3, n. 1; ECF No. 34-2 at ¶ 9(d); ECF No. 34-3 at ¶ 6(b));

- Retaliation and conspiracy claims against Defendants Benyard and Hernandez (Log No. 13-01319) (ECF No. 34-1 at p. 3, n. 1; ECF No. 34-5 at ¶ 1);

- Due process claim against Defendants Benyard and Hernandez (Log No. 13-01319) (ECF No. 34-1 at p. 3, n. 1; ECF No. 34-5 at ¶ 4); and

- Retaliation and conspiracy claims against Defendants Olson and Ramirez (Log No. 13-03340) (ECF No. 34-1 at p. 3, n. 1; ECF No. 34-5 at ¶ 2).

After review of Defendants' prior motion, the Court concluded that Defendants had satisfied their burden of providing undisputed evidence that Plaintiff failed to exhaust available administrative remedies as to the following:

- Conspiracy and retaliation claims against Defendant Abad;

- Due process claims against Defendants Behra, Cavazos, and Paramo;

18

- •     Equal protection claim against all Defendants except Defendants Benyard, Cavazos, and Paramo; and

- •     Cruel and unusual punishment claim against all Defendants.

(ECF No. 64 at p. 20; R&R at p. 64.)

In Defendants' present Motion for Partial Summary Judgment as to the FAC, Defendants raise exhaustion arguments they did not previously raise, and no longer concede exhaustion of certain claims, which they previously appeared to have conceded. It is well-settled that district courts have the authority to reconsider and revise interlocutory orders, such as orders granting motions for partial summary judgment. *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) ("[T]he interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment."); *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989); Fed. R. Civ. P. 54(b). A district court may reconsider and revise a previous interlocutory decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law. *Washington v. Garcia*, 977 F. Supp. 1067, 1068 (S.D. Cal. 1997) (Stiven, J.); *Sport Squeeze, Inc. v. Pro–Innovative Concepts, Inc.*, 51 U.S.P.Q.2d 1764, 1771, 1999 WL 696009 (S.D. Cal. 1999) (Whelan, J.). However, a court should generally leave a previous decision undisturbed absent a showing that it either represented clear error or would work a manifest injustice. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988).

As district courts may reconsider and revise interlocutory orders, the Court will consider the new arguments raised and evidence submitted. However, the Court will not disturb its prior order unless the new arguments raised or evidence submitted indicates that its prior order was clearly erroneous or would work manifest injustice.

       a.    *May 22, 2012 Appeal (Log No. Unassigned)*

Plaintiff alleges in his FAC that on May 22, 2012 he filed a CDCR Form 602 alleging retaliation and conspiracy against Defendant Behra and other non-party officers in connection with the May 16, 2012 laundry floor incident and subsequent termination of

Plaintiff's job assignment.  (FAC at ¶ 16.)  However, the grievance Plaintiff attaches to his FAC is a "Citizen's Complaint" pursuant to California Penal Code § 832.5.  (ECF No. 1-1 at 4-8.)  Section 832.5 requires that a procedure be established for investigating complaints by "members of the public" against state personnel.  Cal. Penal Code § 832.5; *see also* Cal. Code Regs. tit. 15, § 3391(b) ("An allegation by a non-inmate of misconduct by a departmental peace officer . . . is a citizen's complaint pursuant to Penal Code section 832.5.").  The filing of a Citizen's Complaint under section 832.5 does not properly exhaust Plaintiff's remedies.  *See Gaston v. Hedgepeth*, No. 13-cv-01395-RRB, 2014 WL 4104203, at *4-5 (E.D. Cal. Aug. 18, 2014).  "[B]ecause the California Department of Corrections and Rehabilitation has established an administrative grievance system, a prisoner may not use a citizen's complaint to exhaust administrative remedies when it is not part of that prescribed grievance process."  *Id*. at * 4, n. 53 (citing *House v. Walker*, No. CIV–S–06–0331 DFL DAD P, 2007 WL 201161 at *5 (E.D. Cal. Jan. 24, 2007); *McCoy v. Schirmer*, No. S05–0165 DFL DAD P, 2006 WL 845630, at *3 (E.D. Cal. Mar. 30, 2006); *Evans v. Woodford*, No. 1:06–cv–01250 ALA (P), 2008 WL 5114653, at *2 (E.D. Cal.Dec.4, 2008)).

The Court acknowledges, however, that Plaintiff attaches to his Citizen's Complaint a CDCR Form 602.  This CDCR Form 602 was never given a Log Number or entered into the prison's tracking system.  (*See* ECF No. 74-1 ("Mot.") at p. 14:5-7; Voong Decl. at Exh. H; Self Decl. at Exh. L.)  Defendants claim they never received this form, and it is unclear whether Plaintiff went through the normal CDCR Form 602 filing procedures for this particular grievance.  (*Id*.)  In the Court's prior R&R, the Court found that Plaintiff's sworn allegations that he filed the May 22, 2012 appeal, but never received a response from prison officials, were sufficient to survive summary judgment.  (R&R at pp. 45-47.)

Defendants now argue that even if Plaintiff had properly submitted the CDCR Form 602, "that grievance could have provided evidence upon which the Appeals Coordinator could have reversed the cancellation under California Code of Regulations, Title 15, § 3084.6(a)(3), or upon which a subsequent grievance about the cancellation could have been

decided in Plaintiff's favor."  (Mot. at p. 14.)  Defendants further argue that Log No. 12-02759 was Plaintiff's attempt to challenge the cancellation of his May 22, 2012 grievance.  (*Id*.)  These arguments are unavailing, however, as Plaintiff does not allege that his May 22, 2012 grievance was cancelled; he alleges he never received a response at all.  (FAC at ¶¶ 16-19; ECF No. 82 (Declaration of Carlos Rios In Support of Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment for Failure to Exhaust ("Rios Decl.")) at ¶¶ 2-3.)[6]  The failure to respond to a grievance makes remedies "unavailable" and therefore excuses the failure to exhaust.  *See Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (citing *Dole v. Chandler*, 438 F.3d 804, 809, 811 (7th Cir. 2006)).

Because there remains facts in dispute as to whether the May 22, 2012 grievance was properly filed and whether there were generally available administrative remedies effectively available to Plaintiff as to this appeal, the Court finds Defendants have not satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies concerning Plaintiff's retaliation and conspiracy claims against Defendant Behra arising out of Defendant Behra's involvement in "plan[ning] and plant[ing] a controlled contraband in the inmates' open work area to injure, oppress, or intimidate [Plaintiff]," which resulted in Plaintiff losing his job assignment.  (*See* ECF No. 1-1 at 6-7.)

b.  *June 11, 2012 Appeal (Log No. 12-2146)*

Plaintiff alleges in his FAC that his June 11, 2012 appeal, assigned Log No. 12-2146, asserts retaliation and conspiracy claims against the "ACO staff" for their failure to respond

---

[6]     The Court notes that Plaintiff's sworn allegations are not contradicted by the evidence submitted.  *See* ECF No. 1-1 at 6 (Under Section A of Form 602, Plaintiff states "This is a citizens' complaint submitted pursuant to [C]alifornia Penal Code section 832.5 and Title 15 CCR sections 3291(b) and 3084.9(i)"); 19 ("Additionally, I served to your office two citizen's complaints dated 5/22/12 and 5/29/12."); 27 ("On 5/22/12, I filed a CDCR 602 complaint…"); 42 ("Please take notice that this appeal claim was previously file[d] on 5/22/12 . . . hoever [sic] I never receive[d] any response to my appeal"); 66 ("On 5/22/12, I filed a complaint, and that I never receive any response by the AC office.").

to Plaintiff's grievances within a reasonable time frame and their refusal to process Plaintiff's grievances where they allege misconduct by RJD and ACO staff.  (FAC at ¶ 21.) Plaintiff alleges that this CDCR Form 602 was delivered to the Office of Internal Affairs headquarters for its review; however, it was forwarded to Defendant Paramo instead for further review and investigation.  (*Id*.)  Plaintiff alleges Defendant Paramo forwarded the grievances to ACO staff in violation of CDCR's rules and regulations which prohibit review of appeals by staff involved in the event or decision being appealed.  (*Id*.)  As a result of Defendant Paramo's actions, Plaintiff alleges the appeal was cancelled by ACO staff after several rejections.  (*Id*.)

As an initial matter, this appeal does not contain any allegations against any Defendants in the present litigation.  Rather, the appeal alleges non-party officer Cobb violated Plaintiff's right to appeal by conspiring, retaliating, delaying, and intentionally obstructing Plaintiff's access to justice in order to cover up the misconduct of other prison officials.  (*See* ECF No. 1-1 at 50-51.)  Thus, this appeal does not serve to exhaust any claims in Plaintiff's FAC.  *See* Cal. Code Regs. tit. 15, § 3084.2(a)(3) (requiring that inmate appeals "list all staff member(s) involved and . . . describe their involvement in the issue. To assist in the identification of staff members, the inmate . . . shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.  If the inmate . . . does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.").

Moreover, Plaintiff did not proceed with the appeal through the third level of review. On October 6, 2012, Defendant Olson rejected the appeal at the first level of review due to Plaintiff's failure to comply with various appeal procedures.  (*See* ECF No. 1-1 at 54-57.) On December 11, 2012, following Plaintiff's re-submittal of the appeal, Defendants Olson and Ramirez again rejected the appeal at the first level of review for the same reasons stated in the October 6, 2012 screening letters.  (*Id.* at 58-61.)  On the same date, Defendants

1    Olson and Ramirez also cancelled the appeal under California Code of Regulations, Title
2    15, § 3084.6(c)(3), because Plaintiff had "continue[d] to submit a rejected appeal while
3    disregarding appeal staff's previous instructions to correct the appeal." (*Id.* at 62.) Plaintiff
4    cannot show that administrative remedies were unavailable as to this appeal when Plaintiff
5    failed to correct deficiencies in the appeal as instructed by the ACO staff.

6          In conclusion, the evidence before the Court is sufficient to satisfy Defendants'
7    burden of showing that Plaintiff did not exhaust any claims against Defendants based on
8    the allegations set forth in appeal Log No. 12-2146.

9                      c.    *July 2, 2012 Appeal (Log No. 12-1879); December 6, 2012 (Log*
10                           *No. 13-0108)*

11         On July 2, 2012, Plaintiff filed another CDCR Form 602 that was assigned Log No.
12   12-1879. (FAC at ¶ 19; ECF No. 1-1 at 24-25.)  Plaintiff alleges that Defendant Behra and
13   non-defendants Togafau and Cabrera conspired to retaliate against him by fabricating a
14   false CDC-128A report signed by Defendant Behra claiming he was out of bounds in the
15   laundry facility.  (ECF No. 1-1 at 22, 24-25.)  Plaintiff contends that on the date of the
16   incident (*i.e.*, May 16, 2012), he was not out of bounds and the contraband was never in
17   his possession, surveillance video would support these two claims, and there is no evidence
18   to support the "false[], fictitious and fraudulent" allegation that Plaintiff was attempting to
19   steal personal property.  (ECF No. 1-1 at 25.)  In the appeal, Plaintiff requests that (1) an
20   investigation be conducted, including the disclosure of the video camera recording and the
21   taking of inmate witness interviews; (2) the CDC-128A report be dismissed; (3) Plaintiff
22   be returned to his job assignment with back pay from the date of the wrongful termination;
23   and (4) involved staff be reprimanded.  (*Id.* at 24-25.)

24         With respect to this appeal, Defendants have satisfied their initial burden of showing
25   that an available administrative remedy existed and that Plaintiff did not exhaust that
26   available remedy.  *See Williams*, 775 F.3d at 1191.  Indeed, Plaintiff failed to proceed
27   through the third level of review with appeal Log No. 12-1879.  (*See* Self Decl. at ¶ 10(c);

28

Voong Decl. at ¶ 11, Exh. H.)[7]  Therefore, the burden shifts to Plaintiff to come forward with evidence showing that there is something with this appeal "that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

In its prior R&R, the Court found that Plaintiff had produced sufficient evidence to raise a triable issue of material fact concerning whether the local remedies were truly available as to this appeal.  (R&R at pp. 49-50.)  The Court found that "Plaintiff has produced evidence (*i.e.*, improper rejection of appeal as untimely) showing that 'the existing and generally available administrative remedies [were] effectively unavailable to him' in connection with appeal Log No. 12-1879."  (*Id.* at p. 49:25-28.)  Defendants argue in their present motion that an existing and generally available administrative remedy was available and Plaintiff failed to exhaust it.  (Mot. at p. 13:17-27.)  As discussed below, the Court agrees.

On September 14, 2012, Defendant Olson cancelled appeal Log No. 12-1879 at the first level of review for failure to submit the appeal in a timely fashion.[8]  (ECF No. 1-1 at 26.)  Plaintiff alleges in the FAC that Defendant Olson erred in cancelling the appeal and failed to investigate the matter adequately.  (FAC at ¶ 19.)  Defendants contend that Plaintiff did not properly challenge the cancellation under California Code of Regulations, Title 15, §§ 3084.6(a)(3), (e).  (Mot. at p. 13:17-27; Self Decl. at ¶ 10(c).)

---

[7]    Plaintiff attaches a Memorandum of Default Notice addressed to Defendant Paramo, dated December 13, 2012, in which he deems Log No. 12-1879 exhausted at the second level of review because of a delay in responding at the first level.  (ECF No. 1-1 at 67.)  However, a letter to the Warden does not relieve Plaintiff from proceeding through all the administrative steps required to properly exhaust his claim. *See Avery v. Paramo*, No. 13cv2261 BTM (DHB), 2015 WL 4923820, at *7 (S.D. Cal. Aug. 18, 2015) (Moskowitz, B.).

[8]    "An appeal may be cancelled for any of the following reasons, which include, but are not limited to: (4) Time limits for submitting the appeal are exceeded even though the inmate or parolee had the opportunity to submit within the prescribed time constraints." Cal. Code Regs. tit. 15, § 3084.6(c)(4).

According to Defendants, all CDCR Form 602 grievances which do not meet the requirements for being reviewed are screened out – rejected or cancelled – by the Appeals Coordinator.  (Mot. at p. 11 (citing Cal. Code Regs. tit. 15, § 3084.6.); Self Decl. at ¶ 4.)  "Appeals that are cancelled are returned to the inmate with a letter explaining why the appeal is being cancelled."  (Mot. at pp. 11-12; *see also* Self Decl. at ¶ 4 (citing Cal. Code Regs. tit. 15, § 3084.6(c)).)   A cancelled appeal may be subsequently accepted if a determination is made that cancellation was made in error or new information is received that makes the appeal eligible for further review.  (*Id.* at p. 12 (citing Cal. Code Regs. tit. 15, § 3084.6(a)(3).)  If an inmate believes that his CDCR Form 602 has been wrongly cancelled, Defendants contend the inmate can file a grievance complaining about the wrongful cancellation, or he can provide information upon which the Appeals Coordinator can determine whether the cancellation was made in error.  (*Id.*; *see also* Self Decl. at ¶ 5.)

Plaintiff alleges he did file a grievance, assigned Log No. 12-2759, complaining about the wrongful cancellation of Log No. 12-1879.  (FAC at p. 13:5.)  However, as Defendants point out, Log No. 12-2759 does not address the allegedly erroneous cancellation. (Mot. at p. 13:21-27.)  Moreover, on November 29, 2012, Log No. 12-2759 was rejected at the first level of review because it was missing necessary supporting documents, involved multiple issues, and concerned an anticipated action or decision.  (*See* ECF No. 1-1 at 29-31.)  Plaintiff did not pursue the appeal to the next level and, as discussed below, the appeal was not improperly rejected.  (*See* Self Decl. at ¶ 10(f).)  Therefore, even if Plaintiff had claimed erroneous cancellation of Log No. 12-1879 in Log No. 12-2759, he did not exhaust the claim.

On December 6, 2012, Plaintiff filed an appeal, assigned Log No. 13-0108, in which he does argue that Log No. 12-1879 was cancelled in error.  (ECF No. 1-1 at 43 ("Inmate contends that the Appeals Coordinator screening [on September 14, 2012] at the first level was an error"); Self Decl. at ¶¶ 10(f), (h).)  Plaintiff also alleges he never received a response to his May 22, 2012 appeal and set forth his prior efforts to follow up regarding its status, including his filing of various CDCR Form 602 appeals and CDCR 22 requests.

(*Id.*)  Log No. 13-0108 was rejected at the first level of review because it involved multiple issues and was "obscured by pointless verbiage or voluminous unrelated documentation." (*Id.* at 40-41.)  Plaintiff has presented no evidence that he sought a second level of review or that there was something about this appeal "that made the existing and generally available administrative remedies effectively unavailable to him."  *Albino*, 747 F.3d at 1172.  Thus, the Court finds that the undisputed evidence establishes that Plaintiff failed to exhaust available administrative remedies as to appeal Log Nos. 12-1879 and 13-0108.

Based on the foregoing, Defendants have satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies concerning Plaintiff's retaliation, conspiracy, and due process claims against Defendant Behra arising out of the allegedly false statements contained in Defendant Behra's CDC-128A disciplinary report.

### d.   *September 20, 2012 Appeal (Log No. 12-2759)*

Plaintiff's September 20, 2012 appeal, assigned Log No. 12-2759, generally alleges a delay in the processing of his earlier appeals as part of a conspiracy to obstruct justice and Plaintiff's access to the courts.  (ECF No. 1-1 at 27-28.)  Plaintiff also complains that Defendant Olson's response to a CDCR Form 22 request for a status update on his May 22, 2012 and July 2, 2012 appeals was erroneous.  (*Id.* at 28.)  In his response, dated August 23, 2012, Defendant Olson states that Plaintiff should have received a response to the May 22, 2012 appeal and that there was a backlog of appeals due to a high volume and staffing shortage.  (*Id.* at 28, 34.)  Plaintiff claims in Log No. 12-2759 that the evidence contradicted Defendant Olson's response.  (*Id.* at 27-28, 34.)

As demonstrated by the Self and Voong declarations, Plaintiff did not proceed with this appeal through the third level of review.  (Self Decl. at ¶ 10(f); Voong Decl. at ¶ 7(a), Exh. H.)  Accordingly, Defendants have satisfied their initial burden of showing that an available administrative remedy existed and that Plaintiff did not exhaust that available remedy.  *See Williams*, 775 F.3d at 1191.

In its prior R&R, the Court similarly found that Defendants had satisfied their initial burden of demonstrating there was an available administrative remedy which Plaintiff

failed to exhaust with respect to this appeal.  (R&R at p. 50.)  However, it then proceeded to find that "Plaintiff has met his burden of showing that administrative remedies were effectively unavailable regarding this appeal" because Defendant Olson screened the appeal, although it contained allegations against him.  (*Id*.)  In support of this finding, the Court cited California Code of Regulations, Title 15, § 3084.7(d)(1)(A), which provides:

> (1) Appeal responses shall not be reviewed and approved by a staff person who: (A) Participated in the event or decision being appealed. This does not preclude the involvement of staff who may have participated in the event or decision being appealed, so long as their involvement with the appeal response is necessary in order to determine the facts or to provide administrative remedy, and the staff person is not the reviewing authority and/or their involvement in the process will not compromise the integrity or outcome of the process.

Cal. Code Regs. tit. 15, § 3084.7(d)(1)(A).

In their present motion, Defendants argue for the first time that "Appeals Coordinators do not conduct reviews of 602s.  Rather their role is limited to the administrative task of processing inmate grievances into the system." (Mot. at p. 12:11-14 (citing Cal. Code Regs. tit. 15, § 3084.2(c)); *see also* Self Decl. at ¶ 6; Mot. at pp. 19-20.) Therefore, Defendants contend there is no genuine and material dispute concerning whether Plaintiff had available and effective administrative remedies as to this appeal.  For the following reasons, the Court agrees.

The participation of appeals coordinators in the screening process is necessary to provide an administrative remedy.  *See Sylvester v. Alameido*, No. 2:10-cv-2380 KJN P, 2012 WL 4038421, at *15 (E.D. Cal. Sept. 12, 2012) (acknowledging that Section 3084.7(d)(1)(A) authorizes participation in review by a staff person who participated in the event or decision being appealed when deemed necessary).  Under Section 3084.5(b), appeals coordinators are tasked with "screen[ing] all appeals prior to acceptance and assignment for review." Cal. Code Regs. tit. 15, § 3084.5(b).  The screening is governed by California Code of Regulations, Title 15, §§ 3084, *et seq*., and is notably distinct from review of the underlying facts.  *Compare* Cal. Code Regs. tit. 15, § 3084.5(b) (appeals

coordinators tasked with screening all appeals "*prior* to acceptance and assignment for *review*" (emphasis added)), *with* § 3084.7(d)(1) (addresses which staff are precluded from "reviewing" and "approving" appeal responses).  As such, Defendant Olson, as an Appeals Coordinator at RJD, necessarily participated in the appeal response to provide an administrative remedy and was not the reviewing authority.

Defendant Olson's participation also did not compromise the integrity or outcome of the process.  Both the California Code of Regulations and the Ninth Circuit have put in place checks to ensure the integrity of the process.  As described above, appeals deemed "staff complaints" are processed in such a manner that when an appeal alleges staff misconduct by an appeals coordinator, it is initially reviewed by the hiring authority for a determination of whether it is to be treated as a staff complaint or a routine appeal.  *See* Cal. Code Regs. tit. 15, § 3084.9(i).  In addition, under Ninth Circuit law, improper screening of an inmate's administrative grievances renders administrative remedies "effectively unavailable" such that exhaustion is not required.  *Sapp*, 623 F.3d at 823.  As laid out by the Ninth Circuit in *Sapp*:

> To fall within this exception, a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening. In particular, the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations.

*Sapp*, 623 F.3d at 823-24.  Therefore, the proper question before the Court is whether Defendant Olson screened this appeal "for reasons inconsistent with or unsupported by applicable regulations."  *See id*.

As an initial matter, Plaintiff did not designate this complaint as a "staff complaint." (*See* ECF No. 1-1 at 27-28.)[9]  Therefore, it was treated as a routine appeal and screened by

---

[9]     The evidence submitted demonstrates that Plaintiff was aware of the applicable regulations, and in all instances in which Plaintiff designated an appeal as a staff

the appeals coordinator.  Next, in his FAC, Plaintiff does not allege that Log No. 12-2759 was screened for reasons inconsistent with or unsupported by applicable regulations.  (*See* FAC at p. 13:7-24.)  Rather, he only alleges it was improper for Defendant Suglich, who initially received the appeal, to forward it to the RJD Appeals Coordinator for review.  (*Id*.; *see also* Rios Decl. at ¶ 9.)  Plaintiff also does not make any argument in his Opposition to Defendant's Motion for Partial Summary Judgment that Log No. 12-2759 was improperly screened.  (*See* Rios Decl. at ¶ 9.)  The only place Plaintiff makes that argument is in Log No. 13-0108.  (See ECF No. 1-1 at 42-43.)

Plaintiff asserts in Log No. 13-0108 that he did attach at least one of the CDCR Form 22s that were allegedly missing, the CDCR Form 22 dated August 17, 2012.  (*See id*. at 29, 43.)  However, Defendant Olson screened Log No. 12-02759 on several grounds, including the following: the appeal was missing necessary documentation (CDCR Form 22 dated 8/17/12 and CDCR Form 22 to W. Suglich, CDW(A)); the appeal involved multiple issues that did not derive from a single event; and the appeal concerned an anticipated action or decision.  (*Id*. at 29-31.)  Given that Defendant Olson set forth multiple grounds for rejection, and any one of them would have served as grounds to reject the appeal, the Court finds that Log No. 13-0108 was not improperly screened.  Moreover, unlike Log No. 12-3429, which is discussed below, there was nothing precluding Plaintiff from taking corrective action on his appeal, and he chose not to do so.

---

complaint, the appeals coordinator referred it to the hiring authority for review pursuant to California Code of Regulations, Title 15, § 3084.9(i).  (*See* ECF No. 1-1 at 24 (for Log No. 12-1879, Plaintiff stated: "In accordance with Title 15 CCR Sections 3291 and 3391, and 3084.9(i)(1) . . . .") and 26 (screening letter indicating it had been reviewed by the hiring authority); ECF No. 1-1 at 97 (for Log No. 13-0326, Plaintiff stated: "This is a staff complaint . . . in accordance with 15 CCR §§§ 3084(c)(g); 3084.9(i)(1).") and 101 (screening letter indicating it had been reviewed by the hiring authority); ECF No. 1-2 at 90 (for Log No. 14-104, Plaintiff stated: "This is a staff complaint . . . in accordance with Title 15 CCR §§§ 3084.9(i)(1), 3291 and 3391(d).") and 92 (screening letter indicating it had been reviewed by the hiring authority).

1    Therefore, the Court finds Defendants have satisfied their burden of demonstrating

2 that Plaintiff failed to exhaust available administrative remedies concerning Plaintiff's

3 conspiracy claim against Defendant Olson arising out of Defendant Olson's August 22,

4 2012 CDCR Form 22 response.

5               e.    *October 30, 2012 Appeal (Log No. Unassigned)*

6    In his October 30, 2012 appeal, which was never assigned a log number, Plaintiff

7 alleges that in connection with his prior appeals, *i.e.*, his May 22, 2012, June 11, 2012, and

8 July 2, 2012 appeals, "the AC have Obstructed inmate access to the court and intentionally

9 refuse to process inmate's above mentioned grievances as required by law under the First

10 Amendment of U.S. Constitution and CDCR Own rules and Regulations.  Inmate contends

11 that in [sic] several occasssions [sic] I have attempted to resolve this matter without the

12 necessary [sic] of litigation without any results."  (ECF No. 1-1 at 38-39.)

13    In its prior R&R, the Court found that "[a]lthough the appeal was addressed to

14 Defendant Suglich, the appeal did not identify any specific individual as required by the

15 applicable regulations."  (R&R at p. 51:18-20.)  Therefore, the Court held that Plaintiff's

16 October 30, 2012 appeal failed to adequately identify any individual Defendant and,

17 therefore, this appeal was not properly exhausted.[10]  (*Id.* at pp. 51-52.)  In the FAC, Plaintiff

18 alleges that he provided "sufficient facts, title and office [sic] name responsible for the

19 processing of Plaintiff's grievances and RJDCF only employed two appeals coordinators

20 staff, so the Plaintiff adequately provide [sic] other available information that would assist

21 the Supervisor Suglich in making a reasonable attempt to identify the staff member in

22 question."  (FAC at p. 14:1-6; *see also* Rios Decl. at ¶ 10.)

---

25     [10]    The Court notes there is a material dispute as to whether Plaintiff ever

26 submitted his October 30, 2012 appeal.  The prison records do not reflect its existence.  But

Plaintiff alleges under penalty of perjury that he did.  While this genuine factual dispute

27 could preclude summary judgment as to this claim, *see supra* Part II(B)(2)(a), summary

judgment is nevertheless warranted because the appeal fails to identify any specific

28 Defendant, in violation of the applicable prison appeal regulations.

For the reasons stated in its prior R&R, however, namely the fact that "the undisputed evidence demonstrates that Plaintiff could have identified the name of the individuals engaging in misconduct because the appeal was based on administrative responses received by Plaintiff that specifically identified the responding officials," *see* R&R at p. 51:21-25, the Court finds Plaintiff's October 30, 2012 appeal fails to adequately identify any individual Defendant and, therefore, is not properly exhausted. *See Parks v. Chappell*, No. C-13-4048 EMC (pr), 2015 WL 3466280, at *4-5 (N.D. Cal. June 1, 2015) (finding the plaintiff did not properly exhaust his remedies where he failed to name the defendant in his appeal although he could have done so); *Woodford*, 548 U.S. at 93 (finding that the PLRA exhaustion requirement requires "proper exhaustion").

f.   *November 19, 2012 Appeal (Log No. 12-3429)*

In his November 19, 2012 appeal, assigned Log No. 12-3429, Plaintiff alleges that Defendant Abad violated his due process rights by not providing a timely response to Plaintiff's request for a UCC review based on his contention that he was improperly removed from his job assignment.  (ECF No. 1-1 at 79-80, 83.)  In the appeal, Plaintiff requests that he be scheduled for a UCC review at the next reasonable opportunity and that he be ordered to return to his job assignment.  (*Id.* at 79.)

Based on the evidence presented in the Self and Voong declarations showing that Plaintiff did not proceed with appeal Log No. 12-3429 through the third level of review, the Court finds Defendants have satisfied their initial burden under *Albino*.  (*See* Self Decl. at ¶ 10(g); Voong Decl. at ¶ 7(a), Exh. H.)  Therefore, the burden shifts to Plaintiff to come forward with evidence showing that there is something with this appeal "that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

In its prior R&R, the Court found that Plaintiff satisfied his burden of showing that the first level of review rejection was improper and, therefore, administrative remedies were effectively unavailable.  (R&R at pp. 53-54.)  The Court noted that Defendants Olson and Ramirez sent Plaintiff a screening letter on December 28, 2012 rejecting the appeal

because it was missing necessary supporting documents, including the "128 UCC Removal from job" and the "CDCR 22 complete through section D." (*Id.*; *see also* ECF No. 1-1 at 81.) However, as discussed by the Court, a genuine factual dispute exists regarding whether the appeal could have included the "CDCR 22 completed through section D, *i.e.*, the supervisor's response, when the evidence Plaintiff submits indicates that Plaintiff never received a response to his request." (*See* R&R at p. 53.)

In their present Motion for Partial Summary Judgment, Defendants do not address the Court's concern or resolve this genuine factual dispute. Defendants simply state that "Plaintiff never re-submitted the appeal with the necessary documents attached, even though he could have done so." (Mot. at p. 14:22-24; 15:10-14.) Accordingly, for the reasons set forth in the Court's prior R&R, *see* R&R at pp. 53-54, the Court finds that Defendants have not satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies concerning Plaintiff's due process claim against Defendant Abad arising out of Defendant Abad's alleged delay in responding to Plaintiff's request for a UCC review.[11]

g.    *December 13, 2012 Appeal (Log No. 13-00372)*

In his December 13, 2012 appeal, assigned Log No. 13-00372, Plaintiff alleges that non-party officers Cobb and Stratton, along with Defendants Olson, Ramirez, and Suglich, failed to provide reasonable and adequate administrative remedies and failed to timely respond to his grievances as part of a conspiracy to retaliate against him, cause intentional delay, obstruct his access to the courts, and cover-up wrongdoing of other officers in connection with the May 22, 2012 incident. (ECF No. 1-1 at 64, 66.) Plaintiff also alleges

---

[11]    Plaintiff alleges Log No. 12-3429 also addresses the actions of Defendants Benyard and Cavazos. (FAC at ¶ 24; Rios Decl. at ¶ 11.) However, the undisputed evidence demonstrates that this appeal only identifies Defendant Abad. Thus, Defendants have satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies as against Defendants Benyard and Cavazos based on his delayed UCC review claim.

1  that administrative remedies are futile, unavailable, and inadequate, and he requests that

2  his prior grievances identified in appeal Log No. 13-00372[12] be deemed exhausted.  (*Id*.)

3       In its prior R&R, the Court found that Plaintiff did not proceed with appeal Log No.

4  13-00372 through the third level of review.  (R&R at pp. 55-56.)  Plaintiff has presented

5  no evidence contradicting this finding.  Based on the evidence presented in the Self and

6  Voong declarations, Plaintiff's appeal was screened out and returned to Plaintiff on January

7  22, 2013, and he did not re-submit the appeal.  (Self Decl. at ¶ 10(k); Voong Decl. at ¶

8  9(b).)  Accordingly, the Court finds Defendants have satisfied their initial burden under

9  *Albino*.

10       In his Opposition, Plaintiff argues the appeal was screened out in violation of

11  California Code of Regulations, Title 15, § 3084.7(d)(1)(A), because the appeal brings

12  allegations against Defendants Olson and Ramirez, among others, and Defendants Olson

13  and Ramirez screened the appeal.  (Rios Decl. at ¶ 11; *see also* ECF No. 1-1 at 70-72.)  As

14  discussed above, however, Defendants Olson and Ramirez were performing a necessary

15  administrative function and therefore were not necessarily prohibited from screening the

16  appeal.  *See* Cal. Code Regs. tit. 15, § 3084.7(d)(1)(A).  The proper question is whether

17  Defendants Olson and Ramirez screened the appeal "for reasons inconsistent with or

18  unsupported by applicable regulations."  *See Sapp*, 623 F.3d at 823-24.  Plaintiff does not

19  make any arguments or present any evidence that Log No. 13-00372 was improperly

20  screened.[13]  (*See* FAC at ¶ 22; Rios Decl. at ¶ 12; ECF No. 82 at 15.)  Plaintiff had an

21

22

23      [12]    Appeal Log No. 13-00372 identifies the following prior CDCR Form 602s
and Form 22s: (1) unassigned 5/22/12 appeal; (2) CDCR Form 22 dated 6/10/12; (3) Log

24  No. 12-1879; (4) Log No. 12-2759 (acknowledged as still pending); (5) 7/12/12 CDCR
Form 22; (6) 8/17/12 CDCR Form 22; (7) 10/18/12 CDCR Form 22; (8) 10/21/12 CDCR

25  Form 22; (9) 10/24/12 CDCR Form 22; and (10) unassigned 10/30/12 appeal.  (ECF No.
1-1 at 64, 66.)

26

27      [13]    Defendants Olson and Ramirez rejected Log No. 13-00372 on the following
grounds: (1) it was missing necessary supporting documents (the original CDCR Form

28  602s), *see* Cal. Code Regs. tit. 15, § 3084.6(b)(7); (2) the appeal involves multiple issues

opportunity to re-submit his appeal and correct the deficiencies identified by Defendants Olson and Ramirez, and chose not to do so.[14]

Given the foregoing, the Court finds Defendants have satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies concerning Plaintiff's conspiracy, retaliation, and due process claims against Defendants Olson, Ramirez, and Suglich arising out of their handling of the following administrative appeals: (1) unassigned 5/22/12 appeal; (2) CDCR Form 22 dated 6/10/12; (3) Log No. 12-1879; (4) Log No. 12-2759; (5) 7/12/12 CDCR Form 22; (6) 8/17/12 CDCR Form 22; (7) 10/18/12 CDCR Form 22; (8) 10/21/12 CDCR Form 22; (9) 10/24/12 CDCR Form 22; and (10) unassigned 10/30/12 appeal.  (ECF No. 1-1 at 64, 66.)

h.  *February 14, 2013 Appeal (Log No. 13-00777)*

Plaintiff alleges property deprivation and retaliation claims against Defendant Zuniga in his February 14, 2013 appeal, assigned Log No. 13-00777.  (ECF No. 1-1 at 128, 130.)  Defendants acknowledge that Plaintiff exhausted Log No. 13-00777 through the third level of review.  (Mot. at p. 10:20-21; p. 20:20-21; Self Decl. at ¶ 9(d).)  As a result, Defendants have conceded that Plaintiff has exhausted a retaliation claim against

---

that do not derive from a single event, or are not directly related, *see* Cal. Code Regs. tit. 15, § 3084.6(b)(8); and (3) supporting documents were attached (letters), *see* Cal. Code Regs. tit. 15, § 3084.6(b)(12).  (ECF No. 1-1 at 70-72.)  Although Plaintiff alleges a conspiracy, which is a single issue which may derive from multiple events, and therefore does not necessarily fall under Section 3084.6(b)(8), because Plaintiff seeks in the appeal to have multiple unrelated appeals reviewed and deemed exhausted, the appeal cannot be reasonably addressed in a single response.  Therefore, the Court finds the appeal was not improperly rejected under Section 3084.6(b)(8).  As stated in the rejection letter, Plaintiff was not precluded from addressing his issues with each appeal separately.  (ECF No. 1-1 at 71.)

[14]   The Court notes that Plaintiff submitted this appeal to the Office of Appeals in February 2013, but it was rejected in March 2013 for having improperly bypassed a required lower level of review.  (ECF No. 1-1 at 64, 66, 74.)

Defendant Zuniga.[15]  (Mot. at p. 21:9-10.)

However, as explained in the Court's prior R&R, the evidence before the Court plainly demonstrates that Plaintiff did not exhaust any claims against Defendant Zuniga based on Log No. 13-00777 prior to filing suit.  The third level appeal decision included as an exhibit to the Self declaration is dated July 25, 2014 (Self Decl. at ¶ 9(d), Exh. A), nearly three months after the filing of Plaintiff's Complaint on April 28, 2014 (ECF No. 1).  The Self and Voong declarations also indicate the appeal was denied at the third level of review on July 25, 2014.  (Self Decl. at ¶ 9(d); Voong Decl. at ¶ 8(h).)  Although Plaintiff had requested consideration of this appeal at the third level of review on February 25, 2012 prior to filing suit (*see* ECF No. 1-1 at 129), prisoners must exhaust administrative remedies *before* filing suit.  42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (citing *Porter*, 534 U.S. at 524)); *Albino*, 747 F.3d at 1171 ("The PLRA mandates that inmates exhaust all available administrative remedies *before* filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." (emphasis added) (quoting *Woodford*, 548 U.S. at 85)); *Cano v. Taylor*, 739 F.3d 1214, 1219 (9th Cir. 2014) ("The Ninth Circuit has explained that Congress purposely made exhaustion a precondition to suit, rather than to judgment, and this was done with the goal of affording corrections officials the opportunity to address complaints internally." (citing *McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (per curiam)).

Plaintiff argues he should be excused from this requirement because it took over a

---

[15]     Defendants do not appear to concede that this appeal exhausts any other claims against Defendant Zuniga, including Plaintiff's claims against Defendant Zuniga for retaliation, conspiracy, due process, and intentional deprivation of personal property.

year for his appeal to be exhausted at the third level of review.  (FAC at ¶ 35; Rios Decl. at ¶ 16.)  Plaintiff cites California Code of Regulations, Title 15, § 3084.8, which sets forth time limits for appeal.  Cal. Code Regs. tit. 15, § 3084.8.  Section 3084.8(c) states that first and second level responses shall be completed within thirty working days from the date of receipt by the appeals coordinator, while third level responses shall be completed within sixty working dates from date of receipt by the third level Appeals Chief.  *Id*. at § 3084.8(c). Deviation from these time limits is expressly authorized in certain circumstances, including the "'[u]navailability of the inmate or parolee, or staff, or witnesses,' and where "[t]he complexity of the decision, action or policy require[s] additional research.'"  *Id*. at § 3084.8(d)(1), (2).  Under Section 3084.8(e), "[e]xcept for the third level, if an exceptional delay prevents completion of the review within specified time limits, the appellant, within the time limits provided [above], shall be provided an explanation of the reasons for the delay and the estimated completion date."  *Id*. at § 3084.8(e).

On November 14, 2012, CDCR sent a Memorandum to all Facility C Inmates and Housing Units, advising them that CDCR is "looking at 3 to 4 months to catch up on the amount of 602s the [sic] have stacked up."  (ECF No. 1-1 at 69.)  Plaintiff was also interviewed on January 28, 2013 by Defendant Suglich regarding Plaintiff's concerns about the timely processing of his appeals and Form 22's, and informed that the recent changes within the Inmate Appeals Office has "caused a slight delay in the processing of appeals." (ECF No. 1-1 at 68.)  Because of the unavailability of CDCR staff, the Court does not find that strict compliance with the deadlines set forth in Section 3084.8(c) was required.[16] Moreover, the evidence demonstrates Plaintiff was not only provided with an explanation for the delay, but he was able to exhaust his appeal through the third level.  Thus, Plaintiff

---

[16]     Plaintiff alleges in his FAC that several of his appeals should be deemed exhausted because CDCR did not respond to them in a timely manner.  For the reasons discussed with respect to Log No. 13-00777, the Court does not consider them deemed exhausted because they were untimely.

is not excused from exhausting his claim prior to filing this lawsuit.

In conclusion, based on the record before the Court, Plaintiff failed to fully exhaust appeal Log No. 13-00777 before filing suit.  Therefore, he did not exhaust his property deprivation and retaliation claims against Defendant Zuniga on the basis of this appeal.  However, summary judgment in favor of Defendant Zuniga as to the retaliation and due process property deprivation claims is not warranted because, as set forth below, triable issues of fact remain as to these claims against Defendant Zuniga based on a separate appeal, Log No. 13-1365.

i.   *April 17, 2013 Appeal (Log No. 13-1365)*

In his April 17, 2013 appeal, assigned Log No. 13-1365, Plaintiff asserts claims against Defendants Benyard and Zuniga, and non-parties Alvarez and Rutledge, for allegedly conspiring to retaliate against Plaintiff by depriving Plaintiff of his personal property without due process of law.  (FAC at ¶ 46, pp. 4-5; ECF No. 1-2 at 38-39.)

As demonstrated by the Self and Voong declarations, Plaintiff did not proceed with this appeal through the third level of review.  (Self Decl. at ¶ 10(l); Voong Decl. at ¶ 8(c).)  On April 22, 2013, Defendants Olson and Ramirez cancelled appeal Log No. 13-1365 as untimely because the February 25, 2013 date on which Plaintiff was informed by the staff that his television could not be located was more than thirty days before he filed the appeal, in violation of California Code of Regulations, Title 15, § 3084.6(c)(4).  (ECF No. 1-2 at 40.)  Plaintiff filed appeals challenging this cancellation, and while he succeeded in exhausting one of his challenges through the third level of review, this challenge was denied.[17]  Based on this evidence, Defendants have satisfied their initial burden under

---

[17]   On April 24, 2013, Plaintiff filed a grievance alleging improper cancellation of Log No. 13-1365, which was assigned Log No. 13-1467 and rejected at the first level of review.  (Self Decl. at ¶ 9 (m); ECF No. 1-2 at 48-50.)  On May 15, 2013, Plaintiff filed another grievance alleging improper cancellation of Log No. 13-1365, which was assigned Log No. 13-01753 and denied at the third level of review.  (Self Decl. at ¶ 9(f); Voong Decl. at ¶ 8(c); ECF No. 1-2 at 57-58.)  Therefore, Plaintiff has exhausted his claim that

*Albino* of showing that Plaintiff failed to exhaust administrative remedies as to the claims asserted in this appeal.

In its prior R&R, however, the Court found there was a genuine issue of material fact as to whether administrative remedies were effectively unavailable regarding this appeal because Plaintiff had introduced evidence suggesting that the appeal was improperly cancelled as untimely.  (R&R at pp. 58-59.)  Because Defendants do not identify any claims against Defendants Benyard and Zuniga in their Motion for Partial Summary Judgment arising out of this appeal, they do not address the issues previously raised by the Court in their present motion.

Accordingly, for the reasons set forth in its prior R&R, the Court finds Defendants have not satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies concerning Plaintiff's conspiracy, retaliation, and due process claims against Defendants Benyard and Zuniga based on the allegations set forth in appeal Log No. 13-1365.

### j.   *April 10, 2013 Appeal (Log No. 13-01319)*

In his April 10, 2013 appeal, assigned Log No. 13-01319, Plaintiff alleges Defendants Benyard and Hernandez, and non-party officers Smith and Spence, violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments by conspiring to retaliate against Plaintiff and deprive him of due process protections in relation to Plaintiff's March 18, 2013 RVR hearing.  (ECF No. 1-1 at 107, 109.)  Because this appeal was processed through the third level of review, Plaintiff has exhausted his claims in this appeal.  (*See* ECF No. 1-1 at 105-112; R&R at p. 58; *see also* Self Decl. at ¶ 9(e), Exh. B; Voong Decl. at ¶ 8(d), Exh. D.)[18]

───────────────

the cancellation of Log No. 13-1365 was erroneous, but not the underlying claims listed in Log No. 13-1365.

[18]   Although appeal Log No. 13-01319 was granted in part at the third level of review because Plaintiff had not been provided with medical reports sufficiently in advance

1    In their present motion, Defendants do not dispute that Plaintiff exhausted his claims

2    in Log No. 13-01319. (*See* Mot. at p. 17:10-12.) Rather, Defendants argue that Plaintiff

3    has not alleged any claims with respect to his March 18, 2013 RVR hearing in the FAC.

4    (*Id.* at pp. 16-17.) The Court agrees.[19] Therefore, although Defendants have not satisfied

5    their burden of demonstrating that Plaintiff failed to exhaust available administrative

6    remedies concerning Plaintiff's conspiracy, retaliation, and due process claims against

7    Defendants Benyard and Hernandez arising out of the March 18, 2013 RVR disciplinary

8    hearing, such claims are not raised in the FAC.

9         k.    *August 5, 2013 & August 21, 2013 Appeals (Log Nos.*

10               *Unassigned)*

11    In his August 5, 2013 appeal, which was not assigned a log number, Plaintiff alleges

12    equal protection, ADA, retaliation, due process, and conspiracy claims against several RJD

13    officials, including Defendants Benyard, Cavazos, and Paramo for their refusal to consider

14    Plaintiff's job termination complaint during the July 23, 2013 UCC review. (ECF No. 1-1

15    at 86-87.) Plaintiff claims he never received a response to this appeal. (FAC at ¶ 39.)

16    Similarly, in his August 21, 2013 appeal, which also was not assigned a log number,

17    Plaintiff alleges discrimination, retaliation, due process, and conspiracy claims against

18    Defendants Benyard, Cavazos, and Paramo due to their refusal during the July 23, 2013

19    UCC review to permit Plaintiff to participate in re-entry programs and to re-consider

20    Plaintiff's job termination. (ECF No. 1-1 at 89-90.)

21    Defendants rely on the Self and Voong declarations for the position that Plaintiff

22    never filed the appeals, let alone exhausted the appeals through the third level of review.

23    (Mot. at pp. 15-16; Self Decl. at Exh. L; Voong Decl. at Exh. H.) Thus, Defendants have

24

25    ———————————

26    of the RVR disciplinary hearing, and the RVR was re-issued and re-heard (*see* ECF No. 1-

27    2 at 105-06), Plaintiff nevertheless exhausted his claims asserted in the appeal.

         [19]   *See also* ECF No. 82 at 11 (specifying that Plaintiff's claims relate to the

28    October 16, 2013 RVR hearing).

satisfied their initial burden under *Albino* of demonstrating that an available administrative remedy exists and that Plaintiff did not exhaust that available remedy.

In his FAC, Plaintiff alleges that he filed both CDCR Form 602s, but never received a response. (*See* FAC at ¶ 39.)[20]  In light of Plaintiff's sworn statement under penalty of perjury that he filed his August 5, 2015 and August 21, 2015 appeals but never received a response, Plaintiff has satisfied his burden of demonstrating administrative remedies were effectively unavailable to him. (*See* R&R at pp. 59-61.)  The failure to respond to a grievance makes remedies "unavailable" and therefore excuses the failure to exhaust. *Sapp*, 623 F.3d at 822.

In their present motion, Defendants argue for the first time that although they have no record of the appeals, the grievance procedure was available to Plaintiff, as evidenced by the fact that between May 2012 and October 2015, the RJD Appeals Coordinators received and assigned log numbers to thirty-two grievances from Plaintiff, including three in August 2013. (Mot. at pp. 15-16; Self Decl. at ¶ 9(a)-(o).)  The Court finds this argument unavailing.  In *Williams*, the defendants similarly argued that remedies were available to the plaintiff "as evidenced by the multiple unrelated appeals that she was able to file successfully." *Williams*, 775 F.3d at 1192.  In response, the Ninth Circuit stated that "[t]his

---

[20]    The Court notes that Plaintiff's sworn allegations are not contradicted by the evidence submitted.  Plaintiff submitted two CDCR Form 22s, dated August 5, 2013 and August 21, 2013, respectively, which apparently accompanied the CDCR Form 602s. (*See* ECF No. 1-1 at 88; ECF No. 1-1 at 91.)  The CDCR Form 22s state that the CDCR Form 602s were delivered to staff and both CDCR Form 22s appear to be signed as received by R. Dopwell. (*See* ECF No. 1-1 at 88; ECF NO. 1-1 at 91; *cf*. ECF No. 1-2 at 30.)  As with the May 22, 2012 appeal, however, it is uncertain whether Plaintiff properly filed these appeals.  Both appeals are stamped as being "Received" on January 16, 2014 by the Inmate Appeals Branch.  The records of the Inmate Appeals Branch appear to reflect that at least one of these appeals was received on January 16, 2014, but screened out because it was not authorized to bypass any level. (*See* Voong Decl. at ¶ 11, Exh. H.)  This indicates that Plaintiff may have improperly submitted these appeals directly to the Inmate Appeals Branch in an attempt to bypass the first level of review.

argument is a virtual non-sequitur because it does nothing to rebut [the plaintiff's] evidence that administrative remedies were not available to her at the time she tried to file the relevant grievance and appeal in this case." *Id*. Therefore, the Court finds Defendants have failed to demonstrate that remedies were effectively available with respect to these particular appeals.

Because there remains facts in dispute as to whether these grievances were properly filed and whether there were generally available administrative remedies effectively available to Plaintiff as to these appeals, the Court finds Defendants have not satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies concerning Plaintiff's equal protection, discrimination, ADA, retaliation, due process, and conspiracy claims against Defendants Benyard, Cavazos, and Paramo arising out of the July 23, 2013 UCC review.

### l.   *November 7, 2013 Appeal (Log No. 13-3607)*

In his November 7, 2013 appeal, assigned Log No. 13-3607, Plaintiff asserts retaliation, conspiracy, and due process claims against Defendants Allamby, Benyard, Cortez, Hernandez, and Jones.  (ECF No. 1-2 at 84-85.)  Plaintiff alleges that during the October 17, 2013 RVR disciplinary re-hearing, Defendant Allamby wrongly denied his request that a Staff Assistant be interviewed and that the video recording of Plaintiff's February 4, 2013 Ad-Seg hearing with Defendant Benyard be reviewed, thus depriving Plaintiff of a fair and impartial disciplinary hearing. (*Id*.)  Plaintiff also alleges Defendants Cortez and Jones made false statements during the re-hearing. (*Id*.)

Relying on the Self declaration, Defendants assert that Log No. 13-3607 was rejected at the first level of review because it was missing necessary supporting documents and attached dividers, and Plaintiff opted not to pursue the appeal, even though he could have. (Mot. at p. 17:3-9; Self Decl. at ¶ 10(t); *see also* ECF No. 1-2 at 85-89.)

In its prior R&R, the Court held that although Plaintiff was unable to show that he exhausted this appeal to the third level of review, he produced sufficient evidence demonstrating a factual dispute as to whether he ever filed this appeal in the first place, and

if so, whether the prison's failure to process the re-submitted appeal effectively made administrative remedies unavailable.  (R&R at p. 61.)  In so holding, the Court relied on Defendants' omission of the appeal in its supporting declaration and Plaintiff's allegation and evidence that on November 25, 2013, he re-submitted his appeal after taking corrective measures and that he accompanied his appeal with a CDCR Form 22 signed by non-party officer J. Delgado verifying receipt of the re-submitted appeal, and never received a response.  (*Id*.)

Plaintiff re-submits the same evidence here.  (*See* Rios Decl. at ¶ 21; *see also* ECF No. 1-2 at 87.)  While Defendants now identify Log No. 13-3607 as being received (Self Decl. at ¶ 10(t), Exh. J) in their Motion for Partial Summary Judgment, Defendants fail to address the material dispute of fact as to whether Plaintiff re-submitted his appeal.  The failure to respond to a grievance makes remedies "unavailable" and therefore excuses the failure to exhaust.  *See Sapp*, 623 F.3d at 822.

Accordingly, the Court finds Defendants have not satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies as to his retaliation, conspiracy, and due process claims against Defendants Allamby, Benyard, Cortez, Hernandez, and Jones arising from the October 17, 2013 RVR disciplinary hearing.

m.    *December 11, 2013 Appeal (Log No. 14-104)*

In his December 11, 2013 appeal, assigned Log No. 14-104, Plaintiff asserts claims against Defendants Benyard, Olson, Paramo, and Ramirez and their unidentified "agents" for allegedly conspiring to retaliate against Plaintiff by refusing to process his grievances and depriving him of access to the courts.  (ECF No. 1-2 at 90-91.)  Plaintiff identifies several "overdue" grievances that he had unsuccessfully tried to resolve, including: (1) Log No. 12-2398; (2) Log No. 13-00777; (3) August 5, 2013 appeal (unassigned Log No.); (4) August 21, 2013 appeal (unassigned Log No.); (5) Log No. 13-2693; and (6) Log No. 13-3607.  (*Id*.)  Plaintiff seeks to have the listed grievances processed in a timely manner and to have the named officials halt their retaliation and conspiracy.  (*Id*. at 90.)  On January 13, 2014, Defendants Olson and Ramirez rejected the appeal at the first level of review for

non-compliance with California Code of Regulations, Title 15, § 3084.6(b)(8) for involving multiple issues that do not derive from a single event, with instruction for Plaintiff to address his issues with each appeal separately. (*Id.* at 92.)

As demonstrated by the Self and Voong declarations, Plaintiff did not proceed with this appeal through the third level of review. (Self Decl. at ¶ 10(u); Voong Decl. at ¶ 11, Exh. H; Mot. at p. 17:20-25.) Accordingly, Defendants have satisfied their initial burden of showing that an available administrative remedy existed and that Plaintiff did not exhaust that available remedy. *See Williams*, 775 F.3d at 1191.

The Court previously found that Defendants were unable to satisfy their burden of proving that Plaintiff failed to exhaust available administrative remedies because the appeal was omitted from Defendants' supporting declarations, and because Defendants Olson and Ramirez rejected the appeal while also being named in the appeal. (R&R at pp. 62-63.) The same concerns are no longer present. The Self declaration and Inmate/Parolee Appeals Tracking System records attached thereto do acknowledge receipt of the appeal. (*See* Self Decl. at ¶¶10(u), Exh. K; ¶ 12, Exh. L.) Moreover, as discussed above, Defendants Olson and Ramirez were not necessarily precluded from screening the appeal.[21]

The proper question is whether Defendants Olson and Ramirez screened the appeal "for reasons inconsistent with or unsupported by applicable regulations." *See Sapp*, 623 F.3d at 823-24. Plaintiff makes no argument that the screening was improper, except for the general allegation that "Plaintiff's grievances were subjected to improper rejections and cancellations." (*See* Rios Decl. at ¶ 22.) On January 13, 2014, Defendants Olson and Ramirez rejected the appeal because it "involves multiple issues that do not derive from a single event, or are not directly related and cannot be reasonably addressed in a single

---

[21]     Although designated as a staff complaint, the rejection letter states: "The Hiring Authority reviewed this appeal and determined that it did not meet the requirement for assignment as a staff complaint and was referred for routine appeal processing." (ECF No. 1-2 at 92.)

response due to this fact," citing California Code of Regulations, Title 15, § 3084.6(b)(8). (ECF No. 1-2 at 92.)  In his appeal, Plaintiff seeks to have several unrelated grievances processed in a timely manner.  (*Id*. at 90.)  Accordingly, Defendants Olson and Ramirez did not improperly screen Log No. 14-104.[22]

In conclusion, the Court finds Defendants have satisfied their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies concerning Plaintiff's conspiracy and retaliation claims against Defendants Benyard, Olson, Paramo, and Ramirez arising out of their handling of Plaintiff's administrative appeals identified in appeal Log No. 14-104.

n.    *January 21, 2014 Appeal (Log No. Unassigned)*

On January 21, 2014, Plaintiff filed an appeal that was never assigned a log number in which he alleges the ACO failed to timely respond to his grievances rendering administrative remedies futile, unavailable, or inadequate.  Plaintiff references his two prior attempts to address this issue, on November 7, 2013, appeal Log No. 13-3607, and on December 11, 2013, appeal Log No. 14-104.  (ECF No. 1-2 at 95-96.)  Plaintiff alleges he never received a response to his January 21, 2014 appeal.  (ECF No. 48 at 7:14-15.)

Not only is Plaintiff unable to show that he exhausted this appeal to the third level of review, the appeal did not identify any specific individual as required by the applicable regulations.  *See* Cal. Code Regs. tit. 15, § 3084.2(a)(3).  Rather, the appeal only makes allegations against the ACO.  However, the undisputed evidence demonstrates that Plaintiff could have identified the name of the individuals engaging in misconduct because the

---

[22]    As discussed above, although Plaintiff alleges a conspiracy, which is a single issue which may derive from multiple events, and therefore does not necessarily fall under Section 3084.6(b)(8), because Plaintiff seeks in the appeal to have multiple unrelated appeals reviewed and processed, the appeal cannot be reasonably addressed in a single response.  Therefore, the Court finds the appeal was not improperly rejected under Section 3084.6(b)(8).  As stated in the rejection letter, Plaintiff was not precluded from addressing his issues with each appeal separately.  (ECF No. 1-2 at 92.)

44

appeal was based on administrative responses received by Plaintiff that specifically identified the responding officials. *See Parks*, 2015 WL 3466280, at *4-5; *Woodford*, 548 U.S. at 93.

In conclusion, Plaintiff's January 21, 2014 appeal[23] fails to adequately identify any individual Defendant and, therefore, this appeal is not properly exhausted.

### 4.   Conclusion

Based on the foregoing analysis, the Court **RECOMMENDS** that Defendants' Motion for Partial Summary Judgment be **GRANTED in part** and **DENIED in part**. Specifically, the Court concludes that Defendants have satisfied their burden of providing undisputed evidence that Plaintiff failed to exhaust available administrative remedies as to the following:

- Conspiracy, retaliation, and denial of access to courts claims against Defendants Olson and Ramirez;[24]

- Conspiracy, retaliation, and due process claims against Defendant Behra arising out of the allegedly false statements contained in his CDC-128A disciplinary report;[25]

---

[23]     The Court notes there is a material dispute as to whether Plaintiff ever submitted his January 21, 2014 appeal.  The prison records do not reflect its existence, but Plaintiff alleges under penalty of perjury that he did file the grievance.  While this genuine factual dispute could preclude summary judgment as to this claim, as discussed herein, summary judgment is nevertheless warranted because the appeal fails to identify any specific Defendant, in violation of the applicable prison appeal regulations.

[24]     Therefore, Plaintiff has exhausted no claims alleged in the FAC against Defendants Olson and Ramirez. (*See* Log Nos. 12-2146, 13-00372, 14-104, 12-2759; FAC at p. 10, ¶¶ 52, 55.)

[25]     (*See* Log Nos. 12-1879, 13-0108, 12-2759.)  There remains a dispute of fact, however, whether Plaintiff exhausted retaliation and conspiracy claims against Defendant Behra arising out of Defendant Behra's involvement in "plan[ning] and plant[ing] a controlled contraband in the inmates' open work area to injure, oppress, or intimidate [Plaintiff]," which resulted in Plaintiff losing his job assignment.  (*See* May 22, 2012 appeal.)

- Conspiracy, retaliation, and denial of access to courts claims against Defendants Suglich and Paramo;[26] and

- Conspiracy, retaliation, and due process claims against Defendant Abad arising out of the July 23, 2013 UCC hearing.[27]

Accordingly, summary judgment should be granted on these claims as against these Defendants only.  As to all remaining claims and Defendants, genuine issues of material fact preclude summary judgment.

## B.   Defendants' Motion to Dismiss (ECF No. 73)

Defendants move to dismiss Plaintiff's FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) on the following grounds: (1) Plaintiff's retaliation claims, due-process claims, and conspiracy claims against Allamby, Benyard, Cortez, Jones, and Hernandez, arising out of the RVR for fighting, are barred under *Heck v. Humphrey*; (2) Plaintiff failed to state a retaliation claim against Defendants Paramo, Suglich, Benyard, Cavazos, Abad, Cortez, Jones, Allamby, and Hernandez; (3) Plaintiff failed to state a due-process claim against Defendants Abad, Allamby, Behra, Benyard, Cavazos, Cortez, Jones, and Hernandez; (4) Plaintiff failed to state an equal-protection claim against Defendants Benyard, Cavazos, and Abad; (5) Plaintiff failed to state an ADA claim against Defendants Benyard and Cavazos; (6) Plaintiff failed to state a conspiracy claim against Defendants Abad, Allamby, Benyard, Cavazos, Cortez, Hernandez, Jones, Paramo, and Suglich; and (7) Defendants Paramo, Suglich, Benyard, Cavazos, Abad, Cortez, Jones, Allamby, Hernandez, and Behra are protected by qualified immunity from liability for damages in

---

[26]     Therefore, Plaintiff has exhausted no claims alleged in the FAC against Defendants Suglich and Paramo.  (*See* Log Nos. 13-0372, 14-104, 12-2146, and unassigned October 30, 2012 and January 21, 2014 appeals; FAC at pp. 8-10, ¶¶ 51, 55.)

[27]     The August 5, 2013 and August 21, 2013 appeals do not identify Defendant Abad.  However, there remains a dispute as to whether Plaintiff exhausted his due process claim against Defendant Abad arising out of Defendant Abad's alleged failure to provide a timely response to Plaintiff's request for a UCC review based on his contention that he was improperly removed from his job assignment.  (*See* Log No. 12-3429; FAC at p. 2.)

their individual capacities for certain of Plaintiff's claims.  (ECF No. 73; 73-1 at pp. 9-10.)

Defendants do not move to dismiss the following claims: (1) Plaintiff's retaliation claims against Defendants Behra, Zuniga, Olson, and Ramirez; and (2) Plaintiff's conspiracy claims against Defendants Behra, Olson, and Ramirez.  (ECF No. 73-1 at p. 33.)

### 1.   Legal Standard

#### a.   *Rule 12(b)(6) Motion to Dismiss*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss."  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). However, courts may consider materials of which the court may take judicial notice, and exhibits that are attached to the complaint.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss. (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978))); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).  However, exhibits that contradict the allegations of a complaint may fatally undermine the complaint's allegations.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff can "plead himself out of a claim by including . . . details contrary to his claims." (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."))).

"The focus of any Rule 12(b)(6) dismissal . . . is the complaint."  *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss

brought pursuant to Rule 12(b)(6).  *Id.* ("The 'new' allegations contained in the inmates' opposition motion . . . are irrelevant for Rule 12(b)(6) purposes.  In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (citations omitted)).

A motion to dismiss should be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Citation omitted.]  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

"All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed. v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)).  The Court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell*, 266 F.3d at 988 (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on motion to dismiss, court is "not bound to accept as true a legal conclusion couched as a factual allegation.").  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations,

a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 570 (when plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.")).

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

### b.  Standards Applicable to *Pro Se* Litigants in Civil Rights Actions

"In a civil rights case where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford [the] plaintiff the benefit of any doubt." *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).

Nevertheless, a court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987)). Thus, before a *pro se* civil rights

complaint may be dismissed, the Court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim–Panahi*, 839 F.2d at 623–24. But where amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate. *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

### 2. Discussion

#### a. *Property Deprivation Claims*

In the FAC, Plaintiff brings retaliation, conspiracy, due process, and state law deprivation of personal property claims against Defendant Zuniga. (FAC at pp. 4-5, ¶ 46.) Defendants do not move to dismiss any property related claims in the FAC against Defendant Zuniga. Accordingly, these claims are not dismissed.

#### b. *Access to Courts Claims*

Defendants do not move to dismiss Plaintiff's claims against Defendants Ramirez and Olson arising out of Plaintiff's allegations that these defendants conspired to deny Plaintiff his constitutional right to file grievances, retaliated against Plaintiff for filing complaints and grievances against them and fellow prison staff, and obstructed Plaintiff's access to the courts. (FAC at p. 10, ¶ 52.) Specifically, in the FAC, Plaintiff alleges Defendants Ramirez and Olson intentionally delayed the appeals process, abused their discretion and rejected grievances without authority, erroneously cancelled grievances, and/or refused to process or answer Plaintiff's grievances within a reasonable time frame. (*Id*.) However, as discussed above, because Plaintiff failed to exhaust these claims prior to filing suit, they are not properly before the Court.

Similarly, Defendants do not move to dismiss Plaintiff's claims against Defendants Suglich and Paramo for denial of access to the courts and conspiracy to deny Plaintiff access to the courts, based on allegations that these defendants promulgated and implemented a policy of delivering an inmate's grievance to the appeals coordinator, even when the grievance alleges misconduct by the appeals coordinator, and deprived inmates of fair and impartial appeals procedures. (*Id*. at pp. 8-10, ¶ 51.) Once again, however, because Plaintiff failed to exhaust these claims prior to filing suit, they are not properly

before the Court.

In their Motion to Dismiss, Defendants do move to dismiss Plaintiff's retaliation claims against Defendants Suglich and Paramo for failure to respond to Plaintiff's grievances adequately and/or to fix the wrong "when there is a duty to do so." (FAC at ¶ 51.) As with Plaintiff's other claims against Defendants Suglich and Paramo, however, these claims were not exhausted, and therefore are not properly before the Court.

### c. *Claims Against Defendant Behra*

Plaintiff alleges Defendant Behra "threatened and harassed" him because he filed the Cate Lawsuit. (*Id*. at p. 1.) Plaintiff also alleges that Defendant Behra subsequently issued a false CDC 128-A disciplinary report in retaliation for the filing of the Cate Lawsuit. (*Id*. at pp. 1-2, ¶ 15.) As an initial matter, because Plaintiff did not exhaust his claims relating to the issuance of an allegedly false CDC 128-A report, Plaintiff's retaliation, due process, and conspiracy claims are arising out of the issuance of the CDC 128-A report are not properly before the Court.

Next, although Defendants identify a retaliation claim against Defendant Behra in their Motion to Dismiss (*see* ECF No. 73-1 at p. 8:6), they do not move to dismiss any retaliation claim against Defendant Behra (*see id*. at pp. 14-19). Indeed, as Defendants expressly state, even if the Court grants their motion in full, Plaintiff's retaliation claim against Defendant Behra will remain. (*Id*. at p. 33.) Accordingly, Plaintiff's retaliation claim against Defendant Behra, as set forth in Plaintiff's May 22, 2012 appeal, is not dismissed.

### d. *RVR and RVR Hearing*

In the FAC, Plaintiff brings retaliation, conspiracy, and due process claims against Defendants Benyard, Cortez, Jones, Hernandez, and Allamby related to the issuance of an RVR (CDC Form 115) and the subsequent disciplinary hearing on the RVR. (FAC at pp. 6-8, ¶¶ 28-31, 37, 48, 54.)

### (i)   Background

On January 18, 2013, Plaintiff alleges he was sent to an outside hospital for surgery

51

and treatment following a fight with another inmate.  (FAC at ¶ 28; *see also* ECF No. 1-2 at 63-74.)  On January 23, 2013, upon his return, he was placed in Ad-Seg because his presence was "deemed a threat to the safety and security of the institution."  (FAC at ¶ 29; ECF No. 1-2 at 61.)  Plaintiff remained in Ad-Seg pending administrative review.  (ECF No. 1-2 at 61.)

On February 5, 2013, Defendant Benyard issued an RVR, stating that on February 4, 2013, during Plaintiff's CDC 114 disciplinary hearing, Plaintiff admitted that he had initiated the fight with his fellow inmate.  (ECF No. 1-2 at 113-116; *see also* FAC at ¶ 30.)  On February 7, 2013, the Institutional Classification Committee, chaired by Defendant Hernandez, released Plaintiff from Ad-Seg "with no enemy concerns."  (FAC at ¶ 31; ECF No. 1-2 at 74.)

An initial RVR hearing was held on March 18, 2013.  (*See* ECF No. 1-2 at 105-106.)  On September 16, 2013, following a third level appeal, the Office of Appeals ordered RJD to have the Chief Disciplinary Officer order the RVR to be reissued and reheard.  (*Id*.)  On September 26, 2013, Defendant Hernandez, the Associate Warden and Chief Disciplinary Officer, ordered the RVR to be reissued and reheard.  (*Id*. at 75.)  On or about October 2, 2013, Defendant Benyard reissued the RVR.  (*Id*. at 75-83.)  A second RVR hearing was held on October 16, 2013.  (FAC at ¶ 37; *see also* ECF No. 1-2 at 77.)  Defendant Allamby was the Senior Hearing Officer (SHO).  (ECF No. 1-2 at 77.)  Defendants Cortez, Jones, and Benyard were witnesses at the hearing upon Plaintiff's request.  (*Id*. at 78.)  As a result of the hearing, Plaintiff was found guilty of violating California Code of Regulations, Title 15, § 3005(d)(1) for the act of fighting resulting in the use of force.  (*Id*. at 80.)  As a result, a credit forfeiture of 90 days was assessed.  (*Id*.; *see also* FAC at ¶ 37.)  Plaintiff was given a credit restoration period of 180 days.  (*Id*.)  If Plaintiff completed the restoration period disciplinary free, he was entitled to request a classification review.  (*Id*.)  Classification would make the final determination whether Plaintiff was eligible for restoration of credits.  (*Id*.)

Plaintiff alleges that on September 11, 2015, he formally made a request to his

caseworker for credit restoration, and she said it would take place at his annual UCC review, which was due on September 29, 2015. (FAC at ¶ 37, Exh. 2.) Plaintiff alleges that credit restoration took place on October 13, 2015 during the UCC process. (*Id*.)

(ii)   Allegations

In the FAC, Plaintiff alleges that on February 4, 2013, Defendant Benyard "decided to retain or place" Plaintiff in Ad-Seg in retaliation for "Plaintiff's previous protected conduct and the filing of grievances and complaints against him." (FAC at p. 6:1-4, ¶ 30.) Plaintiff further alleges that Defendant Benyard's retaliation also "took the form of . . . subject[ing] the Plaintiff to a false [RVR, which] falsely claim[ed] that the Plaintiff admitted during the February 4, 2013 Ad-Seg hearing to be the one that instigated the January 18, 2013 altercation." (*Id*. at p. 6:4-9, ¶ 37.) Plaintiff further alleges that Defendant Benyard violated Plaintiff's due process rights during the RVR hearing because the procedures were "not impartial or fair enough," in that Defendant Benyard both issued the RVR and supervised the Senior Hearing Officer finding Plaintiff guilty. (*Id*. at p. 6: 9-24.)

Plaintiff alleges that Defendants Jones, Cortez, and Allamby conspired with Defendant Benyard to "falsely fabricate evidence" against Plaintiff to "punish him." (*Id*. at pp. 6-7. ¶ 37.) Specifically, Defendants Cortez and Jones "manipulated the evidence by changing their version of the facts," and Defendant Allamby not only allowed them to do so at the RVR hearing, but also "intentionally misconstrue[d] the information and facts," which Plaintiff alleges "clearly support a dismissal of the charges." (*Id*. at p. 7, ¶ 37.) Defendant Allamby also allegedly failed to provide due process at the RVR hearing because he refused to allow Plaintiff to present certain evidence and call certain witnesses. (*Id*. at pp. 7-8) Defendant Allamby denied Plaintiff's request to call a "vital" witness and failed to note this denial in his report. (*Id*. at ¶ 37.)

With respect to Defendant Hernandez, Plaintiff alleges that he conspired to deny Plaintiff's constitutional rights and retaliated against Plaintiff "because of Plaintiff filing grievances against him and other fellow prison staff." (*Id*. at p. 8, ¶ 37.) Defendant

53

Hernandez was a defendant in another lawsuit filed by Plaintiff.  (*Id*. at ¶ 37, Exh. 3.)[28] Plaintiff contends Defendant Hernandez denied Plaintiff "a fair and impartial audit of the false RVR issued by Defendant Benyard" and condoned the misconduct of others, of which he knew or should have known at the time.  (*Id*.)

(iii)   <em>Heck</em> Analysis

Defendants argue that Plaintiff's retaliation, due process, and conspiracy claims against Defendants Benyard, Cortez, Jones, Allamby, and Hernandez in connection with the RVR and subsequent disciplinary proceedings are barred under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  (ECF No. 73-1 at p. 19.)  Defendants maintain that they are "barred even though Plaintiff's forfeited credits were later restored."  (*Id*.)

In *Heck*, the Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. . . . Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, 512 U.S. at 486-87; *see also Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) ("*Heck* specifies that [one] cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence."); *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam) ("[W]here success in a

---

[28]      Plaintiff filed a lawsuit against Defendants Paramo, Hernandez, Olson, and Ramirez, among others, on October 10, 2013, *Rios v. Paramo*, Case No. 13-cv-02455-WQH (JMA) (S.D. Cal.).  (*See* FAC at Exh. 3.)

54

prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence."); *Harvey v. Waldron*, 210 F.3d 1008, 1013 (9th Cir. 2000) ("Under the Court's holding in *Heck*, a § 1983 action that would call into question the lawfulness of a plaintiff's conviction or confinement is not cognizable[.]"); *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (per curiam) ("*Heck* precludes a section 1983 claim based on actions which would 'render a conviction or sentence invalid' where that conviction has not been reversed, expunged or called into question by issuance of a writ of habeas corpus." (quoting *Heck*, 512 U.S. at 486)).

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended *Heck*'s favorable termination rule to prison disciplinary actions resulting in the loss of a prisoner's good-time credits. In *Edwards*, the prisoner was found guilty of several prison infractions and sentenced to 10 days in isolation, 20 days in segregation, and he was deprived of 30 days' good-time credit he had previously earned toward his release. *Id.* at 643. The prisoner filed a Section 1983 action requesting "a declaration that the procedures employed by state officials violated due process, compensatory and punitive damages for use of the unconstitutional procedures, an injunction to prevent future violations, and any other relief the court deems just and equitable." *Id.* The Supreme Court held that his claim for declaratory and monetary relief necessarily implied the validity of the loss of good-time credits and, therefore, was not cognizable under Section 1983. *Id.* at 648. Thus, the *Heck* rule applies to prison disciplinary actions resulting in the loss of good-time credits, when there are "allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed . . . ." *Id.*

In his prior order on Defendants' Motion to Dismiss the Complaint, Judge Hayes dismissed without prejudice all due process, retaliation, and conspiracy claims arising from Plaintiff's disciplinary hearings and the RVR issued for the January 18, 2013 altercation, as barred by *Heck*. (*See* ECF No. 63 at pp. 8-9, 17-18, 20.) Judge Hayes acknowledged

Plaintiff's argument that his credits had been restored; however, Plaintiff made no such allegation in his initial Complaint.  (*Id.* at p. 9, n. 2.)  Therefore, Judge Hayes did not consider the restoration of Plaintiff's credits in making his findings.  These allegations are now before the Court.

In addition to alleging that his credits have been restored, Plaintiff attaches documents to his FAC showing that he was given the opportunity to have his credits restored due to good behavior, and that he applied to have the credits restored because he remained discipline-free for a specified period of time.  (FAC at ¶ 37; Exh. 2.)  Under *Heck*, there is no bar to suit if "the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  *Heck*, 512 U.S. at 487.  Defendants argue that Plaintiff's claims do not fall under this exception to *Heck*, regardless of whether his credits were restored, because a "valid guilty finding remains on his record and can be considered by the parole board in evaluating Plaintiff's suitability for parole."  (ECF No. 73-1 at p. 11.)  Defendants further argue that because Plaintiff's credits were not restored prior to the filing of this lawsuit, he did not have standing to pursue these claims at the outset of the litigation.  (*Id.* at p. 12.)  For the following reasons, the Court need not address Defendants' arguments.

Based on Plaintiff's allegations in the FAC, the documents attached thereto, and the documents filed in Plaintiff's related habeas action of which the Court takes judicial notice,[29] the Court finds that Plaintiff is not barred by *Heck* from pursuing his claims related to the RVR and disciplinary hearings under Section 1983.  As stated by the United States Supreme Court in *Skinner v. Switzer*, 562 U.S. 521 (2011), "[h]abeas is the exclusive

---

[29]     The Court takes judicial notice of certain documents filed in Plaintiff's related habeas action, *Rios v. Paramo*, Case No. 15-cv-01331-BAS (RBB) (S.D. Cal.) ("Habeas Action").  Court orders and filings are proper subjects of judicial notice.  *See* Fed. R. Evid. 201; *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (a court "may take judicial notice of court filings and other matters of public record"); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

remedy . . . for the prisoner who seeks 'immediate or speedier' release from confinement." *Id*. at 524 (citing *Wilkinson*, 544 U.S. at 82).   "Where the prisoner's claim would not 'necessarily spell speedier release,' however, suit may be brought under § 1983." *Id*. (citing *Wilkinson*, 544 U.S. at 82); *see also Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003) ("[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence."); *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989) ("Habeas corpus jurisdiction is available . . . when a petitioner seeks expungement of a disciplinary finding from his record if expungement is *likely to accelerate* the prisoner's eligibility for parole." (emphasis added)); *Docken v. Chase*, 393 F.3d 1024, 1028-29 (9th Cir. 2004).

In the FAC, with respect to his RVR-related claims, Plaintiff seeks a declaratory judgment, expungement of the RVR, and money damages.  The question before the Court is therefore whether a successful challenge to the issuance of the RVR and the associated disciplinary proceedings, which results in the expungement of the RVR, will necessarily shorten Plaintiff's sentence.  *See Skinner*, 562 U.S. at 524; *Ramirez*, 334 F.3d at 859.  The Ninth Circuit's decision in *Ramirez* is instructive.  In *Ramirez*, the plaintiff was charged with "battery of an inmate with a weapon with serious bodily injury." *Ramirez*, 334 F.3d at 853.  During his disciplinary hearing, the plaintiff sought to call certain witnesses and both requests were denied.  *Id*.  He was found guilty and sentenced to ten days of disciplinary detention and sixty days loss-of-privileges, and was later assigned to administrative segregation for a term of twenty-four months.  *Id*.  The plaintiff thereafter filed a Section 1983 complaint alleging, in part, that the disciplinary hearing violated his federal constitutional rights of due process and equal protection.  *Id*.  He sought damages, declaratory relief, and an injunction requiring, among other things, the vacation of his disciplinary conviction.  *Id*.

In determining the application of *Heck*, the Ninth Circuit stated that the proper inquiry is "whether a successful challenge to the procedures used in the hearing 'could be such as necessarily to imply the invalidity of the judgment' and a reduction of the length

of [the plaintiff's] confinement." *Id.* at 859.  In that case, the Ninth Circuit found that "if successful, [the plaintiff] will not necessarily shorten the length of his confinement because there has been no showing by the State that the expungement [the plaintiff] seeks is likely to accelerate his eligibility for parole." *Id*.  Instead, "if [the plaintiff] is successful in attacking the disciplinary hearing and expunging his sentence, '[t]he parole board will still have the authority to deny [his] request[] for parole on the basis of any of the grounds presently available to it in evaluating such a request.'" *Id*. (quoting *Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir. 1997)).  Because the plaintiff's suit did not "threaten to advance his parole date," the Ninth Circuit found that the plaintiff's challenge to his disciplinary hearing was properly brought under Section 1983. *Id*.

Here, Plaintiff was convicted of murder pursuant to California Penal Code section 187(a) on April 16, 1990.  (Habeas Action, ECF No. 18-1 at 3.)  In their Motion to Dismiss the FAC, Defendants, represented by the California Attorney General's Office, argue that the guilty finding presently on Plaintiff's record, which has not been invalidated or overturned, "can be considered by the parole board in evaluating Plaintiff's suitability for parole."  (ECF No. 73-1 at p. 11.)  However, in Plaintiff's related Habeas Action, the California Attorney General's Office argued on a motion to dismiss that Plaintiff is not entitled to federal habeas relief because his challenge to the same RVR disciplinary proceeding will neither terminate custody nor accelerate his release from prison.  (Habeas Action, ECF No. 7.)  Specifically, the California Attorney General's Office, on behalf of Warden Paramo, the respondent in Plaintiff's Habeas Action, states:

> Here, Rios challenges a 2013 prison disciplinary violation he received for Fighting Resulting in the Use of Force. (*See generally*, Pet.) Rios, however, fails to establish how success on his claims will shorten his uncontested indeterminate life sentence.  Although the disciplinary disposition included a 90-day credit forfeiture assessed against Rios, that credit forfeiture did not affect Rios's release date or lengthen his sentence because Rios has already passed his minimum parole eligibility date. (Ex. 2, Legal Status Summary.)  Indeed, Rios's initial parole hearing was held on June 12, 2014 and parole was denied for seven years. (Ex. 3, Chronological

History.)  Thus, the credit forfeiture included in the disciplinary disposition did not impact the duration of Rios's confinement.

The relief sought by Rios will neither terminate custody nor accelerate any future date of release from custody.  *See Nettles*, 788 F.3d at 995. And Rios does not purport to otherwise challenge the legality of his life sentence. (*See generally*, Pet.)  Thus, Rios's claims are a challenge to the conditions, rather than the fact or duration, of his confinement, and as such, the Petition fails to invoke federal habeas corpus jurisdiction. *Nettles*, 788 F.3d at 1001; Ramirez, 334 F.3d at 852.

(*Id.* at pp. 5-6.)

The California Attorney General's Office cannot have it both ways.[30]  Given the foregoing, the Court finds that because, if successful, Plaintiff will not necessarily shorten the length of his confinement, his retaliation, conspiracy, and due process claims arising from the issuance of the RVR and the associated disciplinary proceeding are not barred by *Heck*.  The Court therefore turns to examine each claim.

### (iv)   Retaliation

#### (a)   *Applicable Law*

The Constitution provides protection against "[d]eliberate retaliation" by prison officials against an inmate's exercise of his right to petition for redress of grievances. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) (intentional obstruction of the right to seek redress "is precisely the sort of oppression that . . . section 1983 [is] intended to remedy."); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1428 (8th Cir. 1986)). Indeed, "[o]f fundamental import to prisoners are their First Amendment 'right[s] to file prison grievances,' *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to 'pursue civil rights litigation in the courts.' *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995)." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *see also Soranno's Gasco*, 874

---

[30]   Plaintiff does not contend that the ruling imposed at the disciplinary hearing affects the duration of his sentence.  (*See* ECF No. at 83 at 9-10.)

F.2d at 1314 ("The right of access to the courts is subsumed under the first amendment right to petition the government for redress of grievances." (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Harrison*, 780 F.2d at 1427-28). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.  And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Rhodes*, 408 F.3d at 567 (citing *Pratt v. Rowland*, 65 F.3d 802, 806 & n. 4 (9th Cir. 1995) ("[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes.  That retaliatory actions by prison officials are cognizable under § 1983 has also been widely accepted in other circuits."))).

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Id.* at 567-68 (footnote omitted) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam) ("A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline.")).

Because retaliation by prison officials may chill an inmate's exercise of his legitimate First Amendment rights, such conduct is actionable even if it would not otherwise rise to the level of a constitutional violation.  *Thomas v. Carpenter*, 881 F.2d 828, 830 (9th Cir. 1989).  However, "[r]etaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, Plaintiff must allege sufficient facts to plausibly suggest a nexus between the two." *Rojo v. Paramo*, No.

13cv2237, 2014 WL 2586904, at *5 (S.D. Cal. June 10, 2014) (citing *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, *i.e.*, "after this, therefore because of this")).  "Thus, while 'the timing and nature' of an allegedly adverse action can 'properly be considered' as circumstantial evidence of retaliatory intent, the official alleged to have retaliated must also be alleged to have been *aware* of the plaintiff's protected conduct."  *Id.* at *13 (quoting *Soranno's Gasco*, 874 F.2d at 1315-16; *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent."); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) (noting that "mere speculation that defendants acted out of retaliation is not sufficient" and affirming summary judgment where the record contained "nothing . . . to indicate [defendant] even knew about [an] earlier [law]suit.")).  Moreover, a plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act.  *Soranno's Gasco*, 874 F.2d at 1314.

### *(b)   Analysis*

Defendants argue that Plaintiff fails to state a retaliation claim against Defendants Cortez, Jones, Allamby, and Hernandez in connection with the October 16, 2013 hearing on the RVR for fighting because: (1) Plaintiff alleges no facts to show that Defendants Cortez, Jones, or Allamby took any action in response to any exercise by Plaintiff of his protected conduct (ECF No. 73-1 at pp. 17-18); and (2) Plaintiff does not allege that Defendant Hernandez personally took any specific action against him (ECF No. 73-1 at pp. 18-19)  As discussed below, the Court agrees.

Plaintiff does not allege any facts to show that Defendants Cortez, Jones, or Allamby took any adverse actions against Plaintiff because of his protected conduct, as required under *Rhodes.*  In addition, Plaintiff's FAC is devoid of any specific factual allegations against Defendant Hernandez other than the allegation that he supervised and approved the

wrongful conduct of others.  (*See* FAC at p. 8, ¶¶ 37, 48.)[31]  "A supervisory official . . . may be liable under Section 1983 only if he was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Henry v. Sanchez*, 923 F. Supp. 1266, 1272 (C.D. Cal. 1996) (citing *Redman v. Cnty of San Diego*, 942 F.2d 1435, 1446-47 (C.D. Cal. 1996); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).  Plaintiff's FAC does not contain any specific factual allegations against Defendant Hernandez that would permit a retaliation claim to proceed against him based on a theory of supervisory liability.

Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss Plaintiff's retaliation claim related to the RVR be **GRANTED** as to Defendants Cortez, Jones, Allamby, and Hernandez.  Defendants do not move to dismiss the retaliation claim against Defendant Benyard related to the RVR.  Accordingly, this claim is not dismissed.

(v)     Due Process

*(a)     Applicable Law*

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).  "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'"  *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

Under the Fourteenth Amendment's Due Process Clause, a prisoner is entitled to

---

[31]     To the extent Plaintiff alleges in the FAC that Defendant Hernandez denied Plaintiff a "fair and impartial audit of the false RVR" pursuant to California Code of Regulations, Title 15, § 3315(g), he did not exhaust this claim.  (FAC at p. 8.)

certain due process protections when he is charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564–571 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id*. These procedural protections, however, "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id*. (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)).

To determine atypical and significant hardship, courts examine:

> (1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87). "If the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied Due Process." *Id*. at 860.

### (b)   Analysis

Defendants move to dismiss Plaintiff's due process claims against Defendants Benyard, Cortez, Jones, Allamby, and Hernandez in connection with the hearing on the RVR for fighting. (ECF No. 73-1 at pp. 22-25.) In the FAC, Plaintiff alleges these defendants violated his due process rights in the following ways: (1) Defendants Cortez and Jones changed their version of the facts during the RVR hearing (FAC at ¶ 37; ECF No. 1-2 at 78); (2) Defendant Allamby, as the Senior Hearing Officer, denied Plaintiff's request to call a vital corroborating witness, *i.e.*, the Staff Assistant who assisted him in preparing for his CDC 114-D hearing, during his RVR hearing and failed to note the denial in his report (FAC at p. 7, ¶ 37; ECF No. 1-2 at 79); (3) Defendant Benyard, as the supervisor of the Senior Hearing Officer, sustained the guilty finding (FAC at p. 6); and

(4) Defendant Hernandez condoned the misconduct of others and failed to stop or fix the constitutional violations of others "when there is a duty to do so" (FAC at pp. 7-8, ¶ 37).

Defendants first argue that Plaintiff had no liberty interests at stake in the RVR hearing, and therefore he was not entitled to procedural due process. Specifically, Defendants argue that the results of the guilty finding were Plaintiff's placement in Ad-Seg and the assessment of credit loss, and because Plaintiff had no liberty interest in not being placed or held in Ad-Seg and his good time credits have been fully restored, he cannot state a due process claim. (ECF No. 73-1 at p. 22.)

As an initial matter, Plaintiff makes no allegation that he was placed in Ad-Seg after the RVR hearings, either on March 18, 2013 or October 16, 2013. Rather, Plaintiff alleges he was released from Ad-Seg on February 7, 2013. (FAC at ¶ 31.)[32] Plaintiff's only allegation is that the RVR disciplinary hearing resulted in the loss of credits. (FAC at ¶ 37.) As to the loss of credits, the Court does not find Defendants' argument persuasive. Although Plaintiff alleges his credits were restored, the RVR hearing did implicate a protected liberty interest because of the potential for loss of credits, and therefore Plaintiff was entitled to certain procedural due process. *See Wolff*, 418 U.S. at 557-58.[33]

---

[32]   Insofar as this allegation can be read into the FAC, however, Plaintiff has no direct liberty interest in not being placed or held in Ad-Seg, and he makes no allegations that his time in Ad-Seg posed an atypical and significant hardship. *See Sandin*, 515 U.S. at 483-84 (holding that a constitutionally protected liberty interest arises only when a restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983); *Serrano*, 345 F.3d at 1078 ("Typically, administrative segregation in and of itself does not implicate a protected liberty interest."); *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) (holding confinement in the special holding unit was within range of confinement normally expected and did not violate due process); *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (holding administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence).

[33]   *See* ECF No. 1-2 at 77 (under heading of "Due Process," the RVR, Part C states: "Therefore all due process requirements were met and loss of participation credit is permitted in this matter, should the defendant be found guilty.")

Next, with respect to Defendants Cortez and Jones, Defendants argue that, even if the Court accepts Plaintiff's allegation that these defendants testified falsely, Plaintiff has no liberty interest in not being falsely accused.  (ECF No. 73-1 at p. 23.)  The Court agrees. Insofar as Plaintiff challenges the issuance of the RVR on grounds that it included false information, or the allegedly false statements of Defendants Cortez and Jones in support of the RVR, he cannot state a claim.  *See e.g., Dawson v. Beard*, No. 15-cv-01867 DLB, 2016 WL 1137029, at *5-6 (E.D. Cal. Mar. 23, 2016) ("The issuance of a false RVR, alone, does not state a claim under section 1983."); *Ellis v. Foulk*, No. 14-cv-0802 AC P, 2014 WL 4676530, at *2 (E.D. Cal. Sept. 18, 2014) (noting that claims of arbitrary action by prison officials are grounded in "'the procedural due process requirements as set forth in *Wolff v. McDonnell*.'") (quoting *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984)); *Solomon v. Meyer*, No. 11-cv-02827-JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no constitutionally protected right to be free from false disciplinary charges.") (citing *Chavira v. Rankin*, No. C 11-5730 CW (PR), 2012 WL 5914913, at *1 (N.D. Cal. Nov. 26, 2012) ("The Constitution demands due process, not error-free decision-making.")); *Johnson v. Felker*, No. 12-cv-02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under section 1983.") (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) and *Freeman v. Rideout*, 808 F.2d 949, 951-53 (2d. Cir. 1986)). Accordingly, Plaintiff fails to state a due process claim against Defendants Cortez and Jones arising out of the October 16, 2013 RVR hearing.

Defendants further argue that the documents attached to the FAC demonstrate that Defendant Allamby complied with the required due process during the October 16, 2013 RVR hearing.  (ECF No. 73-1 at pp. 23-24.)  The Court disagrees.  An inmate subject to disciplinary sanctions that include the loss of good time credits must receive the following due process: (1) twenty-four-hour advanced written notice of the charges against him, *Wolff*, 418 U.S. at 563-64; (2) a written statement by the fact finder as to the evidence relied

on and the reasons for the action, *id*. at 564-65; (3) an opportunity to call witnesses and present documentary evidence where doing so "will not be unduly hazardous to institutional safety or correctional goals," *id*. at 566; (4) assistance at the hearing if he is illiterate or if the matter is complex, *id*. at 570; and (5) a sufficiently impartial fact finder, *id*. at 570-71.  A finding of guilt must also be "supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).

The report of the hearing attached to the FAC reflects that Plaintiff did receive twenty-four-hour advanced written notice of the charges against him, a written statement by the fact finder as to the evidence relied on and the reasons for the action, an opportunity to call witnesses and present documentary evidence, and a sufficiently impartial fact finder. (*See* ECF No. 1-2 at 75-83.)  In addition, the fact finder found that assistance would not be necessary because Plaintiff "displayed an ability to comprehend the RVR process," speaks English, and "is literate, the issues were not complex and a confidential relationship was not required."  (*Id*. at 75.)   However, while all witnesses Defendant Allamby claims Plaintiff requested to testify, did testify at the hearing (*see id*. at 76-79), Plaintiff alleges he requested the presence of another witness, a staff assistant who could corroborate his position, and Defendant Allamby arbitrarily denied this request without documenting the denial.  (FAC at p. 7.)  Although prison officials have discretion to refuse to call witnesses requested by a prisoner at a disciplinary hearing, they must explain their reasons why the witnesses were not allowed to testify, either at the disciplinary hearing or later in court. *See Wolff*, 418 U.S. at 566; *Ponte v. Real*, 471 U.S. 491, 497 (1985); *see also Bostic*, 884 F.2d at 1273 ("Prison officials may not arbitrarily deny an inmate's request to present witnesses or documentary evidence." (citation omitted)).   Accordingly, Plaintiff has plausibly alleged a due process claim against Defendant Allamby arising from his refusal to allow and document Plaintiff's request for his Ad-Seg staff assistant to testify at the

RVR hearing.[34]

Defendants next argue that Defendant Benyard's act of sustaining the guilty finding did not affect Plaintiff's liberty interest. (ECF No. 73-1 at pp. 22-23.) As discussed above, Plaintiff's liberty interest was implicated by the RVR hearing, and therefore he was entitled to the minimal due process requirements laid out by *Wolff*. However, in the FAC, Plaintiff alleges Defendant Benyard is liable for due process violations in his capacity as the supervisor of the Senior Hearing Officer at the RVR hearing and as the UCC Chairperson. (FAC at p. 6.) "[S]ection 1983 suits do not impose liability on supervising officers under a respondeat superior theory of liability," *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir. 2003); abrogated on other grounds by *Hiibel v. Sixth Judicial Dist. Ct. of Nevada, Humboldt Cnty.*, 542 U.S. 177 (2004). Rather, a plaintiff must establish that each individual "Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). In other words, supervisory officials "cannot be held liable unless they themselves" violated a constitutional right. *Id*. Thus, supervisory liability can be imposed only if (1) the supervisor was personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989).

Plaintiff does not make any factual allegations supported by the attached documents that Defendant Benyard was personally involved in the alleged constitutional deprivation, *i.e.*, that he failed to permit Plaintiff to call a vital witness during his RVR hearing, or that he took action to "sustain" or "confirm" the guilty finding. Because he cannot proceed on a *respondeat superior* theory, Plaintiff fails to state a due process claim against Defendant

---

[34]   The Court notes that the records attached to the FAC reflect that a Staff Assistant was assigned to Plaintiff to assist him in preparing for his Ad-Seg hearing, and that the Staff Assistant may have been present during the hearing as well. (*See* ECF No. 1-2 at 61, 79, 114, 118.)

Benyard.

Lastly, Defendants argue that Plaintiff's allegation that Defendant Hernandez is liable because he condoned the acts of others and/or failed to prevent the unconstitutional acts of others when he had a duty to do so, is nothing more than a *respondeat superior* claim. (ECF No. 73-1 at 33.)  The Court agrees.  As discussed above, section 1983 suits "do not impose liability on supervising officers under a respondeat superior theory of liability."  *Graves*, 339 F.3d at 848.  Therefore, Plaintiff has failed to state a due process claim against Defendant Hernandez.

Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss Plaintiff's due process claim related to the RVR be **DENIED** as to Defendant Allamby, and **GRANTED** as to Defendants Benyard, Hernandez, Cortez, and Jones.

(vi)   Conspiracy

*(a)   Applicable Law*

To allege a claim of conspiracy under § 1983, a plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights.  *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc); *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998); *Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989).  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  *United Steelworkers*, 865 F.2d at 1540-41.

Pleading a conspiracy requires more than a conclusory allegation that the defendants conspired to deprive a plaintiff's civil rights.  The Ninth Circuit applies a heightened pleading standard to conspiracy claims under § 1983 and has held that mere conclusory allegations of conspiracy (*i.e.*, bare allegations that a defendant "conspired" with another) are insufficient to state a claim.  *See Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir. 1997); *Buckey v. Cnty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992).  Rather, "[t]o

68

state a claim for conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) (citing *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987)); *Buckey*, 968 F.2d at 794. A plaintiff can meet the heightened pleading standard by alleging "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights even though he does not identify which officer said or did what at a particular time." *Harris*, 126 F.3d at 1196. Further, because conspiracies, by their very nature, are secret agreements, "[a] defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions." *Gilbrook v. City of Westminster*, 177 F.3d 839, 856-57 (9th Cir. 1999) (citing *United States v. Calabrese*, 825 F.2d 1342, 1348 (9th Cir. 1987)); *cf. United Steelworkers*, 865 F.2d at 1547 (circumstantial evidence of "[t]he ability and opportunity to conspire" is, standing alone, insufficient).

### (b)   Analysis

Plaintiff alleges Defendants Allamby, Cortez, Jones, Hernandez, and Benyard conspired (1) to fabricate and manipulate evidence against Plaintiff in support of the RVR issued by Defendant Benyard to punish Plaintiff, and (2) to deny Plaintiff procedural due process during his RVR hearing. (FAC at pp. 6-8, ¶¶ 48, 54.) Defendants move to dismiss arguing that Plaintiff's allegations are insufficient to meet the standard for pleading a conspiracy claim in that "Plaintiff has done nothing more than provide conclusory assertions, devoid of any specific facts on which the Court could infer a meeting of the minds and thus, the existence of a conspiracy." (ECF No. 73-1 at p. 30.) The Court agrees.

Plaintiff's allegations amount to conclusory allegations unsupported by specific facts that Defendants conspired with one another to violate Plaintiff's constitutional rights in relation to the issuance of the RVR and the RVR hearing. *See Harris*, 126 F.3d at 1195; *Buckey*, 968 F.2d at 794. Although conspiracies are, by their very nature, secret agreements, Plaintiff's allegations do not support "a showing that the alleged conspirators

have committed acts that 'are unlikely to have been undertaken without an agreement.'" *See Mendocino Envtl. Ctr.*, 192 F.3d at 1301.

Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss Plaintiff's conspiracy claim related to the RVR be **GRANTED** as to Defendants Allamby, Benyard, Hernandez, Cortez, and Jones.

### e.   *UCC Hearing Claims*

Plaintiff brings retaliation, due process, conspiracy, equal protection, and ADA claims against Defendants Benyard, Cavazos, and Abad related to his July 23, 2013 UCC hearing. Specifically, Plaintiff alleges that: (1) Defendants Cavazos, Benyard, and Abad conspired to delay scheduling a UCC hearing to address Plaintiff's termination from his laundry job for over fourteen months in violation of his due process rights; and (2) Defendants Benyard, Cavazos and Abad conspired to deny Plaintiff a fair and impartial UCC hearing on July 23, 2013. (FAC at ¶¶ 47, 49-50, pp. 2-3.) Plaintiff alleges Defendants Benyard, Cavazos, and Abad denied him a fair and impartial UCC hearing on July 23, 2013 because they (1) refused to address the issue of Plaintiff's alleged wrongful termination from his laundry job, thereby causing him to lose his job without penological justification and the required due process; and (2) denied him the opportunity to participate in rehabilitative programs such as "re-enter programs," which are available to other inmates, on the basis of Plaintiff's handicap and non-citizenship status, in violation of the equal protection clause and the ADA. (*Id.* at pp. 2-3, ¶ 50.)

As an initial matter, while a genuine dispute remains as to whether Plaintiff exhausted his retaliation, conspiracy, due process, ADA, and equal protection claims arising out of the July 23, 2013 UCC hearing against Defendants Benyard and Cavazos, Plaintiff did not exhaust these claims as to Defendant Abad. The only claim remaining at this time against Defendant Abad is the alleged delay in scheduling a UCC hearing on Plaintiff's alleged wrongful job termination. Plaintiff has failed to exhaust any claims

1   against Defendants Benyard and Cavazos based on the alleged delay.[35]  The Court will not

2   address claims Defendants have established Plaintiff failed to exhaust.

3                                 (i)        Retaliation

4          In their Motion to Dismiss, Defendants argue that Plaintiff has failed to state a

5   retaliation claim in his FAC against Defendants Benyard and Cavazos for declining to hold

6   a hearing on Plaintiff's job termination.  (ECF No. 73-1 at p. 17.)  Plaintiff alleges that

7   Defendants Benyard and Cavazos retaliated against him by "arbitrar[ily] refus[ing] to

8   address the issue of wrongful termination from his job assignment" at his July 23, 2013

9   UCC hearing, thus "remov[ing] him from his job assignment without any penological

10  justification or sufficient evidence as required by law."  (FAC at pp. 2-4, ¶ 47.)

11         Defendants contend that the act of declining to hold a hearing on whether Plaintiff

12  was wrongfully terminated from his job was not an adverse action, but rather an act

13  required by law.  (ECF No. 73-1 at p. 17.)  Citing California Code of Regulations, Title 15,

14  § 3376, Defendants state that the UCC does not have the authority to make determinations

15  about the propriety of a job termination.  (*Id.*)  Instead, a challenge to the propriety of a job

16  termination must be presented through the grievance and appeal system.  (*Id.*)

17         The express language of the applicable California Code of Regulations, however,

18  contradicts Defendants' assertions that the sole function of the UCC "is to make

19  determinations about inmate classification and housing" and that it "does not have the

20  authority to make determinations about the propriety of a job termination."  (ECF No. 73-

21  1 at p. 17.)  California Code of Regulations, Title 15, § 3376 provides:

22         Unit Classification Committees shall:

23         (A) Review each inmate's case at least annually to consider the accuracy of
24         the inmate's classification score, custody designation, program, **work and**
           **privilege group**, and facility placement, including recommendation for
25

26  _____

27         [35]    *See* FAC at p. 2, lines 15-16 (alleging Defendants Benyard, Cavazos, and
28  Abad retaliated against Plaintiff by "making the Plaintiff to wa[it] for over fourteen
    months to be provided with a UCC hearing").

transfer.  A parole violator's first annual review may be delayed for up to five months so that it will coincide with classification score updates.

(B) **Change in inmate's work/privilege group**.

(C) Conduct post board classification on an inmate within 15 days of receipt of official notice of a Board of Parole Hearings' decision regarding the inmate.

(D) Act on an inmate's request for restoration of forfeited credits for less than Division C offenses in accordance with section 3327

Cal. Code Regs. tit. 15, § 3376(d)(2) (emphasis added).

Moreover, the regulations relating specifically to work assignments highlight the role played by the UCC.  Pursuant to Section 3040, "[e]very able-bodied person committed to the custody of [CDCR] is obligated to work."  Cal. Code Regs. tit. 15, § 3040(a).  A classification committee assigns inmates to a work program.  *Id.* at § 3040(c); *see also* § 3044 ("all assignments or reassignments of an inmate to a work group shall be by a classification committee action").  "Any staff request for removal of an inmate from a program" must be "submitted to the inmate's correctional counselor on a CDC General Chrono Form."  *Id.* at § 3040(f).  Thereafter, the counselor must "refer the request to a classification committee for consideration and action."  *Id.*  "If a request is for cause, defined as behavior that would result in loss of participation credit pursuant to section 3043.2(a), the inmate may be temporarily relieved of the position and denied pay (if a paid position), pending classification committee action."  *Id.*[36]

Here, Plaintiff alleges that pursuant to a false disciplinary report (Form CDC-128A) and General Chrono (Form CDC-128B), both dated May 16, 2012, he was wrongfully terminated from his job assignment, and that Defendants Benyard and Cavazos "arbitrarily refused to address the issue of wrongful termination" during his UCC hearing on July 23, 2013.  (FAC at pp. 2-4, ¶ 24; *see also* ECF No. 1-1 at 23.)  The General Chrono requests

---

[36]    *See also* Cal. Code Regs. tit. 15, § 3375(f)(1)(E) ("The classification of inmates shall provide the following procedural safeguards: (1) Inmates shall be given written notice at least 72 hours in advance of a hearing which could result in an adverse effect.  Adverse effect is defined as: (E) Placement in a reduced work group.").

that Plaintiff be removed from his laundry job because he was "out of bounds." (ECF No. 1-1 at 23.)   Accordingly, the request should have been referred to the UCC for consideration and action.

Defendants argue that the UCC does not have authority to hold evidentiary hearings and entertain challenges to a decision to remove an inmate from a job assignment, but that their "consideration and action" is limited to affirming or modifying the inmate's work group. (ECF No. 85 at p. 4.) In order to challenge such a decision, Defendants contend an inmate must file an appeal. (*Id.*)[37]

However, based on the information presently before the Court as to the role of the UCC, the Court cannot say that the act of declining to conduct a hearing on Plaintiff's job termination was an act required by law.

Next, Defendants argue Plaintiff alleges no facts connecting Defendant Cavazos with any prior exercise of protected conduct. (ECF No. 73-1 at p. 17) The Court agrees. In the FAC, Plaintiff alleges Defendant Cavazos retaliated against Plaintiff "because of exercise of protected conduct in violation of 1st, 5th and 15th Amendment of U.S. Constitution." (FAC at ¶ 47.) However, the Complaint lacks any factual allegations that Defendant Cavazos took any allegedly adverse action because of Plaintiff's exercise of protected activity.   There is no factual allegation connecting Defendant Cavazos to Plaintiff's prior civil rights lawsuit, nor is there any factual allegation suggesting Plaintiff filed prior grievances against him.   Although Plaintiff alleges he engaged in certain protected conduct and that Defendant Cavazos later took adverse actions against him, Plaintiff fails to "allege sufficient facts to plausibly suggest a nexus between the two." *Rojo*, 2014 WL 2586904, at *5.   Thus, Plaintiff fails to state a retaliation claim against

---

[37]   *See* Cal. Code Regs. tit. 15, § 3084.1(a) ("Any inmate or parolee under the department's jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare.")

Defendant Cavazos related to Defendant Cavazos' refusal to consider his job termination at the UCC hearing.

Defendants do not make the same argument with respect to Defendant Benyard. Rather, they only move to dismiss the retaliation claim against Defendant Benyard on the grounds that declining to address the job-termination issue was not an adverse action. For the reasons discussed above, the Court finds this argument insufficient.

Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss Plaintiff's retaliation claim related to the UCC hearing be **GRANTED** as to Defendant Cavazos and **DENIED** as to Defendant Benyard.

(ii)   Conspiracy

Plaintiff alleges that Defendants Cavazos, Benyard, and Abad conspired to delay a UCC hearing on Plaintiff's alleged wrongful termination from his laundry job, and to deny Plaintiff a fair and impartial UCC hearing on July 23, 2013. (FAC at pp. 2-4.) Plaintiff further alleges that the documents attached to the FAC show the existence of a meeting of the minds. (*Id*. at p. 3:23-28.) Plaintiff cites to a CDC-128G form addressing his July 23, 2013 UCC hearing, which is signed by Defendants Benyard, as Chairperson, and Cavazos, as Recorder. (ECF No. 1-1 at 85.) Committee members include Defendants Benyard and Cavazos, as well as non-parties Crotts and Homer. (*Id*.)

Defendants move to dismiss all conspiracy claims against Defendants Cavazos and Benyard, arguing that Plaintiff's allegations are insufficient to meet the standard for pleading a conspiracy claim in that "Plaintiff has done nothing more than provide conclusory assertions, devoid of any specific facts on which the Court could infer a meeting of the minds and thus, the existence of a conspiracy." (ECF No. 73-1 at p. 30.) With respect to Plaintiff's conspiracy claim against Defendants Cavazos and Benyard arising out of actions taken at the July 23, 2013 UCC hearing, the Court agrees.

Plaintiff's allegations amount to conclusory allegations unsupported by specific facts that the Defendants conspired with one another to violate Plaintiff's constitutional rights. *See Harris*, 126 F.3d at 1195; *Buckey*, 968 F.2d at 794. Although conspiracies are,

by their very nature, secret agreements, Plaintiff's allegations do not support "a showing that the alleged conspirators have committed acts that 'are unlikely to have been undertaken without an agreement.'"  *See Mendocino Envtl. Ctr.*, 192 F.3d at 1301.

Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss Plaintiff's conspiracy claim arising out of actions taken at the July 23, 2013 UCC hearing be **GRANTED** as to Defendants Benyard and Cavazos.

(iii)   Due Process

Plaintiff alleges Defendants Benyard, Cavazos, and Abad as members of the UCC, violated his due process rights by making Plaintiff wait over fourteen months to be provided with a UCC hearing to address Plaintiff's contention that he was improperly removed from his job assignment, and by refusing to address during his July 23, 2013 UCC hearing whether he was wrongfully removed from his prison job.  (*See* FAC at pp. 2-4.) As an initial matter, as discussed above, Plaintiff did not exhaust his due process claim arising out of any delay in scheduling a UCC hearing against Defendants Benyard and Cavazos.  He only exhausted this claim as to Defendant Abad.  Moreover, Plaintiff did not exhaust a due process claim arising out of the July 23, 2013 UCC hearing against Defendant Abad.

Defendants move to dismiss this claim on the grounds that Plaintiff has no liberty interest in his prison job.  The Court agrees.  "[T]he Due Process Clause of the Fourteenth Amendment 'does not create a property or liberty interest in prison employment.'"  *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) (quoting *Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986) (per curiam)) (citing *Baumann v. Ariz. Dep't of Corr.*, 754 F.2d 841, 846 (9th Cir. 1985)).  Thus, because Plaintiff has no property or liberty interest in prison employment, the Court need not reach the issue of what process is due.

Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss Plaintiff's due process claim related to the July 23, 2013 UCC hearing be **GRANTED** as to Defendants Benyard, Cavazos, and Abad.

///

(iv)   Equal Protection

*(a)   Applicable Law*

The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985), *superseded by statute on other grounds* (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "'The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Sunday Lake Iron Co. v. Twp. of Wakefield*, 247 U.S. 350, 352 (1918)); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

Conclusory allegations of discrimination are insufficient to withstand a motion to dismiss, however, unless the plaintiff alleges facts which may prove invidious discriminatory intent. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Therefore, when an equal protection violation is alleged, the plaintiff must plead facts to show "that the defendant acted in a discriminatory manner and that the discrimination was intentional." *FDIC. v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991) (citing *Stones v. L.A. Comm. Coll. Dist.*, 796 F.2d 270, 275 (9th Cir. 1986); *Lowe v. City of* Monrovia, 775 F.2d 998, 1011 (9th Cir. 1985), *as amended*, 784 F.2d 1407 (1986)). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. [Citation omitted]. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

*(b)   Analysis*

Plaintiff alleges that Defendants Benyard, Cavazos, and Abad, as members of the UCC, denied him equal protection of the law and discriminated against him on the basis of

his handicap and non-citizenship status, in violation of the 14th Amendment.  (FAC at ¶ 50.)  Specifically, Plaintiff alleges that Defendants denied him the opportunity to participate in rehabilitative programs, such as "re-enter programs," which are available to other inmates, on the basis of Plaintiff's mental handicap and non-citizenship status.  (*Id.* at p. 2.)  As an initial matter, as discussed above, Plaintiff did not exhaust an equal protection claim against Defendant Abad, and therefore it is not properly before the Court.

Defendants move to dismiss this claim, arguing that Plaintiff does not allege an equal protection claim because Plaintiff has failed to allege that he was treated differently from similarly situated inmates.  (ECF No. 73-1 at pp. 25-27.)  More specifically, Defendants argue that Plaintiff makes no allegations about how other inmates with mental disabilities were treated, or how other non-citizens were treated, and whether the treatment of individuals who fell in these groups differed from the treatment of other inmates.  (*Id.* at p. 26.) Defendants further argue that Plaintiff makes no allegations identifying the particular program he was purportedly denied participation in, thereby giving the Court enough information to conduct a rational basis analysis.  (*Id.*)

For the reasons stated in Judge Hayes' prior order on Defendants' Motion to Dismiss the Complaint, the Court finds that Plaintiff has failed to state an equal protection claim. (*See* ECF No. 63 at pp. 13-14.)  Plaintiff makes no new allegations in the FAC to change the analysis.

Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment equal protection claim be **GRANTED** as to Defendants Benyard and Cavazos.

### (v)    ADA

Plaintiff alleges that Defendants Benyard, Cavazos, and Abad, as members of the UCC, denied him equal protection of the law and discriminated against him on the basis of his handicap and non-citizenship status, in violation of the ADA.  (FAC at ¶ 50.) Specifically, Plaintiff alleges that Defendants denied him the opportunity to participate in rehabilitative programs, such as "re-enter programs," which are available to other inmates,

on the basis of Plaintiff's mental handicap and non-citizenship status.  (*Id.* at p. 2.)  As an initial matter, as discussed above, Plaintiff did not exhaust an ADA claim against Defendant Abad, and therefore it is not properly before the Court.

Defendants move to dismiss this claim, arguing that Plaintiff's claim must fail because the ADA does not permit recovery against individuals.  (ECF No. 73-1 at p. 27.)  The Court agrees. "[A] Plaintiff cannot bring an action under 24 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).  As Plaintiff only brings claims against Defendants Cavazos and Benyard in their individual capacities, his ADA claim must fail.

Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss Plaintiff's ADA claim be **GRANTED** as to Defendants Benyard and Cavazos.

### g.    *Qualified Immunity*

#### (i)    Applicable Law

The doctrine of qualified immunity shields government officials performing discretionary functions from liability for "civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (per curiam) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  "The privilege is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* at 200-01 (quoting *Mitchell*, 472 U.S. at 526).

Claims of qualified immunity require a two-step analysis.  Courts must consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officers' conduct violated a constitutional right.  *See id.* at 201, modified by *Pearson v. Callahan*, 555 U.S. 223 (2009) (holding the order of *Saucier*'s two-step analysis

78

should not be regarded as an inflexible requirement: "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory").  If the allegations do not establish the violation of a constitutional right, "there is no necessity for further inquiries concerning qualified immunity." *Id.*; *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all.").

If the allegations could make out a constitutional violation, however, courts must ask whether the right was clearly established – that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).  "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*  The "salient question" is whether the state of the law at the time gives officials "fair warning" that their conduct is unconstitutional.  *Hope v. Pelzer*, 536 U.S. 730, 740 (2002); *see also Saucier*, 533 U.S. at 2156-57 ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"))); *Norwood v. Vance*, 591 F.3d 1062, 1068 (9th Cir. 2010) ("The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").  If an officer makes a reasonable mistake as to what the law requires, the officer is entitled to immunity.  *See Saucier*, 533 U.S. at 205.

(ii)    Analysis

Defendants argue Defendants Paramo, Suglich, Benyard, Cavazos, Abad, Cortez, Jones, Allamby, Hernandez, and Behra are protected by qualified immunity from the following claims: (1) Plaintiff's retaliation claim against Defendants Paramo, Suglich, Benyard, Cavazos, Abad, Cortez, Jones, Allamby, and Hernandez; (2) Plaintiff's due process claims against Defendants Abad, Allamby, Behra, Benyard, Cavazos, Cortez,

Jones, and Hernandez; (3) Plaintiff's equal protection claim against Defendants Benyard, Cavazos, and Abad; (4) Plaintiff's ADA claim against Defendants Benyard and Cavazos; (5) Plaintiff's conspiracy claim against Defendants Paramo, Suglich, Benyard, Cavazos, Abad, Cortez, Jones, Allamby, and Hernandez.  (ECF No. 73-1 at pp. 31-32.)  Defendants argue they are entitled to qualified immunity on these claims because Plaintiff has failed to state a claim.  (*Id.*)

Under *Saucier*, if the allegations do not establish the violation of a constitutional right, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.  As discussed above, Plaintiff does not sufficiently allege a violation of a constitutional right against Defendants Cortez, Jones, Hernandez, Abad, Ramirez, Cavazos, Olson, Suglich and Paramo.[38]

Accordingly, the Court hereby **RECOMMENDS** Defendants Cortez, Jones, Hernandez, Abad, Ramirez, Cavazos, Olson, Suglich and Paramo's Motion to Dismiss on the basis of qualified immunity be **GRANTED**, but that Defendants Behra, Benyard, Allamby, and Zuniga's Motion to Dismiss on the basis of qualified immunity be **DENIED**.

## III.   CONCLUSION

The Court submits this Report and Recommendation to United States District Judge William Q. Hayes pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.3.  For the reasons outlined above, IT IS HEREBY RECOMMENDED that the District Judge issue an order:

1.   Approving and adopting this Report and Recommendation;

2.   **GRANTING in part** and **DENYING in part** Defendants' Motion for Partial Summary Judgment (ECF No. 74); and

3.   **GRANTING in part** and **DENYING in part** Defendants' Motion to Dismiss

---

[38]   Defendants are not precluded from raising their qualified immunity arguments in a motion for summary judgment if discovery into Plaintiff's claims demonstrate that no violation of a clearly established right occurred.

80

(ECF No. 73).

IT IS FURTHER ORDERED that no later than **August 1, 2016**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be filed with the Court and served on all parties no later than **ten (10) days** from service of filed Objections.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  July 15, 2016

DAVID H. BARTICK
United States Magistrate Judge

14-cv-01073-WQH (DHB)